# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALAN EUGENE MILLER, <br><br> *Plaintiff*, <br><br> v. <br><br> JOHN Q. HAMM, <br> in his official capacity as <br> Commissioner, Alabama Department <br> of Corrections <br><br> TERRY RAYBON, <br> in his official capacity as Warden, <br> Holman Correctional Facility <br><br> STEVE MARSHALL, <br> in his official capacity as Attorney <br> General, State of Alabama | Civil Action.: 22-cv-00506 <br><br> **CAPITAL CASE – EXECUTION SCHEDULED SEPTEMBER 22, 2022** |

## COMPLAINT

1. In Alabama, lethal injection is the default method of execution.

2. In March 2018, Alabama added nitrogen hypoxia as an alternative execution method. *See* Ala. Code § 15-18-82.1(b).

3. Under the statute, death-row inmates have "one opportunity to elect that his or her death sentence be executed by . . . nitrogen hypoxia." Ala. Code § 15-18-82.1(b). If an inmate's certificate of judgment from the Alabama Supreme Court affirming a sentence of death was "issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date." *Id.* § 15-18-82.1(b)(2). The statute does not specify the type or manner of writing required to elect.

1

4. Mr. Miller fully complied with the statute, timely submitting in writing his intent to be executed via nitrogen hypoxia. His election should be honored.

5. Defendants refuse to do so. Instead, Defendants seek to execute Mr. Miller on September 22, 2022 via lethal injection, claiming that Mr. Miller did not make an election for nitrogen hypoxia. That is incorrect. And, it is not the first time Defendants have made this type of grievous error.

6. Defendants have mistakenly sought to execute another individual, Jarrod Taylor, who—like Mr. Miller—also opted for execution via nitrogen gas. The State of Alabama moved to set an execution date for Mr. Taylor, but after counsel for Mr. Taylor informed the Attorney General's office that he had in fact opted for nitrogen gas, the State withdrew its request.

7. Although Mr. Miller and his counsel have informed the Attorney General's office that he too timely submitted an election form, Defendants continue to seek to execute Mr. Miller through lethal injection.

8. Through their unlawful actions, Defendants are depriving Mr. Miller of his Fourteenth Amendment rights to procedural due process and equal protection under the law, as well as his Eighth Amendment right not to be subject to "cruel and unusual" punishment.

9. Mr. Miller brings this action pursuant to 42 U.S.C. § 1983 to vindicate his rights under the United States Constitution, the Alabama Constitution, and Alabama law.

## PARTIES

10. Plaintiff Alan Eugene Miller is a United States citizen and a resident of the State of Alabama. He is an inmate sentenced to death under Defendants' supervision. At all relevant times, Mr. Miller has been and continues to be incarcerated at the Holman Correctional Facility in Atmore, Alabama.

*John Q. Hamm*

11. Defendant John Q. Hamm, Commissioner of the Alabama Department of Corrections ("ADOC"), is sued in his official capacity. At all relevant times, Defendant Hamm has been acting under the color of law and as the agent and official representative of ADOC, pursuant to ADOC's official policies and procedures.

12. ADOC is the state agency charged with the incarceration, care, custody, and treatment of all state prisoners, including prisoners sentenced to death. Ala. Code § 14-1-1.2 (2018).

13. Defendant Hamm is responsible for ensuring that all prisoners committed to the custody of ADOC are treated in accordance with the United States and Alabama Constitutions. He is also responsible for the development and implementation of the protocol and procedures governing the execution of death-sentenced inmates in the State of Alabama.

14. Defendant Hamm has the authority to alter, amend, or make exceptions to the protocol and procedures governing the execution of death-sentenced inmates in the State of Alabama.

*Terry Raybon*

15. Defendant Terry Raybon, Warden of the Holman Correctional Facility, is sued in his official capacity. Defendant Raybon has been acting under color of law and as the agent and official representative of the Holman Correctional Facility and ADOC.

16. Defendant Raybon is responsible for implementing ADOC policies and procedures governing executions, managing the preparations for an execution, and for turning over the execution site to the State Executioner to perform the execution. Defendant Raybon also is responsible for protecting the constitutional rights of all persons incarcerated at the Holman Correctional Facility.

*Steve Marshall*

17. Defendant Steve Marshall, Attorney General of the State of Alabama, is sued in his official capacity. At all relevant times, Defendant Marshall has been acting under color of law and as the agent and official representative of the Attorney General's office.

18. Defendant Marshall has the power and authority to implement, interpret, and enforce Alabama state law, including Ala. Code. § 15-18-82.1.

19. Defendant Marshall and his staff are responsible for initiating the execution process in Alabama by identifying individuals for whom they move to set an execution date.

## JURISDICTION AND VENUE

20. Mr. Miller's claims arise under the Constitution and the laws of the United States, as well as under the Constitution and laws of the State of Alabama. This Court has federal question jurisdiction over those claims arising under the Constitution and laws of the United States pursuant to 28 U.S.C. § 1331, 1343.

21. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57 and 65. The federal rights asserted by Mr. Miller are enforceable under 42 U.S.C. § 1983.

22. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

23. No administrative grievance is available at Holman Correctional Facility for Mr. Miller or other death-sentenced inmates to challenge the way in which Defendants have implemented Ala. Code § 15-18-82.1.

## FACTUAL ALLEGATIONS

### Procedural Background

24. In June 2000, Mr. Miller was convicted of capital murder.

25. Mr. Miller's conviction and sentence were affirmed by the Alabama Court of Criminal Appeals. The Alabama Supreme Court and the United States Supreme Court denied certiorari.

26. On May 19, 2006, Mr. Miller filed a petition under Alabama Rule of Criminal Procedure 32 for postconviction relief, and subsequently filed an amended petition on April 4, 2007. The circuit court dismissed Mr. Miller's claims under the amended petition except for his claims of ineffective assistance of appellate counsel.

27. On February 11-14, 2008, and August 7, 2008, an evidentiary hearing was conducted on Mr. Miller's claims of ineffective assistance of appellate counsel. On May 5, 2009, the circuit court denied Mr. Miller's petition with regard to those claims, which the Alabama Court of Criminal Appeals later affirmed. After initially granting certiorari, the Alabama Supreme Court quashed the grant and denied certiorari on June 22, 2012.

28. Mr. Miller then filed a petition for habeas corpus in the District Court for the Northern District of Alabama in January 2013. The district court denied Mr. Miller's petition in March 2017. Mr. Miller then moved for a certificate of appealability in the U.S. Court of Appeals for the Eleventh Circuit. While the Eleventh Circuit granted a certificate on a number of claims, the court affirmed the district court's denial of habeas relief in August 2020. The United States Supreme Court denied certiorari in October 2021.

29. On April 19, 2022, the State of Alabama moved the Alabama Supreme Court to set Mr. Miller's execution date. Mr. Miller filed a brief in opposition, attesting in a sworn affidavit that he had completed and returned the election form, choosing to be executed by nitrogen hypoxia in accord with the statutory requirements for doing so. The State responded to Mr. Miller's opposition on May 27, 2022. Through an affidavit signed by Defendant Raybon, the State claimed

that it has not found a record of Mr. Miller's form, though it had no affirmative or contemporaneous evidence that Mr. Miller had or had not submitted it to the warden. Mr. Miller then filed a reply brief, emphasizing that the State's response had created a quintessential factual dispute regarding the existence of Mr. Miller's form that must be resolved by an Alabama trial court before he can be executed by lethal injection.

30. On July 18, 2022, the Alabama Supreme Court granted the State's motion over Chief Justice Parker's dissent without making any findings with respect to the factual dispute, and set Mr. Miller's execution for September 22, 2022.

**Factual Background**

*The nitrogen hypoxia election*

31. In March 2018, Alabama added nitrogen hypoxia as an alternative execution method. Ala. Code § 15-18-82.1(b). The statute became effective on June 1, 2018. Under the statute, death-row inmates have "one opportunity to elect that his or her death sentence be executed by . . . nitrogen hypoxia." Ala. Code § 15-18-82.1(b). If an inmate's certificate of judgment from the Alabama Supreme Court affirming a sentence of death was "issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date." *Id*. § 15-18-82.1(b)(2).

32. Importantly, however, the statute does not specify the type or manner of writing required to elect. Nor does it delineate a process for distributing, collecting or storing records of an election.

33. In the absence of such guidance—and notwithstanding the fact that ADOC has declined to promulgate any accompanying regulations—the time at Holman during which the election period was underway has been publicly described as extremely disorganized. *See, e.g.,* Melissa Brown, *In 2018, Alabama approved death by nitrogen for executions. When did it*

*inform its inmates?*, The Montgomery Advertiser, June 25, 2019,

https://www.montgomeryadvertiser.com/story/news/crime/2019/06/25/alabama-says-didnt-have-inform-its-inmate-new-execution-method/1276330001/

    34.    Mr. Miller was incarcerated at Holman during the entire election period in 2018.

    35.    Cynthia Stewart was the warden of Holman during the entire election period in 2018.

    36.    At some point between June 26, 2018, and June 30, 2018, Warden Stewart obtained an election form created by the Federal Defenders for the Middle District of Alabama. *See Reeves v. Comm'r, Alabama Dep't of Corr.*, 23 F.4th 1308, 1314 (11th Cir.), application granted sub nom. *Hamm v. Reeves*, 142 S. Ct. 743 (2022).

    37.    Warden Stewart directed Captain Jeff Emberton to distribute the election form to every person on death row at Holman. *Id.*

    38.    A few days before the election period came to a close, Captain Emberton distributed more than one hundred copies of the election form with over one hundred envelopes. *Id*. at 1315.

    39.    Captain Emberton also made an announcement regarding the form on each tier where people are housed on death row. *Id.* Captain Emberton has testified that inmates who were not present or were sleeping would not have received his explanation. *Id.*

    40.    Reflecting the chaotic process, and upon information and belief, ADOC did not record which inmates received the election forms. In fact, one inmate has alleged that several individuals on death row never received an election form, and that the inmates who did were not notified of the impeding deadline. *See Saunders v. Hamm*, No. 20-CV-456-WKW, 2022 WL 493693, at *2 (M.D. Ala. Feb. 17, 2022).

41. United States Circuit Judge Jill Pryor has described as "feckless" the way in which ADOC, having taken "on the responsibility to inform prisoners about their right to elect death by nitrogen hypoxia within 30 days, did so." *Smith v. Comm'r, Ala. Dep't of Corr.*, 2021 WL 4916001, at *5 (11th Cir. Oct. 21, 2021) (Pryor, J., concurring).

42. The collection of the forms was also extremely disorganized.

43. Despite the gravity of the election decision—a time-sensitive and irreversible election concerning the manner in which inmates were to be executed—ADOC failed to create a reliable system for collecting and recording the election forms.

44. Having undertaken to distribute and collect the forms, and upon information and belief, ADOC did not create a list or otherwise log or memorialize the names of people who turned in the forms.

45. Nor did ADOC memorialize its process for storing the forms.

*Defendants Lose Mr. Miller's Submitted Election Form*

46. Against this backdrop, Mr. Miller received an election form in June 2018 as his certificate of judgment was issued prior to June 1, 2018. *See* Ex. A.[1]

47. Mr. Miller completed and signed the election form, indicating that he opted into execution by nitrogen hypoxia. *Id.*

48. Mr. Miller then returned the form to the prison official who was collecting completed forms from other inmates. *Id.* The official collected Mr. Miller's form at the same time that he collected election forms from others. *Id.*

---

[1] Exhibit A is attached to this Complaint and incorporated by reference as if fully set forth herein.

49. When Mr. Miller gave the election form to the official, Mr. Miller asked the official that the form be copied and notarized so as to record his election. *Id.* The official refused both of Mr. Miller's requests. *Id.*

50. Mr. Miller followed the instructions he was given for submitting his election form to the warden.

51. Mr. Miller does not know what the official did with the election form after collecting it from Mr. Miller. *Id.*

52. The State claims that it has no record of Mr. Miller's election form and has now set an execution date by lethal injection on September 22, 2022, instead of complying with Mr. Miller's statutory-protected election to be executed by nitrogen hypoxia.

*Defendants Have Lost or Misplaced Election Forms Submitted by Other Inmates*

53. Defendants took responsibility for distributing forms to inmates and collecting them, but entirely failed to implement any written process for providing notice, distributing, collecting, or storing election forms, and as a result, ADOC has lost election forms submitted by Mr. Miller and other people on death row at Holman.

54. In addition to Mr. Miller's form, ADOC also lost Jarrod Taylor's form.

55. Like Mr. Miller's form, the situation involving Mr. Taylor's form came to light after Defendant Marshall moved the Alabama Supreme Court to schedule Mr. Taylor's execution. As part of that motion filed on July 29, 2019, Defendant Marshall represented that Mr. Taylor had not made a timely election of death by nitrogen hypoxia. *See* Ex. B.[2]

56. On July 30, 2019, Mr. Taylor's counsel informed Defendant Marshall that Mr. Taylor had, in fact, timely elected death by nitrogen hypoxia. *Id.*

---

[2] Exhibit B is attached to this Complaint and incorporated by reference as if fully set forth herein.

57. On August 2, 2019, Defendant Marshall moved to withdraw the motion to set Mr. Taylor's execution date in part because counsel for Mr. Taylor provided Defendant Marshall copies of attorney-client communications in or around the time that Mr. Taylor submitted his election form. *Id.*

58. In the withdrawal motion, Defendant Marshall represented that neither the Attorney General's office nor counsel for ADOC had Mr. Taylor's election form in their files. *Id.*

59. Defendant Marshall further represented that the State nevertheless intended to honor Mr. Taylor's election even though neither the Attorney General nor ADOC had a written election from him. *Id.*

60. Defendant Marshall represented that the documentation provided by Mr. Taylor's counsel supported the "assertion that he made a timely election of nitrogen hypoxia." *Id.*

*Troubling Examples of Alabama Administering Its Lethal Injection Protocol*

61. As alleged, lethal injection is the default method of execution in Alabama. Recent examples illustrate the deeply troubling nature of the State's lethal injection protocol and underscore the gravity of the decision to opt into execution by nitrogen hypoxia.

62. In February 2018, the team responsible for carrying out Doyle Lee Hamm's execution failed to access any peripheral or central veins. *See* Melissa Brown, *Doyle Lee Hamm punctured at least 11 times in execution attempt, report states*, The Montgomery Advertiser, March 5, 2018, https://www.montgomeryadvertiser.com/story/news/2018/03/05/execution-attempt-so-painful-inmate-hoped-get-over-report-states/397304002/. As a result, the team stopped the execution after hours of trying. *Id.* By then, however, the damage had already been done as the execution team had punctured Mr. Hamm at least 11 times in his limbs and groin, causing him to bleed profusely. *Id.*

63. After the execution was terminated, Mr. Hamm was unable to stand on his own and collapsed as he was being taken off the gurney.

64. Following this horrific event, the State agreed not to subject Mr. Hamm to any further execution attempts. He later died of natural causes. *See* Sam Roberts, *Doyle Hamm, Who Survived a Bungled Execution, Dies in Prison at 64*, The New York Times, Nov. 29, 2021, https://www.nytimes.com/2021/11/29/us/doyle-hamm-dead.html.

65. More recently, Joe Nathan James Jr. was executed on July 28, 2022, following an initially unexplained three-hour delay during which ADOC's execution personnel repeatedly failed to establish an intravenous line for the lethal injection.

66. Witnesses to Mr. James's execution have publicly stated that before his execution began, Mr. James did not open his eyes and did not move on the gurney. *See* Evan Mealins, *ADOC 'cannot confirm' if Joe Nathan James Jr. was fully conscious before his execution*, The Montgomery Advertiser, Aug. 2, 2022, https://www.montgomeryadvertiser.com/story/news/2022/08/02/joe-nathan-james-jr-execution-adoc-cannot-confirm-if-conscious/10168003002. The witnesses have also said that Mr. James was silent when asked for his final words. *Id.*

67. Defendant Hamm has recently claimed that Mr. James was not sedated prior to the flow of the lethal injection, and other prison officials have said that they "cannot confirm" whether Mr. James was fully conscious before his execution began. *Id.*

68. Moreover, despite ADOC's public statements that "nothing out of the ordinary" happened in the course Mr. James's execution, an autopsy showed that he "suffered a long death" and that his body showed "pool[s] of deep bruising" as well as a deep incision on his arm called a "cutdown" that indicated "that the IV team was unqualified for the task in a most dramatic way."

*See* Elizabeth Bruenig, *Dead to Rights: What did the state of Alabama do to Joe Nathan James in the three hours before his execution?*, The Atlantic, Aug. 14, 2022, https://www.theatlantic.com/ideas/archive/2022/08/joe-nathan-james-execution-alabama/671127/

69. The State's lethal injection protocol has come under intense scrutiny in other cases as well, including because the first drug administered in the three-drug protocol, midazolam, has been found to not reliably keep recipients unconscious. *See* Brian Lyman, *A history of execution methods in Alabama, and the controversies around them,* The Montgomery Advertiser, Oct. 14, 2021, https://www.montgomeryadvertiser.com/story/news/2021/10/14/history-execution-methods-alabama/8425445002/.

## CAUSES OF ACTION

### COUNT ONE: VIOLATION OF MR. MILLER'S RIGHT TO PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

### AGAINST ALL DEFENDANTS

70. Mr. Miller repeats and realleges paragraphs 1 through 69 as though fully set forth herein.

71. The Fourteenth Amendment prohibits the deprivation of life, liberty or property without due process of law.

72. Alabama Code § 15-18-82.1(b)(2) contains a state-created liberty interest for death-sentenced inmates in Alabama to choose one of two state-sanctioned execution methods.

73. Mr. Miller completed and signed his election form during the election period in June of 2018, indicating that he opted into execution by nitrogen hypoxia rather than lethal injection.

74. Mr. Miller timely returned the form to the prison official at Holman who was collecting completed forms from other inmates.

75. Defendants subsequently lost or misplaced Mr. Miller's form and have refused to recognize Mr. Miller's meritorious election.

76. Defendants now intend to deprive Mr. Miller of his election by executing him through lethal injection.

77. To disregard Mr. Miller's election reflects Defendants' total failure to put in place any written rules or guidance whatsoever governing the election process. No written rules or guidance existed for distributing election forms. No written rules or guidance existed for collecting such forms. And no written rules or guidance existed for storing such forms. As such, it should come as no surprise that, once the warden at Holman took on the affirmative duty of providing some attempt at notice (through ad hoc distribution and collection of election forms), the adequacy of that notice and the process that followed utterly failed. Multiple election forms have been lost by the State, and there is no coherent process for honoring some misplaced forms, while disregarding others.

78. Mr. Miller has also been harmed by the lack of process surrounding his request to have a court resolve any factual disputes arising from his election. In opposition to having his execution via lethal injection be set, Mr. Miller filed a sworn-affidavit before the Alabama Supreme Court attesting that he completed and timely returned his election form. In response, Defendant Raybon filed his own affidavit stating that, contrary to Mr. Miller's own sworn statement, he has not found a record of Mr. Miller's form. In doing so, Defendants created a quintessential factual dispute that can only be resolved by a trial court after an evidentiary

hearing. The Alabama Supreme Court ignored that dispute, declined to remand the issue to a lower court, and granted the State's motion to set an execution date.

79. The complete lack of process involving Mr. Miller's election form is a flagrant violation of Mr. Miller's due process rights.

**COUNT TWO: VIOLATION OF MR. MILLER'S RIGHT TO EQUAL PROTECTION UNDER THE LAW**

**AGAINST ALL DEFENDANTS**

80. Mr. Miller repeats and realleges paragraphs 1 through 79 as though fully set forth herein.

81. Pursuant to the Fourteenth Amendment, Mr. Miller is entitled to equal protection under the law.

82. Mr. Miller is subject to disparate treatment as compared to similarly-situated death-row inmates at Holman who, like Mr. Miller, submitted election forms indicating their preference to be executed by nitrogen hypoxia.

83. More specifically, Mr. Jarrod Taylor and Mr. Miller are both death-row inmates at Holman who submitted election forms. Defendants have lost or misplaced election forms submitted by both men. Rather than treat Mr. Taylor and Mr. Miller equally, Defendants are recognizing Mr. Taylor's election (and not Mr. Miller's election) in part because Defendant Marshall received copies of attorney-client communications from around the time of Mr. Taylor's election.

84. Nowhere in Ala. Code § 15-18-82.1(b) are Defendants permitted to replace a missing election form with attorney-client communications.

85. Defendants' decision to recognize Mr. Taylor's election but not Mr. Miller's has no rational basis. Both Mr. Taylor and Mr. Miller complied with Ala. Code § 15-18-82.1(b) by

submitting their elections in writing within the 30-day window. Both Mr. Taylor's form and Mr. Miller's form were lost by ADOC. Yet Defendants are arbitrarily treating Mr. Miller differently because he has not shown them attorney-client communications at the time of his election.

86. This disparate treatment is not rationally related to a legitimate government interest.

**COUNT THREE: VIOLATION OF MR. MILLER'S RIGHT UNDER THE EIGHTH AMENDMENT**

**AGAINST ALL DEFENDANTS**

87. Mr. Miller repeats and realleges paragraphs 1 through 86 as though fully set forth herein.

88. The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII.

89. The execution of an inmate may be "cruel and unusual" when it is carried out arbitrarily or capriciously. *Furman v. Georgia*, 408 U.S. 238 (1972); *Gregg v. Georgia*, 428 U.S. 153, 195 (1976).

90. The State of Alabama therefore has a "constitutional responsibility" to "apply its [capital punishment statutes] in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Godfrey v. Georgia,* 446 U.S. 420, 428 (1980).

91. As part of that responsibility, "procedures" are to be in place that prevent the arbitrary execution of an inmate. *Foster v. Strickland*, 707 F.2d 1339, 1347 n.16 (11th Cir. 1983). The State must also "make rationally reviewable the process for imposing a sentence of death." *Godfrey*, 446 U.S. at 428.

92. The decision to execute Mr. Miller by lethal injection rather than nitrogen hypoxia is unconstitutionally arbitrary. The only basis for executing Mr. Miller by lethal injection instead

15

of nitrogen hypoxia is that the State failed to retain his election form. If the State had not lost Mr. Miller's form, Mr. Miller would otherwise be executed by nitrogen hypoxia.

93. The State lost Mr. Miller's election form because the State failed to create, no less implement, adequate procedures for distributing, collecting, and storing such forms. Now, some inmates who elected to be executed by nitrogen hypoxia will have their elections honored by Defendants, while other inmates—who also elected to be executed by nitrogen hypoxia—will not. Even worse, among the group of inmates whose forms have been lost (*e.g.*, Mr. Miller and Mr. Taylor), Defendants are picking and choosing who will be executed by nitrogen hypoxia.

94. The State's failure to put any reliable procedures in place regarding the election process also prevents courts from rationally reviewing Defendants' efforts to carry out executions.

95. All of these actions run afoul of the Eighth Amendment's mandate that Alabama applies its capital punishment statutes in a manner that is not arbitrary and capricious.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

(i) Schedule an evidentiary hearing focused on Mr. Miller's election form, including Mr. Miller's sworn statements that he completed and timely submitted the form to a prison official at Holman;

(ii) Enter a declaratory judgment that:
    a. Mr. Miller timely submitted his election form pursuant to Ala. Code § 15-18-82.1(b) and opted into execution by nitrogen hypoxia;

    b. Defendants' decision to seek execution of Mr. Miller and subject him to lethal injection rather than nitrogen hypoxia violates Mr. Miller's Eighth and Fourteenth Amendment rights;

(iii) Enter an injunction against Defendants requiring them to honor Mr. Miller's election under Ala. Code § 15-18-82.1(b);

(iv) Enjoin Defendants from executing Mr. Miller with the current lethal injection protocol; and

(v) Such other and further legal and equitable relief as this Court deems, just, and proper.

Dated: August 22, 2022

Respectfully submitted,

_____
J. Bradley Robertson
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Plaza
1819 5th Ave. N.
Birmingham, AL 35203
Tel: (205) 521-8188
Fax: (205) 488-6188
Email: brobertson@bradley.com

Daniel J. Neppl *(pro hac vice motion forthcoming)*
Stephen Spector *(pro hac vice motion forthcoming)*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email: dneppl@sidley.com
Email: sspector@sidley.com

Marisol Ramirez *(pro hac vice motion forthcoming)*
SIDLEY AUSTIN LLP
555 West Fifth Street
Suite 4000
Los Angeles, CA
Tel: (213) 896-6000
Fax: (213) 896-6600
Email: marisol.ramirez@sidley.com

*Attorneys for Plaintiff Alan Eugene Miller*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing was filed with the Clerk on this 22nd day of August, 2022, and will be served via process server on the following parties:

John Q. Hamm
Alabama Department of Corrections
301 South Ripley Street
Montgomery, AL 36130-1501

Terry Raybon
Holman Correctional Facility
866 Ross Road
Atmore, AL 36503

Steve Marshall
Attorney General's Office
501 Washington Avenue
Montgomery, AL 36104

_____
OF COUNSEL