## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALAN EUGENE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. **2:22-cv-00506-RAH** |
| | ) |
| JOHN Q. HAMM, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **Defendants' Motion for a More Definite Statement**

COMES NOW Defendants John Q. Hamm, Commissioner of the Alabama Department of Corrections, Steve Marshall, Attorney General, and Terry Raybon, Warden, Holman Correctional Facility, and move this Honorable Court to order Plaintiff Alan Miller to provide a more definite statement. Such relief is required in order that each Defendant can determine whether a motion pursuant to Rule 12(b) is warranted or, if not, to permit a responsive pleading to be prepared. At present, Defendants cannot plead any defenses or prepare a responsive pleading due to Miller's use of a "shotgun pleading" containing three counts "where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and that last count to be a combination of the entire complaint." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir.

2015).¹ Miller's complaint, as drafted, makes it difficult (if not impossible) for Defendants Hamm, Marshall, and Raybon to understand the precise basis on which Plaintiff alleges each of them should be deemed liable under § 1983, seemingly treating Alabama's Attorney General, Commissioner of the Alabama Department of Corrections, and Warden of Holman Correctional Facility as interchangeable cogs in the machinery of government. As explained more fully below, Miller's complaint "is so vague or ambiguous that [Defendants] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Rule 12(e) requires a motion for a more definite statement to set forth the "details desired" and "the defects complained of." Because identification of the "details desired" provide useful context for assessing the complaint's deficiencies, Defendants begin there. Defendants' motion concludes with application of Eleventh Circuit precedent to the complaint to explain why Defendants are entitled to the details they request.

---

¹ For example, Count I of the complaint purports to allege a procedural due process claim against the Warden of Holman Correctional Facility, the Commissioner of the Alabama Department of Corrections, and the Alabama Attorney General by incorporating the first 69 paragraphs of the complaint (Doc. 1 at pp. 12-14). Count II of the complaint, alleging a violation of Miller's constitutional right to equal protection under the law as to all three Defendants, incorporates both the first 69 paragraphs of the complaint *and* the ten paragraphs comprising Count I (Doc. 1 at 13-15). Count III of the complaint, alleging a violation of the Eighth Amendment against all three Defendants, incorporates the first 69 paragraphs of the complaint, the ten paragraphs comprising Count I, *and* the seven paragraphs comprising Count II (Doc. 1 at pp. 15-16).

### 1. The Details Desired by Defendants

Defendants pray the Court will order Plaintiff to file a complaint that eschews the "shotgun pleading" approach and provides the following clarification or corrections:

- A. Identification of which specific factual allegations pertain to which claims for relief (counts) in the complaint (i.e., procedural due process, equal protection, Eighth Amendment);

- B. As to each claim for relief, clear identification of the legal theory(ies) and factual allegations asserted against each individual Defendant; and,

- C. Decoupling of the claims for relief or clarification that the Plaintiff does intend to assert an Eighth Amendment claim predicated on both an alleged procedural due process violation and an alleged equal protection violation (or, that his equal protection claim is intended to incorporate and be predicated upon his procedural due process claim).

As explained below, this would include clarifying whether Defendant Hamm's legal liability is predicated on a *respondeat superior* theory related to the allegations against Defendant Raybon and his predecessor, Warden Stewart. It would also include explaining the precise factual actions taken by each Defendant (or, the factual actions Miller contends *will be taken* by each Defendant) that would expose them to liability under § 1983.

Additionally, because Miller is seeking injunctive relief, Defendants are entitled to know (as to each count) the allegedly unconstitutional conduct *by each Defendant* Miller contends is sufficiently likely to occur in the future so as to justify

the grant of forward-looking relief. *See*, *e.g.*, *Wooden v. Board of Regents of Univ. System of Ga.*, 247 F.3d 1262, 1283-84 (11th Cir. 2001). Without further detail, Defendants cannot ascertain what specific unconstitutional act each is accused of being "likely" to commit in the future that would violate Miller's constitutional rights.

### 2. The Complaint's Defects

The more specific statement of details, requested above, are required to cure multiple defects in the complaint. First, the complaint makes it impossible for Defendants "to know which allegations of fact are intended to support which claim(s) for relief," due to Miller's use of a shotgun pleading. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) (quoting *Anderson v. Dist. Bd. Of Trustees of Cent. Florida Community Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Second, Defendants need a more definite statement as to the legal theory (or theories) and factual averments he relies upon to establish liability as to *each* Defendant. Additionally, Miller seeks prospective injunctive relief, but he incorporates factual pleadings attacking the manner in which the Alabama Department of Corrections performed its duties in June 2018, blurring the nature of his procedural due process claim and making it difficult to assess the application of a statute of limitations defense to this claim. (Doc. 1 at 8-10, 16.) Finally, it is unclear whether Plaintiff intends for his second and third claims for relief to necessarily

depend on proof of all prior legal claims. The manner in which each Defendant would respond to an Eighth Amendment claim necessarily predicated on Miller's successful proof of a procedural due process claim and an equal protection claim would differ markedly from their response to a free-standing Eighth Amendment claim.

### A.   Failure to Give Adequate Notice of Each Claim

Because Miller's "shotgun pleading" "adopts the allegations of all preceding counts," "allegations of fact that may be material to count one, but not count [three] are nonetheless made a part of count [three]." *Paylor*, 748 F.3d at 1126. For example, Miller's third claim for relief ("Eighth Amendment") incorporates paragraphs 1 through 86 of the Complaint (Doc. 1, ¶ 87). However, it is difficult for Defendants to understand how Miller's pleading that "The Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law" (Doc. 1, ¶ 71), applies to count III, so as to prepare a responsive pleading in accordance with the Federal Rules of Civil Procedure. Similarly, because Miller predicates his Eighth Amendment claim in count III on an "arbitrary and capricious" legal theory, it is unclear to Defendants how the execution of Joe Nathan James, Jr., ADOC's attempt to obtain intravenous access for Doyle Lee Hamm, or the efficacy of midazolam relate to this claim (Doc. 1, ¶¶62-69). Indeed, such allegations make it appear that Miller is launching a straightforward Eighth Amendment challenge to lethal

injection, rather than one relying on an "arbitrary and capricious" theory. Further information is required before each Defendant can meaningfully respond to Miller's third count.

In Count II of the Complaint, Miller asserts a violation of his right to equal protection under the law, incorporating each of the seventy-nine preceding paragraphs (including Count I) in support of this claim (Doc. 1, ¶ 80). Again, Defendants are at a loss as to how Miller's factual allegations about the efficacy of midazolam or Joe Nathan James, Jr.'s recent execution relate to his equal protection claim. If Miller intends for these factual averments to further his equal protection claim, Defendants (and the court) are entitled to know how these facts relate to the Fourteenth Amendment. Requiring Defendants to guess as to what affirmative defenses might apply to each claim, or whether the limitations on the type of relief available to Plaintiff under § 1983 apply to a specific claim (or Defendant), does nothing to promote judicial economy or fairness.

Miller's complaint consists of a large number of factual allegations about matters ranging from the efficacy of midazolam as used for lethal injection, the identity of a correctional officer tasked with collecting forms, the recent execution of Joe Nathan James, Jr., all the way to the denial of Miller's petition for certiorari review in the Supreme Court at the end of his direct appeal. (Doc. 1, ¶¶ 25, 37-38, 69.) Yet, Miller claims that each of these factual averments apply equally to each of

his three causes of action. (Doc. 1, ¶¶ 70, 80, 87.) Added into this factual *pot pourri* are random references to dicta in case law, Miller's legal conclusions, and media publications. Against this backdrop, for Defendants to respond would be akin to trying to "nail Jell-o to a wall."

In *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1359 (11th Cir. 2018), the court discussed a complaint similar to the one at issue here. There, a defendant pleaded that this type of drafting made it impossible for the defendant to "know which factual allegations pertain[ed] to which of Plaintiffs' claims." *Id*. The court observed that once a defendant provides such an explanation, this is "as complete an explanation of the defects in [the] complaint as [plaintiff] could have asked for." *Id*.

### B. Failure to Give Adequate Notice to Each Individual Defendant

Miller's complaint fails to set forth the basis for each Defendant's alleged legal liability and the precise acts (or omissions) giving rise to the alleged constitutional violations. This is problematic for several reasons. First, Defendant Marshall has a right to know how he is alleged to have violated Miller's constitutional rights in relation to the Alabama Department of Corrections' "failure to put in place any written rules or guidance whatsoever governing the election process" (Doc. 1, ¶ 77). Similarly, Defendant Hamm has the right to know whether Miller is attempting to proceed under a theory of *respondeat superior*, as explanation for the factual averment that Defendant Raybon filed an affidavit in the Alabama

7

Supreme Court several months ago (Doc. 1, ¶ 78). By way of illustration, clarification as to whether Count I is predicated on a *respondeat superior* theory of liability as to Defendant Hamm's position over Defendant Raybon would be material to their ability to file any response. *See Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022).

Miller's "shotgun pleading" approach is also problematic for Defendant Marshall. The Attorney General is not mentioned in the factual averments contained in paragraphs 31 to 45, made under the subtitle "The Nitrogen Hypoxia Election" (Doc. 1, pp. 6-8), nor is he mentioned in the factual averments contained in paragraphs 46 to 52, made under the subtitle "*Defendants* Lose Mr. Miller's Submitted Election Form" (Doc. 1, pp. 8-9). In the factual averments of paragraphs 61 to 69, under the subtitle "Troubling Examples of Alabama Administering Its Lethal Injection Protocol," there is also no mention of Attorney General Marshall. Of the first 69 paragraphs in the complaint, Attorney General Marshall is mentioned in 9 paragraphs, one-third of which are the three paragraphs identifying him as a Defendant-party. Defendant Marshall is referenced in the complaint as follows:

- ¶ 7 (noting that Miller's counsel has "informed the Attorney General's *office* that he too timely submitted an election form" for nitrogen hypoxia);

- ¶ 17-19 (noting that Steve Marshall is Alabama's Attorney General, that he has "the power and authority to implement, interpret, and enforce Alabama state law," and that his employees initiate the

  execution process "by identifying individuals for whom they move to set an execution date,");

- ¶ 56 (alleging that Defendant Marshall represented to a court in 2019 that inmate Jarrod Taylor had not made a nitrogen hypoxia election);

- ¶ 57 (noting that in August 2019 Defendant Marshall withdrew the motion to set inmate Taylor's execution date based on evidence received from Taylor's counsel);

- ¶ 58-60 (alleging that Defendant Marshall represented that neither ADOC nor the Attorney General's Office had a written election form from Taylor, but that it would honor Taylor's "timely election" based on the evidence provided); and,

- 83 (alleging, in relation to Count II, that Defendant Marshall recognized inmate Taylor's timely election because of evidence submitted by Taylor's counsel).

Again, these factual averments do not explain why Miller claims Defendant Marshall is legally liable for a constitutional procedural due process violation. As with Defendants Hamm and Raybon, Miller's complaint is unclear as to whether he seeks to hold Defendant Marshall accountable for the performance of his legal duties under a theory of *respondeat superior* as to legal filings made by his assistant and deputy attorneys general.

  More specific facts with respect to Defendant Marshall are absolutely critical to his ability to determine an appropriate response to Miller's complaint. As noted recently in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), a plaintiff seeking an injunction against a state's attorney general must prove "enforcement

authority" as to the specific statute under attack. Defendant Marshall should not have to guess as to the theory that Miller is employing to allege that injunctive relief is available as to Alabama's Attorney General.

Defendants have a recognizable interest "to resolve, upfront, the specific contours of the dispute, thereby lessening or even eliminating the need for costly discovery." *Paylor*, 748 F.3d at 1127. This interest is even more important where, as here, Plaintiff filed his lawsuit on the eve of his execution. Considering that Plaintiff is likely to approach the court in the near future with a request to stay his September 22, 2022, execution date, Plaintiff should be required to do his part to provide the Court and Defendants with "simple, concise, and direct" allegations showing that he "is entitled to relief" as to each claim *and* Defendant, using "numbered paragraphs, each limited as far as practicable to a single set of circumstances," with claims founded on separate transactions and occurrences stated in separate counts. *See* Fed. R. Civ. P. 8, 10.

Even aside from Defendants' personal interests in obtaining a more definite statement, Miller's shotgun pleading is of the sort that "exact an intolerable toll on the trial court's docket, lead[ing] to unnecessary and unchanneled discovery, and impos[ing] unwarranted expense on the litigants, the court, and the court's parajudicial personnel and resources." *Jackson*, 898 F. 3d at 1357 (quoting *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)). Inevitably, this means "justice is

delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Id*. These important considerations warrant granting the relief Defendants request.

## CONCLUSION

For these above-mentioned reasons, Defendants pray this Honorable Court will grant their motion and order Plaintiff Miller to redraft his pleading to (1) identify the specific factual allegations pertaining to each of his claims for relief (counts) in the complaint (i.e., procedural due process, equal protection, Eighth Amendment); (2) as to each individual claim for relief, identify the legal theory(ies) and factual allegations asserted against *each* individual Defendant, and (3) either decouple his claims for relief or clarify that he does intend to assert an Eighth Amendment claim predicated on both an alleged procedural due process violation and an alleged equal protection violation (or, that his equal protection claim is intended to incorporate and be predicated upon his procedural due process claim).

Respectfully submitted,

Steve Marshall
*Attorney General*
BY—


**s/ James R. Houts**
James R. Houts
*Deputy Attorney General*

>                              */s Audrey Jordan*
>                              Audrey Jordan
>                              *Assistant Attorney General*

# CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system. I also served a copy upon counsel for the plaintiff via electronic mail, addressed as follows:

James Bradley Robertson
brobertson@bradley.com

Daniel J. Neppl
dneppl@sidley.com

Marisol Ramirez
Marisol.ramirez@sidley.com

Stephen Spector
sspector@sidley.com

>                              *s/ James R. Houts*
>                              James R. Houts
>                              *Deputy Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL  36130
Office (334) 353-1513
Fax (334) 353-8400
James.Houts@AlabamaAG.gov