## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALAN EUGENE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. **2:22-cv-00506-RAH** |
| | ) |
| STEVE MARSHALL, Alabama | ) |
| Attorney General, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

### Defendant Steve Marshall's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

COMES NOW Defendant Steve Marshall, Alabama Attorney General, and moves this Honorable Court to dismiss Plaintiff Alan Eugene Miller's amended complaint (Doc. 18) for failure to state claims upon which relief can be granted. As shown below, Defendant Marshall is entitled to dismissal of all three claims for relief pleaded in the amended complaint.

**I.**     **Defendant Marshall is entitled to dismissal of Miller's first claim for relief (Procedural Due Process) because it fails to state a claim for which relief can be granted as to Alabama's Attorney General.**

In his first claim for relief, Miller's amended petition pleads that Defendant Marshall violated his right to procedural due process. But the amended complaint, like Miller's original complaint, continues to treat Defendants Marshall, Hamm, and Raybon as interchangeable cogs in the machinery of government. Nonetheless,

Defendant Marshall can demonstrate he is entitled to dismissal for failure to state a claim upon which relief can be granted, especially in light of Miller's response to the Court's order to show cause (Doc. 16).

Dismissal is warranted because, as a matter of law, Defendant Marshall could not act or fail to act under color of state law in a manner that would deprive Miller of his right to procedural due process, even accepting all of the specific factual averments of the complaint as true. Additionally, the facts alleged in the amended complaint, if true, would be insufficient to establish that Defendant Marshall is likely to conduct unlawful actions in the future that would permit the award of injunctive relief against him in his official capacity.

Liability of the Defendants (collectively) is alleged in the amended complaint based on the following averments:

- Plaintiff timely returned a nitrogen hypoxia election form to ADOC officials (Doc. 18 ¶ 78);

- Holman's warden instructed a correctional officer not to keep a log of names of those who returned nitrogen hypoxia election forms (*id.* ¶ 80);

- "Defendants," presumably including Defendant Marshall, "now intend to deprive Mr. Miller of his election by executing him through lethal injection" (*id.* ¶ 81);

- "Defendants," presumably including Defendant Marshall, "are responsible for ensuring that executions in Alabama comport with constitutional requirements" (*id.* ¶ 82);

- "Defendants," presumably including Defendant Marshall, "violated Mr. Miller's due process rights by failing to ensure an adequate procedure for protecting his election to be executed by nitrogen hypoxia" (*id.* ¶ 83);

- "Defendants," presumably including Defendant Marshall, "failed to create and maintain an accurate accounting of who timely submitted election forms and failed to implement a reviewable process for determining whether an election had been made" (*id.* ¶ 84);

- "When presented with Mr. Miller's sworn affidavit attesting that he timely elected to be executed by lethal gas, Defendants," presumably including Defendant Marshall, "refused to honor his election" (*id.* ¶ 85);

- "Defendants," presumably including Defendant Marshall, "had no (and currently have no) process for the evaluation of whether Mr. Miller made an election in accordance with the [election] statute" (*id.* ¶ 86);

- "Defendants," presumably including Defendant Marshall, failed "to put in place any written rules or guidance whatsoever governing the election process" (*id.* ¶ 87); and

- "Defendants," presumably including Defendant Marshall, "failed to create a coherent process for determining which elections would be honored when Defendants lost the election form" (*id.* ¶ 88).

While Plaintiff has asserted that Defendants' position that "they cannot discern [from his complaint] who is [alleged to be] responsible for the acts or omissions relating to Mr. Miller's" allegations "is a problem of their own making" (Doc. 16 at 6), the fact that Alabama law and pleading deficiencies in the amended complaint reveal that Miller has not pleaded a plausible claim against Defendant Marshall as to the first cause of action is a problem of *Miller's* own making. Because the factual

pleadings in the amended complaint do not state a plausible procedural due process cause of action as to Defendant Marshall, he is entitled to its dismissal.

**A.    The amended complaint does not plead facts establishing a plausible procedural due process claim against Defendant Marshall.**

In this circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). As to the state action requirement, a plaintiff must show that each named defendant acted (or failed to act) under color of state law to effectuate the deprivation of the inmate's constitutionally protected interest. *See, e.g.*, *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). As a matter of law, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Miller's amended complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). That is, there must be "more than a sheer possibility that a defendant has acted

unlawfully," and where "a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 556, 557).[1]

Defendant Marshall had no statutory duty to collect nitrogen hypoxia election forms in 2018, nor does the amended complaint plead specific facts that, if true, would prove the existence of such a duty. The Attorney General is not referenced in any provision of Title 15, Chapter 18, Articles 5 or 6 of the Code of Alabama of 1975. The only state official mentioned in section 15-18-82.1 of the Code is the warden of the institution where a death-sentence inmate is housed. In addition to these legal realities, the amended complaint avers that Miller provided a nitrogen hypoxia election form to a "prison official," not to Defendant Marshall. (Doc. 18 ¶ 50.)

Assuming all these facts are true, Miller's amended complaint pleads no plausible claim that Defendant Marshall acted under color of state law to violate his procedural due process rights in June or July 2018 during the collection of nitrogen hypoxia election forms or during the election period. After all, Defendant Marshall

---

1. Although the court is bound to the facts averred in the amended complaint for purposes of Rule 12(b)(6), 42 U.S.C. § 1997e(c) requires dismissal of a prisoner's § 1983 complaint *sua sponte* "if the court is satisfied that the action…fails to state a claim upon which relief can be granted." Thus, it is relevant for purposes of Defendant Marshall's motion that Plaintiff has conceded he "*does not know what Defendants did with his election form* once he placed it into the hands of a *correctional officer* as directed." (Doc. 16 at 6 (emphasis added).)

is not a "prison official," and § 1983 liability cannot be based on the actions of another. *See, e.g.*, *Iqbal*, 556 U.S. at 677. In short, the amended complaint does not plead a plausible procedural due process claim as to Defendant Marshall insofar as it attacks the process employed in June 2018 for distributing, collecting, and maintaining inmate election forms.

That leaves those factual pleadings in the amended complaint regarding Defendant Marshall's refusal to "honor" Miller's election after Marshall sought an execution date in the Alabama Supreme Court in April 2022. Accepting the facts in the amended complaint as true, Defendant Marshall sought Miller's execution date *before* "Miller and his counsel" informed his office that Miller submitted an election form. (Doc. 18 ¶¶ 7, 29, 54) And while the amended complaint pleads that Defendant Marshall has "the obligation and responsibility to withdraw motions to set an execution date that are unconstitutional" (*id.* ¶ 19), this is nothing more than the sort of "labels and conclusions" cautioned against in *Iqbal*. 556 U.S. at 678. Put another way, Miller's amended complaint does not offer "factual content" that would allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The "conclusory nature of [Miller's] allegations" is nearly identical to the deficient pleading that John Ashcroft was the "principal architect" who "knew of, condoned, and willfully and maliciously agreed to subject" a plaintiff to harsh conditions of confinement "as a matter of policy, solely on account of [his]

6

religion, race, and/or national original, and for no legitimate penological interest" that the Court rejected in *Iqbal*. 556 U.S. at 680.

Even if that deficiency were put to the side, the State's response to Miller's objection to the motion to set his execution date has been attached to and incorporated into the amended complaint as Exhibit C. Defendant Marshall argued (1) Holman's warden had no election form for Miller, (2) Miller offered no evidence other than his self-serving and uncorroborated affidavit, (3) that unlike inmate Taylor, Miller presented no contemporaneous documentation, such as the signed and completed election form possessed by Taylor's counsel, and (4) Miller did not provide contemporaneous notes from his counsel documenting the election, as Taylor did. These facts do not reflect that Defendant Marshall failed to withdraw an unconstitutional motion to set an execution date. A court's "duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

Finally, the actions taken by Defendant Marshall (or his assistants) in his prosecutorial role in the Alabama Supreme Court on a motion to set an execution

date cannot be the subject of a valid procedural due process claim. Miller concedes in the amended complaint that the Alabama Supreme Court considered his responsive filing but nonetheless issued the execution warrant. (Doc. 18 ¶ 30.) Miller's ability to present his factual and legal arguments directly to the Alabama Supreme Court cannot be anything other than adequate constitutional process, especially where he pleads a single justice dissented. Because Miller does not allege that Defendant Marshall did anything to interfere with his ability to seek relief from the Alabama Supreme Court, his due process claim cannot survive.[2]

To the extent that the amended complaint attacks Defendant Marshall for choosing to litigate, rather than compromise, a criminal sentencing matter (i.e., the setting of his execution date) in the Alabama Supreme Court, his claim does not sound in procedural due process. Instead, it appears that Miller is presenting a type of "malicious prosecution" theory in due process clothing. While Miller should not be able to pursue such a claim where his amended complaint alleges procedural due process, even if the Court were to liberally construe his pleading, Miller cannot hold Defendant Marshall liable under a "malicious prosecution"–type theory for legal actions taken before the Alabama Supreme Court unless he first pleads that he

---

2. If Miller were deprived of procedural due process during the proceedings before the Alabama Supreme Court resulting in the issuance of his execution warrant, the Alabama Supreme Court, not Defendant Marshall, would be the responsible party.

received a "favorable termination." *See, e.g.*, *Laskar v. Hurd*, 972 F.3d 1278 (11th Cir. 2020) (and the cases cited therein).[3] Paragraph 30 of the amended complaint is evidence that the proceedings did not terminate favorably for Miller, so Defendant Marshall is entitled to dismissal of Miller's claim that he acted unconstitutionally during a criminal proceeding before the Alabama Supreme Court.

**B.      The procedural due process claim in the amended complaint cannot support the relief requested against Defendant Marshall.**

Miller's claim does not support a grant of relief against Defendant Marshall for several reasons.

First, Defendant Marshall is not the statutory executioner. In Alabama, the warden of the William C. Holman Correctional Facility, or his or her deputy, is the individual responsible for executing a sentence of death in accordance with a lawful order of the Alabama Supreme Court. ALA. CODE § 15-18-82 (1975); *see also* ALA. R. APP. P. 8(d). In the event that neither the warden nor the deputy can perform this task, the Commissioner of the Alabama Department of Corrections is responsible for appointing an individual to execute sentence. ALA. CODE § 15-18-82 (1975). Although the Attorney General is responsible for attending to the State's criminal matters in the Alabama Supreme Court, including the duty to seek an execution date

---

3. This is in addition to the fact that this theory, as pleaded in the amended complaint, would not entitle Miller to declaratory or injunctive relief as to Defendant Marshall, which is discussed below.

at the appropriate time, *id.* § 36-15-1(2) (1975), the amended complaint concedes that Defendant Marshall sought Miller's execution date *before* being informed of Miller's allegation that he elected nitrogen hypoxia. (Doc. 18 ¶ 29.) This is dispositive because once the Alabama Supreme Court issues an execution warrant, the Attorney General plays no further role in the carrying out of the judicial sentence, just as he does not act as the jailer or the warden for those who are sentenced to prison as a result of his prosecutorial duties.

As such, Defendant Marshall is not a government official to whom this Court would properly direct an injunction specifying the manner of execution that can be employed as to Miller, as requested in the amended complaint. (*Id.* at 19–20.) Based on the amended complaint's pleading that Miller's execution date has been set (*id.* ¶ 30), there is no factual or legal basis under which Miller's procedural due process claim would entitle him to the injunctive relief requested as to Defendant Marshall.

Second, Miller's claims concerning Defendant Marshall's behavior after moving for Miller's execution are unsupported. The amended complaint admits that Defendant Marshall's decision to seek Miller's execution occurred before Miller and his counsel presented their nitrogen hypoxia election claim to his office, but it then alleges that Defendant Marshall "continue[d] to seek to execute Mr. Miller through lethal injection" after being so informed. (*Id.* ¶ 7.) Under those facts, the closest any prayer for relief comes to touching upon Defendant Marshall is the request for a

declaratory judgment that Defendant Marshall's "decision to seek execution of Mr. Miller and subject him to lethal injection" violates Miller's constitutional rights. But because the amended complaint pleads that Defendant Marshal's decision "to seek execution of Mr. Miller and subject him to lethal injection" occurred *prior to* Miller's claim of having elected nitrogen hypoxia having been communicated to Defendant Marshall, the declaratory relief Miller requests is wholly inconsistent with his own factual allegations. The Court would have to assume that the facts in the amended complaint are *not* true in order for Miller's prayer for declaratory relief to be valid.

Third, Defendant Marshall was properly carrying out a prosecutorial function when he moved for Miller's execution date. Prosecutors "performing 'prosecutorial functions' receive absolute immunity and are therefore not subject to suit under 42 U.S.C. § 1983." *Long v. Satz*, 181 F.3d 1275, 1278 (11th Cir. 1999). This absolute immunity extends to continuations of the sentencing process, such as Defendant Marshall's decision to seek Miller's execution date. *Allen v. Thompson*, 815 F.2d 1433, 1434 (11th Cir. 1987). For this reason, Miller is limited to injunctive or declaratory relief as to Defendant Marshall for actions relating to Defendant Marshall's prosecutorial acts.

But to obtain declaratory or injunctive relief, Miller must plead sufficient facts in his amended complaint that, if true, establish a plausible claim of a constitutional

11

violation, a serious risk of continuing irreparable injury if relief is not granted, and the absence of an adequate remedy at law. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (citing *Newman v. Alabama*, 683 F.2d 1312 (11th Cir. 1982)). Because the Alabama Supreme Court rejected Miller's factual claims and arguments and granted the State's motion to set an execution date, any "continuing irreparable injury" to Miller is the result of his failure to persuade the Alabama Supreme Court, not the prosecutorial actions of Defendant Marshall. Equally important, the very fact that Miller pleads that his claims were rejected establishes that he had and pursued an adequate remedy at law, negating his right to injunctive or declaratory relief. *See Sibley v. Lando*, 437 F.3d 1067, 1074 (11th Cir. 2005).

Fourth, at a minimum, the first claim for relief in the amended complaint is deficient because Miller does not allege the absence of an adequate remedy at law that would entitle him to declaratory or injunctive relief, as required for a procedural due process claim. But Miller does not merely fail to plead the absence of an adequate remedy at law; the amended complaint affirmatively pleads that Commissioner Hamm, another named defendant, "has the ability to remedy problems that arise due to ADOC's lack of adequate procedures" and is responsible for ensuring that all inmates in the custody of ADOC are treated constitutionally. (Doc. 18 ¶¶ 13–14.) Accepted as true, these pleadings acknowledge the legal reality that Miller has (or had) the state-law remedy of seeking a petition for mandamus (or

a petition for writ of certiorari) directed to the Commissioner of the Alabama Department of Corrections.[4] *See, e.g.*, *Crouch v. Allen*, 76 So. 3d 264 (Ala. Civ. App. 2011) (inmate seeking petition for writ of mandamus directed to Commissioner of Department of Corrections); *Barnes v. State Dep't of Corr.*, 751 So. 2d 24 (Ala. Civ. App. 1999) (same); *Perry v. State Dep't of Corr.*, 694 So. 2d 24 (Ala. Civ. App. 1997) (same); *State Dep't of Corr. v. Marks*, 659 So. 2d 647 (Ala. Civ. App. 1995) (same); *see also Ex parte Woods*, 941 So. 2d 259 (Ala. 2006) (discussing availability of mandamus and certiorari review to inmates alleging deprivation of due process). The availability of state-law mandamus relief is an adequate remedy at law for an alleged due process violation. *See Cotton v. Jackson*, 216 F.3d 1328, 1333 (11th Cir. 2000). Because Miller's amended complaint does not plead facts that would establish the absence an adequate remedy at law or otherwise explain his failure to pursue those available remedies, his amended complaint does not establish a right to injunctive or declaratory relief as to the procedural due process claim.

Finally, the amended complaint does "not direct this Court to any enforcement authority the attorney general possesses" in connection with Miller's execution as ordered by the Alabama Supreme Court. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534 (2021). Because Defendant Marshall is not the State's executioner, and

---

4. And even if these facts had not been pleaded in the amended complaint, as a matter of law, the Commissioner of the Alabama Department of Corrections has been subjected to state mandamus proceedings for the reasons Miller pleaded.

because the Alabama Supreme Court has issued an execution warrant setting the date for Miller's sentence of death to be executed, there are no facts pleaded in the amended complaint that, if true, would establish a serious risk of a continuing irreparable injury from Defendant Marshall in the future. Under such circumstances, the first claim for relief does not state a claim upon which injunctive relief could be granted or directed as to Defendant Marshall in his official capacity.

## II. Defendant Marshall is entitled to dismissal of Miller's second claim for relief (Fourteenth Amendment Equal Protection) because it fails to state a claim for which relief can be granted as to Alabama's Attorney General.

In his second cause of action, Miller alleges that Defendant Marshall violated his right to equal protection under the law. Miller contends that Defendant Marshall, as Alabama's Attorney General, acted under color of state law to treat him differently than inmate Jarrod Taylor. In other words, the amended complaint alleges a "class of one" equal protection theory. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). Using Miller's own words, Defendant Marshall's liability is tied to the "decision to recognize Mr. Taylor's [nitrogen hypoxia] election but not Mr. Miller's." (Doc. 18 ¶ 98.) This equal protection theory fails to state a claim upon which relief may be granted, however, because (1) the factual averments of Miller's complaint, accepted as true, establish that Taylor and Miller are not similarly situated in all relevant aspects as a matter of law; (2) the factual averments of Miller's complaint are "filled with facts that suggest a rational basis for the defendant's

14

actions"[5]; and (3) the allegedly unlawful actions of Defendant Marshall did not result in the setting of Miller's execution date.

**1.  The facts pleaded in Miller's complaint, accepted as true, establish that Miller was not similarly situated to inmate Jarrod Taylor in all relevant respects.**

Miller's complaint alleges that he and Taylor were similarly situated in the following respects: (1) both executed nitrogen hypoxia election forms during the statutory election period (Doc. 18 ¶¶ 49, 62, 95); (2) the Alabama Department of Corrections lost both inmates' election forms (*id.* ¶¶ 55, 56, 95); and (3) as a result, the State of Alabama sought execution dates for both Taylor and Miller (*id.* ¶¶ 29, 57). The differing treatment alleged in the amended complaint is that Defendant Marshall withdrew the State's motion to set an execution date for inmate Jarrod Taylor—after receiving documents from Taylor's counsel evidencing that an execution form had been completed within the statutory election period—but that he did not do so in response to Miller's affidavit claiming to have made an election in 2018. (*Id.* ¶¶ 54, 59, 96.) Accepting as true the factual averments in Miller's amended complaint, Defendant Marshall treated Miller differently than inmate Taylor in the Alabama Supreme Court proceedings because Miller did not provide the same quantum of evidentiary proof that an election was made in 2018. (*Id.* ¶ 98.)

---

5. *Griffin Indust., Inc.*, 496 F.3d at 1207.

The fact that Miller incorporated the State's motion to withdraw its motion to set an execution date in inmate Taylor's case into his amended complaint is dispositive as to this issue. (*Id.* ¶ 57; Doc. 18-2.) Because of that pleading decision, it is appropriate for this Court to *accept as true* that among the materials provided to the State by Taylor's counsel were counsel's representations that Taylor had made a timely election,[6] contemporaneous emails among Taylor's counsel "creating a record of conversations with Taylor" about the election, and Taylor's provision to his counsel of an election form signed in 2018 and sent to his counsel shortly after he made his election. (Doc. 18-2.) Against this backdrop, Miller pleads only that he provided an affidavit attesting that he timely elected to be executed by nitrogen hypoxia. (Doc. 18 ¶ 54.) Miller's amended complaint does not plead that he possesses similar evidence, nor does he plead that he provided similar evidence to Defendant Marshall or any other named defendant.

In a "class of one" equal protection claim, a plaintiff "must demonstrate that [he was] treated differently than someone who is *prima facie identical in all relevant aspects*." *Griffin Indus., Inc.*, 496 F.3d at 1205 (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). When "plaintiffs in [a] 'class of one' case[] challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities 'must be very similar indeed.'"

---

6. *See* ALA. R. PROF. COND. 4.1.

*Id.* (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)). Accordingly, where a plaintiff alleges facts that clearly prove they are not similarly situated to their named comparator, it is appropriate to dismiss for failing to state a claim upon which relief may be granted. *Id.* That is the case here.

Like the plaintiff in *Griffin Industries*, Miller's "problem is not that [his complaint] has said too little, but that it has said too much." *Griffin Indus., Inc.*, 496 F.3d at 1205. Miller attached and incorporated the State of Alabama's motion to withdraw its motion to set inmate Taylor's execution date into his complaint. (Doc. 18-2.) Thus, "[a]lthough [Miller's] compliant makes the conclusory allegation that [he] is similarly situated to [Taylor] in all relevant ways, the exhibits attached to the complaint plainly show that this is not the case." *Griffin Indus., Inc.*, 496 F.3d at 1205. A court's "duty to accept the facts in the complaint as true does not require [the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id.* at 1205–06 (citing *Associated Builders, Inc.*, 505 F.2d at 100). Thus, assuming the facts pleaded in Miller's complaint are true, *including Exhibit B*, he is not similarly situated in all relevant respects to inmate Jarrod Taylor.

For this reason, Miller's amended complaint fails to plead facts that, accepted as true, would establish a "class of one" equal protection claim as the second claim

for relief. Accordingly, Defendant Marshall is entitled to dismissal of the second claim for relief.

**2.    The facts pleaded in Miller's complaint, accepted as true, establish that a rational basis existed for Defendant Marshall's treatment of inmate Taylor, compared to his treatment of Plaintiff.**

Closely related to the amended complaint's failure to plead facts sufficient to establish that Miller was similarly situated to Taylor in all relevant aspects, his "complaint is filled with facts that suggest a rational basis for the defendant's actions." *Id.* at 1207. At its core, Miller's amended complaint alleges Defendant Marshall has treated him differently than Taylor because Miller did "not show [Defendant Marshall] attorney-client communications [made] at the time of his election." (Doc. 18 ¶ 98.) This factual averment, along with Exhibit B incorporated into the amended complaint, are sufficient to dismiss this claim because Alabama's Attorney General could rationally elect not to withdraw a motion to set an execution date based solely on the self-serving affidavit of a condemned inmate, especially when compared to the quantum of evidence supplied by inmate Taylor as described in the pleadings.

"Equal protection of the laws in the 'class of one' context requires no more than that [Miller] be 'secure[d]…against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Griffin Indus., Inc.*, 496 F.3d at 1208 (quoting

*Olech*, 528 U.S. at 564). Because Miller's own complaint pleads facts that, if true, could never establish a plausible claim that Defendant Marshall lacked a rational foundation for his conduct, the second claim for relief should be dismissed for failing to state a claim upon which relief can be granted.

3.   **The actions of Defendant Marshall challenged in the second cause of action did not result in Miller's September 22, 2022, execution date.**

In paragraph 100 of his complaint, Miller alleges that because of Defendant Marshall's alleged equal protection violation, "Miller is scheduled for execution by lethal injection on September 22, 2022." Not only is this allegation incorrect as a matter of law, but Miller's own complaint pleads specific facts that, accepted as true, would establish that Defendant Marshall's actions did not deprive him of a constitutionally protected right.

Miller concedes that his death sentence is the result of a state criminal proceeding that occurred long before Alabama sought his execution date. (Doc. 18 ¶¶ 24–25.) He further pleads that on April 19, 2022, Defendant Marshall, by and through his assistant attorneys general, moved in the Alabama Supreme Court to set Miller's execution date. (*Id.* ¶ 29.) As a legal matter, however, the responsible state actor for determining the "appropriate time" to "enter an order fixing a date of execution" is the Alabama Supreme Court. ALA. R. APP. P. 8(d). Thus, while the Attorney General can *suggest* to that court that it is an appropriate time for an

inmate's sentence of death to be carried out, only that court can enter an order to have a sentence of death executed. *Id.*; *see also* ALA. CODE § 15-18-82 (1975). Add to this fact the amended complaint's pleadings that Defendant Marshall was not informed of the Miller's alleged election until *after* the motion to set an execution date was filed (Doc. 18 ¶¶ 7, 29, 54), and there is no basis on which to conclude that Defendant Marshall unlawfully or improperly initiated the *suggestion* that the appropriate time had arrived for Miller's sentence to be carried out. Finally, because the amended complaint pleads that "On July 18, 2022, the Alabama Supreme Court granted the State's motion" and "set Mr. Miller's execution for September 22, 2022" (*id.* ¶ 30), the facts in Miller's amended complaint, if true, would prove Defendant Marshall is not the state actor responsible for the setting of Miller's execution date.

Defendant Marshall did not treat Miller any differently than Taylor when his employees filed a motion to set an execution date in the Alabama Supreme Court on April 19, 2022, according to Miller's pleading of events. The only alleged difference in treatment is that Marshall did not request the Alabama Supreme Court's permission to withdraw the motion after Miller supplied an affidavit claiming he had elected nitrogen hypoxia. But even so, the amended complaint concedes that Miller was permitted to file a brief in the Alabama Supreme Court asserting the existence of a factual dispute on the nitrogen hypoxia election issue and seeking factual development. (*Id.* ¶ 29.) Because the amended complaint concedes that the Alabama

Supreme Court was made aware of Miller's allegations, including the issues pertaining to inmate Taylor, his equal protection claim must fail.

Defendant Marshall did not act (or fail to act) under color of state law in a way that resulted in Miller's execution date being set. (*Id.* ¶¶ 7, 29, 54.) Even though Miller pleads in conclusory fashion that he was subjected to disparate treatment *after* Defendant Marshall sought Miller's execution, he also pleads that it was the Alabama Supreme Court, the only body who could order his sentence to be executed under color of state law, that ultimately rejected his claim. That court, not Defendant Marshall, determined that the appropriate time had arrived for execution of sentence. ALA. R. APP. P. 8(d). Under this reality, Miller's scheduled execution cannot be said to be the "result of the violation of Mr. Miller's Fourteenth Amendment rights" by Defendant Marshall.

## III.   Defendant Marshall is entitled to dismissal of Miller's third claim for relief (Eighth Amendment) because it fails to state a claim for which relief can be granted as to Alabama's Attorney General.

Miller's third claim for relief in the amended complaint is an Eighth Amendment claim brought under an "arbitrary and capricious" theory. Dismissal is warranted because that Eighth Amendment theory is concerned with the imposition of the sentence of death, something that Miller admits occurred more than two decades ago. (Doc. 18 ¶¶ 24–25.) As noted in *Godrey v. Georgia*, 446 U.S. 420, 427 (1980), the Court's decision in *Furman v. Georgia*, 408 U.S. 238 (1972), "held that

the penalty of death *may not be imposed under sentencing procedures* that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." The Court noted that this holding was repeated in *Gregg v. Georgia*, 428 U.S. 153 (1976). *Id*. Thus, if a change in a method of execution is not equivalent to the imposition of the death penalty, Miller's third cause of action must fail.

The addition of nitrogen hypoxia as a method of execution "did not change the penalty" for capital murder in Alabama, "but only the mode of producing" the penalty. *Malloy v. South Carolina*, 237 U.S. 180, 185 (1915). Though *Malloy* was decided in the context of an ex post facto challenge to a change in a state's method of execution, the Court's reasoning has direct application to its later Eighth Amendment jurisprudence. Subsequent Eighth Amendment cases pertaining to the arbitrary and capricious *imposition* of the death penalty are undoubtedly subject to the Court's prior decisions noting that a change in the method of execution is (1) not a change in the penalty or sentence imposed and (2) does not jeopardize a person's substantial personal rights against *arbitrary* legislative action. *Collins v. Youngblood*, 497 U.S. 37, 46 (1990) (quoting *Malloy*, 237 U.S. at 183) (emphasis added).

In *Smith v. Snow*, 722 F.2d 630, 632 (11th Cir. 1983), the Eleventh Circuit rejected an Eighth Amendment § 1983 claim predicated on the "arbitrary and capricious" application of the death penalty where plaintiff's application for

clemency had been denied by a board acting with "unfettered discretion." Because that unfettered discretion could never result in the imposition of the death sentence as to plaintiff, as he had already been sentenced to death, such unfettered discretion could not render the plaintiff's death sentence arbitrary and capricious in violation of the Eighth Amendment. *Id.* Here, because Miller had already been sentenced to death by lethal injection at the time nitrogen hypoxia was added as a statutory method of execution in Alabama, the election process he challenges cannot establish that the imposition of the death penalty in his case was arbitrary and capricious.

Finally, Defendant Marshall is entitled to dismissal of this cause of action because (1) he had no statutory duty to collect nitrogen hypoxia election forms (nor does the amended complaint allege specific facts that, if true, would prove that such a duty existed); (2) the Attorney General is not referenced in any provision of Title 15, Chapter 18, Articles 5 or 6 of the Code of Alabama of 1975; (3) the only state official mentioned in section 15-18-82.1 of the Code is the warden of the institution where a death-sentenced inmate is housed; and (4) the amended complaint avers that Miller provided a nitrogen hypoxia election form to a "prison official," not to Defendant Marshall. (Doc. 18 ¶ 50.) Further, Defendant Marshall is not a "prison official," and § 1983 liability cannot be based on the actions of another. *See, e.g.*, *Iqbal*, 556 U.S. at 677. Nor does Defendant Marshall have any statutory duties relating to the execution of Miller's judicial sentence on September 22, 2022, other

23

than representing the State and its officials in state or federal courts. Under this legal reality, and in the light of the absence of any specific factual pleadings in the amended complaint to the contrary, Miller's third cause of action does not state a claim for which relief can be granted as to Alabama's Attorney General because Miller has not identified any acts or omissions on the part of Defendant Marshall that would be actionable under the Eighth Amendment.

For these reasons, Defendant Marshall is entitled to the dismissal of the third claim for relief in Miller's amended complaint.

## CONCLUSION

For the above-mentioned reasons, Defendant Marshall prays that this Honorable Court will grant his motion to dismiss Miller's amended complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Steve Marshall
*Attorney General*
BY—


*s/ James R. Houts*
James R. Houts
*Deputy Attorney General*


*/s Audrey Jordan*
Audrey Jordan
*Assistant Attorney General*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system. I also served a copy upon counsel for the plaintiff via electronic mail, addressed as follows:

James Bradley Robertson
brobertson@bradley.com

Daniel J. Neppl
dneppl@sidley.com

Marisol Ramirez
Marisol.ramirez@sidley.com

Stephen Spector
sspector@sidley.com

*s/ James R. Houts*
James R. Houts
*Deputy Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Office (334) 353-1513
Fax (334) 353-8400
James.Houts@AlabamaAG.gov