## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALAN EUGENE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Case No. <u>2:22-cv-00506-RAH</u>** |
| | ) |
| TERRY RAYBON, Warden, Holman | ) |
| Correctional Facility, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

### Defendant Terry Raybon's Motion to Dismiss Pursuant to
### Rule 12(b)(6) of the Federal Rules of Civil Procedure

COMES NOW Defendant Terry Raybon, Warden, Holman Correctional Facility, and moves this Honorable Court to dismiss Plaintiff Alan Eugene Miller's amended complaint (Doc. 18) for failure to state claims upon which relief can be granted. As to Miller's first cause of action (procedural due process), the facts pleaded in the complaint plainly establish that the claim is time-barred under circuit precedent. Additionally, Miller's reliance on a negligent-loss theory and his failure to plead facts sufficient to establish the elements of a procedural due process claim would require dismissal. As to his second claim for relief, the amended complaint fails to plead facts that would establish that Defendant Raybon performed any acts treating Plaintiff differently than inmate Jarrod Taylor and fails to plead a viable and plausible "class of one" equal protection claim. Plaintiff's final cause of action

(Eighth Amendment "arbitrary and capricious") pleads facts showing that this Eighth Amendment provision does not apply in this case.

**I.   Defendant Raybon is entitled to dismissal of Miller's first claim for relief (procedural due process) because it fails to state a claim for which relief can be granted.**

In his first claim for relief, Miller's amended petition alleges that Defendant Raybon, in his official capacity, violated Miller's right to procedural due process. Initially, Defendant Raybon is entitled to dismissal of this ground for relief because under the facts pleaded and accepted as true, it is evident that Miller's claim is time-barred. Second, to the extent the amended complaint can be read as asserting a procedural due process violation based on the negligent loss or misplacement of Miller's nitrogen hypoxia election form, his claim is not cognizable under § 1983. Finally, the complaint does not plead facts sufficient to show that Defendant Raybon has committed acts under color of law to establish a viable or plausible procedural due process claim, and he was not a final policymaking official with authority to "honor" Miller's nitrogen hypoxia election (based on Miller's affidavit filed in the Alabama Supreme Court).

While each of these grounds warrants dismissal of the complaint as to Defendant Raybon, the Court's analysis must begin with what Miller alleges Defendant did or did not do under color of state law. The amended complaint, however, continues the original complaint's interchangeable treatment of the named

defendants, pleading "Defendants" throughout each cause of action, even though Defendant Raybon's job duties, legal authority, and conduct over the past four years are not the same as those of Defendant Hamm, the Commissioner of the Alabama Department of Corrections, and Defendant Marshall, Alabama's Attorney General. For this reason, Defendant Raybon must first inform the Court of the "fair notice of what the [plaintiff's] claim is and the ground upon which it rests" he takes from Miller's amended complaint in order to explain why he is entitled to dismissal. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**1.    The amended complaint's factual allegations of a procedural due process violation as to Defendant Raybon.**

At the outset, although Miller asserts that each of the initial seventy-three paragraphs of his amended complaint apply equally to each of his causes of action, this cannot be accurate. For example, Defendant Raybon cannot divine how Defendant Hamm's public statement after a recent execution (Doc. 18 ¶ 70) relates to the allegation of a due process violation in the first cause of action. Rather than respond to all seventy-three paragraphs in the complaint, Defendant Raybon identifies the facts falling within the scope of his official position or that clearly relate to the elements of a procedural due process claim brought under § 1983.

In this circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate

process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). As to the state action requirement, a plaintiff must show that each named defendant acted (or failed to act) under color of state law to effectuate the deprivation of the inmate's constitutionally protected interest. *See, e.g.*, *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982); *see also LaMarca v. Turner*, 995 F.2d 1526, (11th Cir. 1993) (quoting *Williams*, at 1380) ("[S]ection 1983 'requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation."). As a matter of law, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.

Concerning Defendant Raybon, the amended complaint primarily alleges that Miller was deprived of a constitutionally protected interest in his nitrogen hypoxia election through a faulty implementation of the nitrogen hypoxia election provisions contained in Alabama law. Specifically, the amended complaint identifies the deprivation of "a state-created liberty interest for death-sentenced inmates" rooted in section 15-18-82.1 of the Code of Alabama (1975). (Doc. 18 ¶ 76.) Miller further alleges that Defendant Raybon's predecessor, Warden Cynthia Stewart, or unnamed prison officials "lost or misplaced" his election form after he submitted it in June

2018 and have subsequently refused to "recognize [his] meritorious election." (*Id.* ¶ 80.)

The amended complaint alleges several facts concerning inadequate processes as to Alabama's nitrogen hypoxia election period that pertain to the office of Warden of Holman Correctional Facility, but not to Defendant Raybon individually:

- That Warden Stewart[1] "did not delineate a process for distributing, collecting or storing records of an election" (*id.* ¶ 33);

- That "the time at Holman during which the election period was underway has been publicly described as extremely disorganized" (*id.* ¶ 34);

- That Warden Stewart directed a subordinate to "to distribute [an] election form to every person on death row" but also told the subordinate "not to keep track of who took the form and who didn't, and who returned the form and who did not" (*id.* ¶ 39);

- That the subordinate "did not create a list logging the names of the individual[s] from whom he collected an election form" (*id.* ¶ 41);

- That the "collection of the forms was also extremely disorganized" (*id.* ¶ 44);

- That the warden "failed to create a reliable system for collecting and recording the election forms" (*id.* ¶ 45);

- That the warden "did not create a list or otherwise log or memorialize the names of people who turned in" forms and did not "memorialize a process for storing the forms" (*id.* ¶¶ 46–47); and

---

1. Warden Stewart was Defendant Raybon's predecessor in office. An "official-capacity claim" is "only nominally against the official and in fact is against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Dugan v. Rank*, 372 U.S. 609, 611, 620–22 (1963)).

- That the warden "entirely failed to implement any written process for providing notice, distributing, collecting, or storing election forms, and as a result, ADOC has" lost Miller's election form (*id.* ¶ 55).

The amended complaint also alleges the following facts or inadequate processes that are unrelated to the official duties of the Holman warden or to Defendant Raybon individually:

- That the statute failed to "specify the type of manner of writing required for an inmate to elect nitrogen hypoxia" (*id.* ¶ 32);

- That the statute failed to delineate a process for distributing, collecting or storing records of a[ nitrogen hypoxia] election" (*id.* ¶ 32);

- That ADOC "did not record which inmates received the election forms," that "several individuals on death row never received an election form," and that inmates "were not notified of the impending deadline" (*id.* ¶ 42);

- That Miller returned his election form to a "prison official who was collecting completed forms from other inmates" "at the same time" the official was collecting forms from other inmates" (*id.* ¶¶ 50, 78);

- That the prison official who received Miller's form refused to copy or allow him to notarize his election form (*id.* ¶ 51);

- That through the conduction of an "arbitrary and capricious process," Miller's election has not been honored (*id.* ¶ 63); and

- That "Defendants" lost or misplaced Miller's form (*id.* ¶ 80).

Accepting these factual allegations as true, they warrant dismissal of the first cause of action in Miller's amended complaint for failing to state a claim upon which relief can be granted because the claim is barred by the statute of limitations,

6

improperly relies on a negligence theory and vicarious liability, and otherwise fails to establish the required causation between Defendant's conduct and the constitutional violation alleged.

**2.      Miller's procedural due process claim is barred by the applicable statute of limitations.**

Defendant Raybon is also entitled to a dismissal of Miller's first claim for relief on statute of limitations grounds. A statute of limitations dismissal pursuant to Rule 12(b)(6) is warranted whenever the facts pleaded in the complaint, taken as true, show that the plaintiff's claims are time-barred. *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)). All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the action has been brought. *See Boyd v. Warden, Holman Corr. Facility*, 856 F. 3d 853, 872 (11th Cir. 2017). For Alabama inmates like Miller, the applicable limitations period is two years. *Id*.

Determining when the statute of limitations begins to run depends on the factual allegations pleaded in support of the claim for relief, as well as the nature of the injury alleged. In addition to the factual pleadings discussed in the foregoing section, Miller identifies the following constitutionally inadequate processes that are the subject of his procedural due process claim against Defendant Raybon in his official capacity as warden:

- "Failing to ensure an *adequate procedure* for protecting his election to be executed by nitrogen hypoxia" (Doc. 18 ¶ 83);

- Failing "to create and maintain an accurate accounting of who timely submitted election forms and failed to implement a *reviewable process* for determining whether an election had been made" (*id.* ¶ 84 (emphasis added));

- Failing to have a "*process* for evaluating whether Mr. Miller made an election" (*id.* ¶ 86); and

- A "total failure to put in place any written rules or guidance whatsoever governing the election process," including the lack of "written rules or guidance…for distributing election forms [or] collecting such forms [, or] storing such forms" (*id.* ¶ 87).

Applying these allegations to Miller's factual pleadings, the determination of when his procedural due process claim accrued and the statute of limitations began to run is whenever "the facts which would support a cause of action [were] apparent or should [have been] apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996). Thus, the question is whether the facts pleaded in the complaint, applied to the inadequate procedures and resulting injuries alleged, plainly show that the claim is time-barred.

Accepting the facts of the amended complaint as true, Miller made the "time-sensitive and irreversible election" (*id.* ¶ 45) to be executed by nitrogen hypoxia in June 2018 (*id.* ¶¶ 49, 77). Miller was aware of "the gravity of the election decision" (*id.* ¶ 45) when he "returned [his] form to the prison official who was collecting completed forms" (*id.* ¶ 50), and that prison official "refused both of Mr. Miller's

requests" to have his form "copied and notarized so as to record his election" (*id.* ¶ 51). Miller did not challenge this prison official's refusal to provide him with these means that would help him "to record his election" within two years of this incident, even though the risks of not being permitted a copy of the completed election form should have been apparent to a person with a reasonably prudent regard for his rights.

In fact, the refusal to provide a copy of the completed election form to Miller, or to permit the form to be notarized, are facts directly implicating Paragraph 83 of the amended complaint, "Defendants violated Mr. Miller's due process rights by failing to ensure an adequate procedure for protecting his election to be executed by nitrogen hypoxia." Those factual pleadings also implicate Paragraph 84, "Defendants…failed to implement a reviewable process for determining whether an election had been made." Thus, in June 2018, the facts pleaded in Miller's complaint concede that he had already felt the sting of injury from these procedural due process violations.

This confirms that the alleged inadequacies in the processes for distributing, collecting, and storing forms that Miller alleges were attributable to Defendant Raybon's predecessor, Warden Stewart, notwithstanding the amended complaint's repetitive reference to "Defendants." The amended complaint concedes plainly that Stewart was the warden during the election period (*id.* ¶ 36), that she instructed a subordinate employee to collect the forms without an adequate procedure for

accountability (*id.* ¶¶ 39, 41), and that her process for collecting the forms was "extremely disorganized" (*id.* ¶ 44). Defendant Raybon is not the subject of a single specific pleading about the distribution, collection, and storage of *Miller's* election form. Thus, the inadequacies in the processes and procedures challenged in the first cause of action have existed since Miller says he submitted his form in June 2018 and was refused a copy or notary services, well over two years prior to the filing of his lawsuit.

According to the amended complaint, Miller was given additional notice of these inadequate processes in July 2019 when the State moved to set an execution date for inmate Jarrod Taylor. (*Id.* ¶¶ 51–62.) Accepting Miller's facts as true, the danger of the alleged inadequacies in ADOC's policies and processes became far more apparent because ADOC lost Taylor's nitrogen hypoxia election form. Based on the Taylor incident alone, a reasonably prudent inmate who had elected nitrogen hypoxia would have asked about their own election, either to an answer or to establish the absence of an adequate state remedy. An inmate who had been refused notary services and a copy of his completed election form should have been more keenly aware of the existence of this cause of action.

In the due process context, if Miller had no adequate state remedy to address the prison official's refusal to provide him with a copy of his completed election form, he felt the sting of that injury over four years ago, and he should have

10

vindicated his rights then. *See Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (per curiam) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."). And once inmate Taylor's situation occurred, the gravity of the situation would have been apparent to any reasonably prudent inmate who had elected nitrogen hypoxia, sufficient to ask for confirmation of their own election. Had a prison official refused to provide the information then, it would have been one more example of a constitutionally inadequate process. On the other hand, if confirmation were provided in response to such an inquiry, that would remedy the risks alleged in the amended complaint.

The amended complaint does not allege that Miller or his counsel inquired as to whether ADOC possessed an election form for him following the "extremely disorganized" (Doc. 18 ¶¶ 34, 44), "chaotic process" (*id.* ¶ 42) described in the complaint. Nor does it allege that Miller or his counsel made such inquiries after it became apparent during the Taylor incident (as pleaded in the amended complaint) that Defendants had not "created and followed execution procedures for nitrogen hypoxia" (*id.* ¶ 89), or that Miller was refused an answer or given incorrect information. Instead, Miller sat on his hands for years after the facts pleaded in his amended complaint occurred. Accepting these facts as true, ADOC has not interfered with any effort by Miller or his counsel to verify his election status since

Miller says the unnamed prison official refused to provide him a copy of his completed form.

Thus, Miller's claim is similar to the due process claim rejected on statute of limitations grounds in *Powell v. Thomas*, 643 F.3d 1300, 1305 (11th Cir. 2011). In that case, the inmate alleged his due process rights were violated by ADOC officials' "secrecy" as to the lethal injection protocol, including changing the first drug of the lethal cocktail "secretly and without any oversight" in 2011. *Id*. But because that policy of secrecy had been in place since 2002, the fact that Powell alleged ADOC "secretly" changed the protocol without his knowledge did not alter or revive the limitations period for his due process claim.

Defendant Raybon does not plead the statute of limitations as a technicality or as a means of evading responsibility. Indeed, as the complaint does not allege that Defendant Raybon personally committed any injury against Miller, there is no reason to evade "responsibility." Instead, the statute of limitations is pleaded out of necessity because Miller sat on his hands and his rights after he says he was subjected to unconstitutional acts committed by a previous warden of Holman Correctional Facility and subordinates other than Defendant Raybon. The statute of limitations exists to protect defendants like Defendant Raybon who are sued in their official capacity and not because of their personal conduct. Assuming (as the Court must for purposes of Rule 12(b)(6) the truth of the factual matters pleaded as to the 2018

12

election period, Miller's decision to wait four years to bring his complaint is patently unfair to Defendant Raybon. The passage of time alone can make obtaining evidence and accurate recollections difficult; thus, Miller's choice to wait when *he* had knowledge of the "chaotic" and "disorganized" activities described in the amended complaint adds insult to the simple injury of the passage of time.

As the Supreme Court observed in *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 607–08 (2018) (quoting *Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980)), statutes of limitations "are 'fundamental to a well-ordered judicial system.'" Their primary purposes are "'preventing surprises' to defendants and 'barring a plaintiff who has slept on his rights.'" *Id*. (quoting *Am. Pipe & Constr. Co. v. Utah*, 411 U.S. 538, 554 (1974)). As to the first purpose, preventing surprises to defendants, the lack of fairness raised in the previous paragraph applies to Defendant Raybon. As Miller does not plead any efforts to address with Defendant Raybon the refusal of the unnamed prison official to provide him a copy of his election form or to have the form notarized in 2018, the Court should understand how this first purpose of a limitations period—avoiding surprise—applies to this defendant. As to the latter purpose, if the allegations of the complaint are accepted as true, it is undeniable that Miller has slept on his rights long after feeling the sting of the procedural due process injury he alleges.

13

### 3. Miller's procedural due process cause of action is due to be dismissed to the extent it improperly relies on a theory of negligence and *respondeat superior*.

The amended complaint alleges that ADOC lost Miller's nitrogen hypoxia election form at some point after he provided the form to an unnamed "prison official." (Doc. 18 ¶¶ 50, 56, 80.) It does not contend that this act was intentional or willful, and Miller does not plead facts showing his form was lost due to specific acts targeting him. Thus, an aspect of this claim appears to be that he was injured through the negligence of unnamed ADOC personnel who lost his election form.

But the negligent loss of Miller's election form (accepting the facts pleaded in the amended complaint as true) cannot provide the basis of a viable procedural due process claim. The Constitution "does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Instead, the loss of the form would just be one additional fact that speaks to the actionable injury that occurred in June 2018, when Miller says he was refused a copy of his completed election form.

This legal reality is important because it underscores why Miller's claim is time-barred. Accepting the facts pleaded in the amended complaint as true, Miller asked a prison official to make a copy of his form and to have it notarized, but his requests were refused. Such a request by Miller was, at least in part, a means to

protect against the possibility that his form could be negligently lost. The refusal of his requests, accompanied by an alleged lack of an adequate state-law remedy to address that refusal, is the actual constitutional injury alleged in the first cause of action. But if Miller's amended complaint is intended to assert that the negligent loss of his election form gives rise to a procedure due process violation, Defendant Raybon is entitled to dismissal of that aspect of the complaint for failing to state a claim upon which relief can be granted.

Similarly, Miller's first claim for relief must be dismissed because it improperly relies on a *respondeat superior* theory to sue Defendant Raybon in his official capacity for acts taken by a predecessor in office. That is, Defendant Raybon has been sued, in part, for directives Warden Stewart gave to Captain Emberton in June 2018. (Doc. 18 ¶¶ 39, 41) Liability in a 1983 lawsuit cannot be predicated on a *respondeat superior* theory. "It is well-established in this circuit that supervisory officials are not liable under [civil rights actions] for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Instead, liability only attaches when the supervisor's conduct was causally related to the constitutional violation committed by the subordinate, such as by directing subordinates through an improper custom or policy. *Id.* at 1234–35. While the amended complaint does plead that Captain

Emberton performed acts at the direction of a Holman warden, the complaint says it was Warden Stewart who directed those acts, not Defendant Raybon. Thus, Defendant Raybon is being sued for actions attributed to his predecessor over four years ago simply because he happens to be the current warden.

Because Defendant Raybon is sued in his official capacity, it can be said that as to him, the real party in interest is the ADOC's Holman Correctional Facility. Defendant Raybon is not alleged to have performed any acts during the 2018 election period. Because a government entity is responsible for the actions of its lower-level employees if the entity's final decisionmakers participated in establishing a policy or custom that, directly or indirectly, resulted in the constitutional violation, an "official capacity" claim against Defendant Raybon only makes sense if the "violation" alleged in the complaint is based on the facts pleaded as to Warden Stewart and Captain Emberton. In other words, the only reading of the complaint as to why Plaintiff alleges Defendant Raybon is liable under the first cause of action is because he is "standing in" for Warden Stewart in his official capacity. Otherwise, the amended complaint is imposing vicarious liability on Defendant Raybon for actions taken by his predecessor and a subordinate employee.

This reality speaks to the fact that the statute of limitations has run on Miller's first cause of action. Not only is Defendant Raybon not accused of any conduct during the 2018 collection of Miller's form, but the due process claim depends on

proof of the actions taken by Warden Stewart and *her* directives to subordinates. While a fair reading of the complaint suggests Warden Stewart could have been a proper defendant to answer for the alleged constitutional violation, including through her directives to Captain Emberton, Miller did not seek to vindicate those constitutional violations within two years of their occurrence.

### 4. Defendant Raybon is entitled to dismissal of the first cause of action in the amended complaint because the facts pleaded do not state a claim upon which relief can be granted.

As noted previously, Miller's complaint does not allege any specific facts or conduct on the part of Defendant Raybon in regard to Miller's receipt, completion, and return of a nitrogen hypoxia election form to prison officials in June 2018. Instead, the complaint pleads that "Defendants" failed to honor Miller's election, which he claimed to have made in an affidavit filed in the Alabama Supreme Court. The amended complaint alleges that Miller will be harmed if Defendant Raybon executes him by lethal injection when he performs his duties as Alabama's executioner.

This allegation is markedly different from the remainder of Miller's procedural due process claim. Here, Miller claims that because "Defendants" lost his election form and had no record that Miller elected nitrogen hypoxia, a procedural due process violation occurred when "Defendants" refused to honor his election on the sole basis of the statements contained in Miller's recent affidavit.

This claim is distinct for an important reason: while the facts alleged in the amended complaint must be accepted as true, the factual allegations contained *within the affidavit* need not be. For the facts in the amended complaint to plead a valid § 1983 due process claim as to Defendant Raybon, he would have to be a final policymaking official capable of "honoring" Miller's election based solely on Miller's affidavit, and without any obligation to accept the affidavit's factual averments as true. The question of whether an official possesses final policymaking authority is a matter of *state* law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (noting there can be more than one appropriate policymaking official in an agency or department). Importantly, a federal court is not justified in assuming that policymaking authority "lies somewhere other than where the applicable law purports to put it." *Id*.

In this case, Miller injected the question of his election into a proceeding in the Alabama Supreme Court. As Miller admitted in his amended complaint, that court issued an execution warrant in July, after considering Miller's claim for approximately two months. The decision to submit the issue of Miller's supposed election to the Alabama Supreme Court rather than to withdraw the motion to set an execution date rested plainly with the Alabama Attorney General, Defendant Marshall, as a matter of state law. Defendant Raybon had no power or authority to direct or control the State's actions during these legal proceedings, as that litigation was performed as a statutorily enumerated duty of the Attorney General. ALA. CODE

§ 36-15-1(2) (1975); *see also id.* § 36-15-21. Thus, as a matter of law, the first cause of action in the amended complaint does not present a valid due process claim as to Defendant Raybon, in his official capacity, for refusing to "honor" the nitrogen hypoxia election alleged in Miller's affidavit.

II.     **Defendant Raybon is entitled to dismissal of Miller's second claim for relief ("class of one" equal protection) because it fails to state a claim for which relief can be granted.**

In his second cause of action, Miller alleges that Defendant Raybon violated his right to equal protection under the law. Miller contends that Defendant Raybon, in his official position as Warden of Holman Correctional Facility, acted under color of state law to treat him differently than inmate Jarrod Taylor. In other words, Miller's amended complaint alleges a "class of one" equal protection theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000). The amended complaint, however, continues Miller's initial "shotgun" approach to Defendants, leaving the Court and Defendant Raybon to guess at the precise acts or omissions Miller alleges would subject Defendant Raybon to liability for an equal protection violation. Parsing the specific factual allegations and accepting them as true, however, Miller's amended complaint does not plead facts that could ever state a claim upon which relief could be granted as to Defendant Raybon.

First, Defendant Raybon is entitled to dismissal for one of the reasons stated in Defendant Marshall's motion to dismiss. (Doc. 21 at 14–18.) That is, the amended

complaint's equal protection theory fails to state a claim upon which relief may be granted because the factual averments of Miller's complaint, accepted as true, establish that Taylor and Miller are not similarly situated in all relevant aspects as a matter of law. Second, the amended complaint focuses on a decision that did not involve any action taken by Defendant Raybon, much less performed under color of state law. Instead, the complaint pleads facts establishing that Defendant Raybon could not be the legal cause of the alleged constitutional violation. Finally, the facts pleaded, if true, prove only that Defendant Raybon treated Miller the same as inmate Taylor, meaning the pleadings fail to satisfy the elements of an equal protection claim as to Defendant Raybon and would not warrant the grant of relief.

1. **The facts pleaded in Miller's complaint, accepted as true, establish that Miller was not similarly situated to inmate Jarrod Taylor in all relevant respects.**

Miller's complaint alleges that he and Taylor were similarly situated in the following respects: (1) both of them executed nitrogen hypoxia election forms during the statutory election period (Doc. 18 ¶¶ 49, 62, 95); (2) unnamed persons in ADOC lost both inmates' election forms (*id.* ¶¶ 55, 56, 95); and (3) as a result, the State sought execution dates for both Taylor and Miller before the Alabama Supreme Court (*id.* ¶¶ 29, 57). The differing treatment alleged in the amended complaint is that Defendant Marshall (not Defendant Raybon) withdrew the State's motion to set an execution date for Taylor—importantly, after receiving documents from Taylor's

counsel evidencing that an execution form had been completed within the statutory election period—but that Defendant Marshall did not do so in response to Miller's affidavit claiming to have made an election in 2018. (*Id.* ¶¶ 54, 59, 96.) Accepting as true the factual averments in the amended complaint, Miller was not similarly situated to Taylor in respect to the amount of evidence tendered to state actors prior to the alleged disparate treatment.

The fact that Miller incorporated the State's motion to withdraw its motion to set Taylor's execution date into the amended complaint is dispositive as to this issue. (*Id.* ¶ 57; Doc. 18-2.) This Court must *accept as true* that among the materials provided to the State by Taylor's counsel were counsel's representations that Taylor had made a timely election,[2] contemporaneous emails among Taylor's counsel "creating a record of conversations with Taylor" about the election, and Taylor's provision to his counsel of an election form signed in 2018 and sent to his counsel shortly after he made his election. (Doc. 18-2.) Against this backdrop, Miller pleads only that he provided an affidavit in 2022 attesting that he timely elected to be executed by nitrogen hypoxia. (Doc. 18 ¶ 54.) The amended complaint does not plead that Miller possesses evidence similar to Taylor's or that he provided this evidence to Defendant Raybon, Defendant Marshall, or any other state official. In short, the amended complaint alleges that Miller was treated differently than Taylor

---

2. *See* ALA. R. PROF. COND. 4.1.

21

in the Alabama Supreme Court *because* he failed to provide the same quantum of proof that Taylor provided in 2019.

In a "class of one" equal protection claim, a plaintiff "must demonstrate that [he was] treated differently than someone who is *prima facie identical in all relevant aspects*." *Griffin Indus., Inc.*, 496 F.3d at 1205 (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). When "plaintiffs in [a] 'class of one' case[] challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities 'must be very similar indeed.'" *Id.* (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)). Accordingly, where a plaintiff alleges facts that clearly prove they are not similarly situated to their named comparator, it is appropriate to dismiss for failing to state a claim upon which relief may be granted. *Id.* That is the case here.

Like the plaintiff in *Griffin Industries*, Miller's "problem is not that [his complaint] has said too little, but that it has said too much." *Griffin Indus., Inc.*, 496 F.3d at 1205. Miller attached and incorporated into his amended complaint the State's motion to withdraw its motion to set Taylor's execution date. (Doc. 18-2.) Thus, "[a]lthough [Miller's] complaint makes the conclusory allegation that [he] is similarly situated to [Taylor] in all relevant ways, the exhibits attached to the complaint plainly show that this is not the case." *Griffin Indus., Inc.*, 496 F.3d at 1205. A court's "duty to accept the facts in the complaint as true does not require

[the court] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id*. at 1205–06 (citing *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). Thus, assuming the facts pleaded in Miller's complaint are true, *including Exhibit B*, he is not similarly situated in all relevant respects to Taylor.

Finally, if the factual pleading that Defendant Raybon executed and provided an affidavit concerning the fact that ADOC possessed no election form for Miller is intended to represent different treatment of Miller in comparison to Taylor, this further demonstrates why dismissal is warranted. By the time Defendant Raybon provided an affidavit, Miller had failed (or refused) to provide the quantum of evidence Taylor supplied in 2019. That is, when Defendant Raybon executed an affidavit in response to the affidavit Miller filed in the Alabama Supreme Court, that act occurred at a time where it had become plain that Taylor and Miller were not similarly situated in all relevant aspects.

For this reason, Miller's amended complaint fails to plead facts that, accepted as true, would establish a "class of one" equal protection claim as the second claim for relief. Accordingly, Defendant Raybon is entitled to dismissal of the second claim for relief.

2.      **The facts pleaded in the complaint, accepted as true, fail to establish a causal connection between the alleged equal protection violation and Defendant Raybon.**

Beyond the fact that Miller has not pleaded facts showing that he and Taylor were similarly situated, the amended complaint does not allege any facts showing a causal connection between Defendant Raybon and the supposed equal protection violation. Simply put, the complaint does not plead facts proving that Defendant Raybon treated the two inmates differently. It alleges that ADOC officials lost both Miller's and Taylor's election forms, which would not constitute differing treatment. (Doc. 18 ¶ 95.) Rather, insofar as differing treatment is specifically pleaded, such treatment is described as the result of "Defendant Marshall receiv[ing] copies of attorney-client communications from around the time of Mr. Taylor's election." (*Id.* ¶ 96.)

Defendant Raybon, as Warden of Holman Correctional Facility, cannot control the State's choices in litigation. Under Alabama law, "All litigation concerning the interests of the state, or any department of the state, shall be under the direction and control of the Attorney General." ALA. CODE § 36-15-21 (1975). Moreover, Warden Raybon has no duty to attend to the State's criminal matters before the Alabama Supreme Court. *Id.* § 36-15-21. This is dispositive as to Defendant Raybon's liability under Miller's second claim for relief.

The "inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts and omissions are alleged to have resulted in a constitutional deprivation." *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995) (quoting *Williams*, 689 F.2d at 1381)). Even if the Court disagrees that at the time Defendant Raybon provided his affidavit for filing in the Alabama Supreme Court, it was clear that Miller and Taylor were not similarly situated in all relevant ways, the complaint simply states that Defendant Raybon communicated to Defendant Marshall's office "all relevant information known" to him. *Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir. 2008). There are no facts pleaded alleging that Defendant Raybon presented false information in his affidavit. Thus, just as in *Eubanks*, the amended complaint pleads that Defendant Raybon provided the information he possessed to the Office of the Attorney General, the state official under Alabama law responsible for attending to and directing cases in the Alabama Supreme Court.

It was the Attorney General who made the decision to submit the issue to the court rather than withdraw the motion to set Miller's execution date. The intervening acts of Defendant Marshall break any chain of causation that would subject Defendant Raybon to liability. *See Barts v. Joyner*, 865 F.2d 1187, 1195–96 (11th Cir. 1989) (and the cases cited therein). As such, even if Defendant Raybon's affidavit is alleged to have constituted differing treatment from inmate Taylor's

situation, the fact that he provided a truthful affidavit to the state official possessing the ultimate decision-making authority does not render him liable under § 1983.

### 3. The facts pleaded in the amended complaint, accepted as true, establish that Defendant Raybon committed no official acts that treated Miller differently than inmate Taylor.

Not only does the amended complaint fail to establish a causal connection between the alleged equal protection violation and Defendant Raybon, but it fails to allege that Defendant Raybon subjected Miller to different treatment than Taylor received. Even if the complaint's allegation that some unnamed person in ADOC lost both inmates' election forms (Doc. 18 ¶¶ 55, 56,  95) were enough to implicate Defendant Raybon, such conduct would not constitute differing treatment. As noted previously, the only differing treatment alleged is the decision of *Defendant Marshall* to submit Miller's claims to the Alabama Supreme Court with Defendant Raybon's affidavit rather than withdraw the motion to set an execution date.

The amended complaint alleges that Defendant Raybon is "the agent and official representative of the Holman Correctional Facility and ADOC" (*id.* ¶ 15), "is responsible for implementing ADOC policies and procedures governing executions, managing the preparations for an execution, and for turning over the execution site to the State Executioner to perform the execution,"[3] and "is

---

3. Even though this motion is filed pursuant to Rule 12(b)(6), as a matter of law Defendant Raybon is the executioner for the State of Alabama. ALA. CODE § 15-

responsible for protecting the constitutional rights of all persons incarcerated at the Holman Correctional Facility" (*id.* ¶ 16). But the amended complaint does not plead specific facts that, accepted as true, prove Defendant Raybon committed any act under color of state law that treated Miller differently than Taylor prior to the point where it became obvious that Miller had no contemporaneous evidence corroborating his election claim. For this reason, Defendant Raybon is entitled to dismissal of this ground for relief.

## III. Defendant Raybon is entitled to dismissal of Miller's third claim for relief (Eighth Amendment "arbitrary and capricious") because it fails to state a claim upon which relief can be granted.

Miller's third claim for relief is an Eighth Amendment claim brought under an "arbitrary and capricious" theory. Dismissal is warranted because that Eighth Amendment theory is concerned with the imposition of the sentence of death, something that Miller admits occurred more than two decades ago. (*Id.* ¶¶ 24–25.) As noted in *Godrey v. Georgia*, 446 U.S. 420, 427 (1980), the Court's decision in *Furman v. Georgia*, 408 U.S. 238 (1972), "held that the penalty of death *may not be imposed under sentencing procedures* that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." The Court noted that this holding was repeated in *Gregg v. Georgia*, 428 U.S. 153 (1976). *Id.* Thus,

---

18-82(c) (1975). This Court is not bound by the amended complaint's erroneous pleading in this regard.

if a change in a method of execution is not equivalent to the imposition of the death penalty, Miller's third cause of action must fail.

The addition of nitrogen hypoxia as a method of execution "did not change the penalty" for capital murder in Alabama, "but only the mode of producing" the penalty. *Malloy v. South Carolina*, 237 U.S. 180, 185 (1915). Though *Malloy* was decided in the context of an *ex post facto* challenge to a change in a state's method of execution, the Court's reasoning has direct application to its later Eighth Amendment jurisprudence. The Court's subsequent Eighth Amendment cases pertaining to the arbitrary and capricious *imposition* of the death penalty are undoubtedly subject to the Court's prior decisions noting that a change in the method of execution is (1) not a change in the penalty or sentence imposed and (2) does not jeopardize a person's substantial personal rights against *arbitrary* legislative action. *Collins v. Youngblood*, 497 U.S. 37, 46 (1990) (quoting *Malloy*, 237 U.S. at 183) (emphasis added).

In *Smith v. Snow*, 722 F.2d 630, 632 (11th Cir. 1983), the Eleventh Circuit rejected an Eighth Amendment § 1983 claim predicated on the "arbitrary and capricious" application of the death penalty where plaintiff's application for clemency had been denied by a board acting with "unfettered discretion." Because that unfettered discretion could never result in the imposition of the death sentence as to plaintiff, as he had already been sentenced to death, such unfettered discretion

could not render the plaintiff's death sentence arbitrary and capricious in violation of the Eighth Amendment. *Id*. Here, because Miller had already been sentenced to death by lethal injection at the time nitrogen hypoxia was added as a statutory method of execution in Alabama, the election process he challenges cannot establish that the imposition of the death penalty in his case was arbitrary and capricious.

The cases cited in Miller's amended complaint support dismissal of this cause of action. For example, in *Foster v. Strickland*, 707 F.2d 1339, 1347 & n.16 (11th Cir. 1983), cited in paragraph 105 of the amended complaint, the court discussed the "arbitrary and capricious" component of the Eighth Amendment as requiring a "meaningful basis for distinguishing the…case in which [capital punishment] is imposed…from the many cases in which it is not." That is not the deficiency Miller claimed in the amended complaint. Federal Eighth Amendment "arbitrary and capricious" jurisprudence "vindicate[s] the underlying principle that the death penalty is reserved for a narrow category of crimes and offenders." *Roper v. Simmons*, 543 U.S. 551, 568–69 (2005). Because the facts pleaded in the amended complaint, if true, would not prove that Defendant Raybon committed an act that failed to narrow the category of crimes and offenders subject to the death penalty, Miller has failed to state a claim upon which relief can be granted.

Finally, Defendant Raybon is entitled to dismissal of this claim for relief on statute of limitations grounds. The amended complaint predicates the alleged Eighth

Amendment violation on "Defendants' failure to put any reliable procedures in place regarding the process," which, Miller says, "prevents courts from rationally reviewing Defendants' efforts to carry out executions." (Doc. 18 ¶ 109.) As pleaded in the complaint, "Cynthia Stewart [Defendant Raybon's predecessor in office] was the warden of Holman during the entire election period in 2018" (*id.* ¶ 36), and Miller pleads that he elected nitrogen hypoxia in 2018 (*id.* ¶¶ 48–49). Thus, accepting the pleadings in the amended complaint as true, Miller's Eighth Amendment claim accrued in 2018 when then-Warden Stewart "failed to put any reliable procedures in place regarding the election process," and his claim was brought well outside of the two-year limitations period.

For these reasons, Defendant Raybon is entitled to the dismissal of the third claim for relief in Miller's amended complaint.

## CONCLUSION

For the above-mentioned reasons, Defendant Raybon prays that this Honorable Court will grant his motion to dismiss Miller's amended complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Steve Marshall
*Attorney General*
BY—

30

*s/ James R. Houts*

James R. Houts
*Deputy Attorney General*


*/s Audrey Jordan*

Audrey Jordan
*Assistant Attorney General*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 1, 2022, I electronically filed the foregoing

with the Clerk of the Court using CM/ECF system. I also served a copy upon counsel

for the plaintiff via electronic mail, addressed as follows:

James Bradley Robertson
brobertson@bradley.com

Daniel J. Neppl
dneppl@sidley.com

Marisol Ramirez
Marisol.ramirez@sidley.com

Stephen Spector
sspector@sidley.com

***s/ James R. Houts***
James R. Houts
*Deputy Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Office (334) 353-1513
Fax (334) 353-8400
James.Houts@AlabamaAG.gov