## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALAN EUGENE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Case No. <u>2:22-cv-00506-RAH</u>** |
| | ) |
| JOHN Q. HAMM, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

### Defendant John Hamm's Motion to Dismiss Pursuant to
### <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

COMES NOW Defendant John Q. Hamm, Commissioner, Alabama Department of Corrections, and moves this Honorable Court to dismiss Plaintiff Alan Eugene Miller's amended complaint (Doc. 18) for failure to state claims upon which relief can be granted. As to Miller's first cause of action (procedural due process), the facts pleaded in the complaint plainly establish that the claim is time-barred under circuit precedent. There is no legal theory that would entitle Plaintiff to relief in the light of the statute of limitations. As to his second claim for relief, the amended complaint fails to plead facts that would establish that Defendant Hamm performed any acts treating Plaintiff differently than inmate Jarrod Taylor and further fails to plead a viable and plausible "class of one" equal protection claim. Plaintiff's final cause of action (Eighth Amendment "arbitrary and capricious")

pleads facts showing that this Eighth Amendment provision does not apply in this case.

**I.    Defendant Hamm is entitled to dismissal of Miller's first claim for relief (procedural due process) because it fails to state a claim for which relief can be granted.**

In his first claim for relief, Miller's amended petition alleges that Defendant Hamm, in his official capacity, violated Miller's right to procedural due process. Defendant Hamm is entitled to dismissal of this cause of action for failure to state a claim upon which relief can be granted. First, Defendant Hamm is entitled to dismissal because the "deprivation" of a constitutionally protected interest alleged in the amended complaint would be an act of negligence, insufficient to constitute a valid § 1983 cause of action, and as a matter of law, the facts pleaded (if true) establish that he had a constitutionally adequate remedy under state law. Second, the facts pleaded in the complaint establish that his claim is time-barred.

**1.    Miller's first cause of action fails to state a claim upon which relief can be granted because it is based on an improper "negligent loss" theory, and because the facts pleaded in the complaint establish that he had an adequate post-deprivation remedy under Alabama law.**

The Constitution "does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Thus, while the unknown date on which Miller's nitrogen hypoxia election form was

lost or misplaced (accepting the facts pleaded as true, as required at this stage of the proceedings) would ordinarily be an "issue of fact" making disposition of the first claim for relief inappropriate under Rule 12(b)(6), the fact that the negligent loss of Miller's form itself is the support for his first cause of action requires dismissal.

This legal reality is important because "notice" and "the opportunity to be heard" are the hallmarks of procedural due process under traditional causes of action. That is, if Defendants were alleged to have targeted Miller specifically by intentionally "losing" his nitrogen election form, procedural due process would be concerned with whether he had pre-deprivation notice and an opportunity to respond *before* state action. *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 225–26 (2005) (noting that notice and opportunity to be heard are the most important mechanisms for "avoiding erroneous deprivations" through intentional government action); *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 15–16 (1979) (noting that a parole process that affords an opportunity to be heard and the reasons for a denial affords procedural due process); *Laskar v. Peterson*, 771 F.3d 1291, 1299 (11th Cir. 2014) (discussing procedural due process in the termination-of-employment context). In this case, because the loss or misplacement of Miller's nitrogen hypoxia form by state actors is the critical basis of his cause of action, Defendant Hamm (or his predecessor in office) did nothing directed at Plaintiff that could have permitted pre-deprivation notice or an opportunity to be heard.

Even if the Court were to permit Plaintiff to pursue such a cause of action based solely on the allegation of negligent state conduct, that would simply be a finding that a "pre-deprivation hearing" was not feasible. In such a case, a state can satisfy due process by providing adequate post-deprivation remedies capable of fully compensating the plaintiff for the loss suffered. *See Cotton v. Jackson*, 216 F.3d 1328, 1333 (11th Cir. 2000); *McKinney v. Pate*, 20 F.3d 1550, 1564 (11th Cir. 1994).

As to Miller, the facts pleaded in the amended complaint establish that he could have sought a petition for writ of mandamus directed to Defendant Hamm in state court.[1] To qualify for the remedy of mandamus, a petitioner must show (1) a clear legal right to the order sought; (2) an imperative duty upon the Commissioner of the Alabama Department of Corrections to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. *Ex parte Glover*, 801 So. 2d 1, 6 (Ala. 2001). For example, in Alabama, mandamus is a recognized means of securing from ADOC the constitutional right to adequate medical treatment. *Fountain v. State*, 648 So. 2d 591, 592 (Ala. Civ. App. 1994); *see also Perry v. State Dep't of Corr.*, 694 So. 2d 24, 25 (Ala. Civ. App. 1997).

---

1. Accepting the facts as true, as we must at this stage of the proceeding, they establish that Plaintiff could have *obtained* mandamus relief in state court.

Turning to the pleadings in the amended complaint, Plaintiff alleges (1) a clear legal right to have his nitrogen hypoxia election recognized pursuant to section 15-18-82.1(b)(2) of the Code of Alabama (Doc. 18 ¶¶ 76–78); (2) an imperative duty on the part of Defendant Hamm to recognize Miller's election, accompanied by a refusal to do so (*id.* ¶¶ 5, 7–8, 12–13, 82–83, 85); and (3) the absence of any other adequate remedy or procedure (*id.* ¶¶ 63, 81, 86, 90). Using Miller's own words and applying them to the governing standard for mandamus in Alabama, (1) "Alabama Code § 15-18-82.1(b)(2) contains a state-created liberty interest for death-sentenced inmates in Alabama,"[2] and "Miller completed and signed his election form during the election period in June of 2018"[3]; (2) Defendant Hamm "under the color of law…as the official representative of ADOC"[4] "is responsible for ensuring that all prisoners committed to the custody of ADOC are treated in accordance with the United States and Alabama Constitutions"[5] and "has the ability to remedy problems that arise due to ADOC's lack of adequate procedures,"[6] but now "intend[s] to deprive Mr. Miller of his election by executing him through lethal injection"[7]; and (3) Hamm "had no (and currently [has] no) process for evaluating whether

---

2. Doc. 18 ¶ 76.
3. *Id.* ¶ 77.
4. *Id.* ¶ 11.
5. *Id.* ¶ 13.
6. *Id.* ¶ 14.
7. *Id.* ¶ 81.

Mr. Miller made an election in accordance with the statute"[8] and "had no (and currently [has] no process in place…to evaluate whether Mr. Miller made an election in accordance with the statute,"[9] and if Miller's "election is not honored" he will be "executed via [Hamm's] arbitrary and capricious process, which fails to honor Mr. Miller's statutory right to execution via nitrogen hypoxia."[10] These pleadings establish Miller's ability to seek mandamus relief under state law, meaning an adequate post-deprivation remedy existed as to the negligent loss of his election form he alleges. *See Cotton*, 216 F.3d at 1333. Accordingly, Defendant Hamm is entitled to dismissal of the first cause of action for failing to state a claim upon which relief can be granted.

### 2.    Plaintiff's first cause of action is time-barred.

Defendant Hamm is also entitled to a dismissal of Miller's first claim for relief on statute of limitations grounds. A statute of limitations dismissal pursuant to Rule 12(b)(6) is warranted whenever the facts pleaded in the complaint, taken as true, show that the plaintiff's claims are time-barred. *La Grasta v. First Union Sec, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)). All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state

---

8. *Id.* ¶ 86.
9. *Id.* ¶ 90.
10. *Id.* ¶ 63.

where the action has been brought. *See Boyd v. Warden, Holman Corr. Facility*, 856 F. 3d 853, 872 (11th Cir. 2017). For Alabama inmates like Miller, the applicable limitations period is two years. *Id*.

Determining when the statute of limitations begins to run depends on the factual allegations pleaded in support of the claim for relief, as well as the nature of the injury alleged. Here, Miller does not allege that Defendant Hamm lost or misplaced his election form. In fact, because the statute requires that the election form be provided to the warden of the electing inmate's correctional facility, the amended complaint does not attempt to make this claim as to Defendant Hamm (or his predecessor).

Instead, Miller identifies the following constitutionally inadequate processes that are the subject of his procedural due process claim against Defendant Hamm (and his predecessor in office), in his official capacity as Commissioner of the Alabama Department of Corrections, for failing to ensure adequate processes had been implemented:

- "Failing to ensure an *adequate procedure* for protecting his election to be executed by nitrogen hypoxia" (Doc. 18 ¶ 83);

- Failing "to create and maintain an accurate accounting of who timely submitted election forms and failed to implement a *reviewable process* for determining whether an election had been made" (*id.* ¶ 84 (emphasis added));

- Failing to have a "*process* for evaluating whether Mr. Miller made an election" (*id.* ¶ 86); and

- A "total failure to put in place any written rules or guidance whatsoever governing the election process," including the lack of "written rules or guidance…for distributing election forms [or] collecting such forms [, or] storing such forms" (*id.* ¶ 87).

Applying these allegations to Miller's factual pleadings, the determination of when his procedural due process claim accrued and the statute of limitations began to run is whenever "the facts which would support a cause of action [were] apparent or should [have been] apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996). Thus, the question is whether the facts pleaded in the complaint, applied to the inadequate procedures attributed to Defendant Hamm in his official capacity, plainly show that the claim is time-barred.

Accepting the facts of the amended complaint as true, Miller made the "time-sensitive and irreversible election" (*id.* ¶ 45) to be executed by nitrogen hypoxia in June 2018 (*id.* ¶¶ 49, 77). Miller was aware of "the gravity of the election decision" (*id.* ¶ 45) when he "returned [his] form to the prison official who was collecting completed forms" (*id.* ¶ 50), and that prison official "refused both of Mr. Miller's requests" to have his form "copied and notarized so as to record his election" (*id.* ¶ 51). Miller did not challenge this prison official's refusal to provide him with these means that would help him "to record his election" within two years of this incident,

even though the risks of not being permitted a copy of the completed election form should have been apparent to a person with a reasonably prudent regard for his rights.

In fact, the refusal to provide a copy of the completed election form to Miller, or to permit the form to be notarized, are facts directly implicating paragraph 83 of the amended complaint, "Defendants violated Mr. Miller's due process rights by failing to ensure an adequate procedure for protecting his election to be executed by nitrogen hypoxia." Those factual pleadings also implicate paragraph 84, "Defendants…failed to implement a reviewable process for determining whether an election had been made." Thus, in June 2018, the facts pleaded in Miller's complaint concede that he had already felt the sting of injury from these procedural due process violations.

The inadequate policies and procedures alleged in the first cause of action have existed since Miller says he submitted his form in June 2018 and was refused a copy or notary services, well over two years prior to the filing of his lawsuit. But according to the amended complaint, Miller was given additional notice of these inadequate processes or procedures in July 2019 when the State moved to set an execution date for inmate Jarrod Taylor. (*Id.* ¶¶ 51–62.) Accepting Miller's facts as true, the danger of the alleged inadequacies in ADOC's policies and processes became far more apparent because ADOC lost Taylor's nitrogen hypoxia election form. To the extent these inadequacies are alleged to have been caused by the

Commissioner of the Alabama Department of Corrections, Plaintiff was put on notice of the existence of this cause of action as to Defendant Hamm's predecessor in office. Based on the Taylor incident alone, a reasonably prudent inmate who had elected nitrogen hypoxia would have asked about his own election ensure that it had been accepted, and if not, to establish the absence of an adequate administrative remedy or to prepare to pursue the state remedy of mandamus. As to Miller, the fact that he had been refused notary services and a copy of his completed election form should have been enough to make him aware of the need to secure or protect his rights.

In the due process context, if Miller had no adequate administrative or state remedy to address the prison official's alleged refusal to provide him with a copy of his completed election form, he felt the sting of that injury over four years ago, and he should have vindicated his rights then. *See Cotton*, 216 F.3d at 1331 ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."). And once Taylor's situation occurred, the gravity of the situation would have been apparent to any reasonably prudent inmate who had elected nitrogen hypoxia, sufficient to ask for confirmation of his own election. Had a prison official refused to provide the information then, it would have been one more example of a constitutionally inadequate process. On the other hand, if confirmation

had been provided to Miller in response to such an inquiry (i.e., the negligent loss or misplacement had not occurred), that simple step would have remedied the risks alleged in the amended complaint as to Defendant Hamm's (lack of) policies and procedures.

The amended complaint does not allege that Miller or his counsel inquired as to whether Defendant Hamm possessed an election form for him following the "extremely disorganized" (Doc. 18 ¶¶ 34, 44), "chaotic process" (*id.* ¶ 42) described in the complaint. Nor does it allege that Miller or his counsel made such inquiries after it became apparent during the Taylor incident (as pleaded in the amended complaint) that Defendants had not "created and followed execution procedures for nitrogen hypoxia" (*id.* ¶ 89), or that Miller was refused an answer or given incorrect information. Instead, Miller sat on his hands for years after the facts pleaded in his amended complaint occurred. Accepting these facts as true, Defendant Hamm has not interfered with any effort by Miller or his counsel to verify his election status since Miller says the unnamed prison official refused to provide him a copy of his completed form.

Thus, Miller's claim is similar to the due process claim rejected on statute of limitations grounds in *Powell v. Thomas*, 643 F.3d 1300, 1305 (11th Cir. 2011). In that case, the inmate alleged his due process rights were violated by ADOC officials' "secrecy" as to the lethal injection protocol, including changing the first drug of the

11

lethal cocktail "secretly and without any oversight" in 2011. *Id*. But because that policy of secrecy had been in place since 2002, the fact that Powell alleged ADOC "secretly" changed the protocol without his knowledge did not alter or revive the limitations period for his due process claim.

Like his subordinate Defendant Raybon, Defendant Hamm does not plead the statute of limitations as a technicality or as a means of evading responsibility. Indeed, as the complaint does not allege that Defendant Hamm personally committed any injury against Miller,[11] there is no reason to evade "responsibility." Instead, the statute of limitations is pleaded out of necessity because Miller sat on his hands and his rights after he says he was subjected to unconstitutional acts committed by a previous warden of Holman Correctional Facility and her subordinates in June 2018. The statute of limitations exists to protect defendants like Defendant Hamm who are sued in their official capacity and not because of their personal conduct. Assuming (as the Court must for purposes of Rule 12(b)(6)) the truth of the factual matters pleaded as to the 2018 election period, Miller's decision to wait four years to bring

---

11. Defendant Hamm took office in January 2022. Defendant is not asking the Court to consider this fact in deciding the issue of dismissal because it falls outside of the pleadings. However, this fact is provided as context for why Defendant Hamm is confident that even a "liberal" construction of Miller's complaint would not encompass a claim that Defendant Hamm has personally committed acts involved in the alleged loss or misplacement of Miller nitrogen hypoxia election form, and why Defendant's motion to dismiss on statute of limitations grounds is not an effort to evade personal responsibility for the conduct Plaintiff alleges.

his complaint is patently unfair to Defendant Hamm. The passage of time alone can make obtaining evidence and accurate recollections difficult; thus, Miller's choice to wait when *he* had knowledge of the "chaotic" and "disorganized" activities described in the amended complaint adds insult to the simple injury of the passage of time.

As the Supreme Court observed in *Artis v. District of Columbia*, 138 S. Ct. 594, 607–08 (2018) (quoting *Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980)), statutes of limitations "are 'fundamental to a well-ordered judicial system.'" Their primary purposes are "'preventing surprises' to defendants and 'barring a plaintiff who has slept on his rights.'" *Id*. (quoting *Am. Pipe & Constr. Co. v. Utah*, 411 U.S. 538, 554 (1974)). As to the first purpose, preventing surprises to defendants, the lack of fairness raised in the previous paragraph applies to Defendant Hamm. As Miller does not plead any efforts to address with Defendant Hamm the refusal of the unnamed prison official to provide him a copy of his election form or to have the form notarized in 2018, the Court should understand how this first purpose of a limitations period—avoiding surprise—applies to this defendant. As to the latter purpose, if the allegations of the complaint are accepted as true, it is undeniable that Miller has slept on his rights long after feeling the sting of the procedural due process injury he alleges.

13

**II.    Defendant Hamm is entitled to dismissal of Miller's second claim for relief ("class of one" equal protection) because it fails to state a claim for which relief can be granted.**

In his second cause of action, Miller alleges that Defendant Hamm violated his right to equal protection under the law. Miller contends that Defendant Hamm, in his official capacity, acted under color of state law to treat him differently than inmate Jarrod Taylor. In other words, Miller's amended complaint alleges a "class of one" equal protection theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000). The amended complaint, however, continues Miller's initial "shotgun" approach to Defendants, leaving the Court and Defendant Hamm to guess at the precise acts or omissions Miller alleges would subject Defendant Hamm to liability for an equal protection violation. Parsing the specific factual allegations and accepting them as true, however, Miller's amended complaint does not plead facts that could ever state a claim upon which relief could be granted as to Defendant Hamm.

First, Defendant Hamm is entitled to dismissal for one of the reasons stated in Defendants Marshall's and Raybon's motions to dismiss. (Doc. 21 at 14–18; Doc. 30 at 19–23.) That is, the amended complaint's equal protection theory fails to state a claim upon which relief may be granted because the factual averments of Miller's complaint, accepted as true, establish that Taylor and Miller are not similarly situated in all relevant aspects as a matter of law. As a time and space-saving measure,

Defendant Hamm prays this Court will permit him to incorporate the other Defendants' arguments on this issue without further elaboration.

Second, the amended complaint focuses on a decision that did not involve any action taken by Defendant Hamm, much less performed by him under color of state law. Under Alabama law, "[a]ll litigation concerning the interests of the state, or any department of the state, shall be under the direction and control of the Attorney General." ALA. CODE § 36-15-21 (1975). Moreover, the Commissioner of the Alabama Department of Corrections has no duty to attend to the State's criminal matters before the Alabama Supreme Court. *Id.* § 36-15-1(2). This should be dispositive as to Defendant Hamm's liability under Miller's second claim for relief because Plaintiff does not allege any sort of conspiracy between the state actors in this case.

The "inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts and omissions are alleged to have resulted in a constitutional deprivation." *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995) (quoting *Williams*, 689 F.2d at 1381)). In this case, it was the Attorney General who made the decision to submit the issue of Plaintiff's election claim to the Alabama Supreme Court rather than withdraw the motion to set Miller's execution date. Defendant Hamm *could not* have countered this decision as a matter of state law. Thus, the intervening acts of Defendant

15

Marshall break any chain of causation that would subject Defendant Hamm to liability. *See Barts v. Joyner*, 865 F.2d 1187, 1195–96 (11th Cir. 1989) (and the cases cited therein).

**III.    Defendant Hamm is entitled to dismissal of Miller's third claim for relief (Eighth Amendment "arbitrary and capricious") because it fails to state a claim upon which relief can be granted.**

Miller's third claim for relief is an Eighth Amendment claim brought under an "arbitrary and capricious" theory. Dismissal is warranted because that Eighth Amendment theory is concerned with the imposition of the sentence of death, something that Miller admits occurred more than two decades ago. (Doc. 18 ¶¶ 24–25.) As noted in *Godrey v. Georgia*, 446 U.S. 420, 427 (1980), the Court's decision in *Furman v. Georgia*, 408 U.S. 238 (1972), "held that the penalty of death *may not be imposed under sentencing procedures* that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." The Court noted that this holding was repeated in *Gregg v. Georgia*, 428 U.S. 153 (1976). *Id*. Thus, if a change in a method of execution is not equivalent to the imposition of the death penalty, Miller's third cause of action must fail.

This is the same ground for dismissal stated in Defendants Marshall's and Raybon's motions to dismiss. (Doc. 21 at 21–24; Doc. 30 at 27–30.) As a time and space-saving measure, Defendant Hamm prays this Court will permit him to

incorporate the other Defendants' arguments on this issue without further elaboration.

## CONCLUSION

For the above-mentioned reasons, Defendant Hamm prays that this Honorable Court will grant his motion to dismiss Miller's amended complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Steve Marshall
*Attorney General*
BY—


**_s/ James R. Houts_**_____
James R. Houts
*Deputy Attorney General*


**_/s Audrey Jordan_**_____
Audrey Jordan
*Assistant Attorney General*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2022, I electronically filed the foregoing

with the Clerk of the Court using CM/ECF system. I also served a copy upon counsel

for the plaintiff via electronic mail, addressed as follows:

James Bradley Robertson
brobertson@bradley.com

Daniel J. Neppl
dneppl@sidley.com

Marisol Ramirez
Marisol.ramirez@sidley.com

Stephen Spector
sspector@sidley.com

*s/ James R. Houts*
James R. Houts
*Deputy Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Office (334) 353-1513
Fax (334) 353-8400
James.Houts@AlabamaAG.gov