# Attachment A

ALDOC Form 225B

# ALABAMA DEPARTMENT OF CORRECTIONS
# DISCIPLINARY REPORT

1. Inmate: **Miller, Alan**  Custody: **MAX**  AIS: **W/Z-672**

2. Facility: **W. C. HOLMAN CORRECTIONAL FACILITY**  Disciplinary # **HP09- 245**

3. The above named inmate is being charged by **Correctional Lieutenant James English** with violation of rule number **56** specifically **Failure to Obey A Direct Order of ADOC Official** from regulation # **403** which occurred on or about **March 3**, 20**09** at (time) **8:45** (am), Location: **Cell G-16**.
A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: **Lt. English did give inmate Miller, Alan W/Z-672 a direct order to cuff up and exit his cell for a DNA test, he refused**.

**3-11-09** Date     **Correctional Lieutenant James English** Arresting Officer / Signature / Rank

5. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his/her right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the **11** day of **March**, 20**09** at (time) **3:56** (am/**pm**).

   **M Branch c.o.** Serving Officer / Signature / Rank     **refused to sign MB co** Inmate's Signature / AIS Number

6. Witnesses desired? NO _____ Inmate's Signature     YES **refused to sign MB co** Inmate's Signature

7. If yes, list: **Dale Ferguson, Billy Kvensell, George Martin**

8. Hearing Date **3-13-09** Time **9:18 A.M** Place **Seg Shift Office**

9. Inmate must be present in Hearing Room. If he/she is not present explain in detail on additional page and attach.

10. A finding is made that inmate (**is**/ is not) capable of representing himself.
    **Lt. E.T. Jenkins** Signature / Hearing Officer

11. Plea **Alan Miller** (**Not Guilty**) _____ Guilty

12. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    **Lt. E.T. Jenkins** Signature / Hearing Officer

APR 2 4 ENTD

Annex C to AR 403 (Page 1 of 5)

AMILLER1983DISC0933

13. Arresting Officer's testimony (at the hearing): <u>Lt. English stated inmate Alan Miller W/Z672 refused DNA test.</u> <u>(see attached statement of Lt. English.)</u>

14. Inmate's Testimony: <u>See attached statement.</u>

Witness: <u>N/A</u>  Substance of Testimony:

Witness: <u>N/A</u>  Substance of Testimony:

Witness: <u>N/A</u>  Substance of Testimony:

15. The inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

    *A. E. T. Jenkins*
    Signature / Hearing Officer

16. The following witnesses were not called  - Reason not called
    1. <u>Dale Ferguson W/Z639</u>      <u>Inmate refused to testify.</u>
    2. <u>William Kuenzel W/Z489</u>    <u>Inmate refused to testify.</u>
    3. <u>George Martin B/Z671</u>      <u>Inmate refused to testify.</u>



Annex C to AR 403  (Page 3 of 5)
AMILLER1983DISC0934

17. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
    The Hearing Officer finds that: On March 3, 2009 at approximately 8:45 AM, in the death row area of Holman Unit, inmate Alan Miller W/Z672 violated rule #56-Failure to obey a direct order of an ADOC Official.

18. Basis for Finding of Fact: Lt. James English, who stated under oath: He did give inmate Alan Miller W/Z672 a direct order to cuff up and exit his cell for a DNA test. Inmate Miller refused.

19. Hearing Officer's Decision:  XXXX  Guilty  _____ Not Guilty

20. Recommendation of Hearing Officer: 20 days disciplinary segregation and 45 days loss of all privileges.

    _____
    Signature / Hearing Officer
    C. T. Jenkins, Correctional Lieutenant
    Typed Name and Title

21. Warden's Action – Date  March 24 2009
    Approved  Sylvester Folks, Warden I
    Disapproved
    Other (specify)  No loss of privileges

22. Reason if more then 30 calendar days delay in action. _____

23. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above Named inmate on this the  27  day of  March  2009, at (time)  3:28  (am/pm).
    
    Robert Byrd COI                        Alan Miller
    Signature / Serving Officer / Title    Inmate's Signature and AIS Number

Annex C to AR 403 (Page 3 of 5)
AMILLER1983DISC0935



**SIDLEY AUSTIN LLP**
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

mbartolic@sidley.com
(312) 853-4152

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

FOUNDED 1866

March 13, 2009

**By Fax and Post**

Warden Culliver
W.C. Holman Correctional Facility
Holman 3700
Atmore, AL 36503-3700

    Re:   <u>Alan Eugene Miller, 00Z672</u>

Dear Warden Culliver:

    I received a call from my client, Alan Eugene Miller, last Tuesday, March 3rd regarding Holman's mandatory DNA sampling. Mr. Miller asked me what to do in response to the demand for a DNA sample. I advised Mr. Miller to verbally state that he did not consent to giving the sample, but to verbally make clear he was not resisting, and in fact follow the guards' orders. While I was on the telephone with Mr. Miller, the call abruptly ended.

    Later that day I received another call from Mr. Miller informing me that because he did not consent, even though he made clear to the guards he would not resist, the guards in retaliation sprayed Mr. Miller in the face with mace, shoved Mr. Miller to the ground, and then forcibly pried open his jaw in order to take a DNA sample. Mr. Miller also informed me that my earlier telephone call with him came to an end because one of the guards unplugged the telephone. Mr. Miller told me that the guards involved were Messrs. English, Strickland, Craft, and Weaver.

    I believe my client intended only to follow his lawyer's advice. Our conversation had been cut short, and had Mr. Miller and I had more time on the telephone, I believe the advice would have been clearer to him. I do not believe Mr. Miller intended to disobey the guards or create any difficulty for them. He merely made his best attempt to follow the advice provided in a very brief conversation with his counsel.

    I understand Mr. Miller will likely have a disciplinary hearing. I ask you consider this letter in determining whether or not to discipline my client. I ask you to be lenient, and see that Mr. Miller did not intend to create any difficulty for the guards.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

AMILLER1983DISC0936



Warden Culliver
March 13, 2008
Page 2

Sincerely,

Michael Bartolic

Enclosures

cc:  Alan Eugene Miller

AMILLER1983DISC0937

Copy received by Allen Miller 5/14/13 (Peacock)
Witness: _____ co _____ (Delair)
Served by: _____

# INVESTIGATIVE REPORT

**ALABAMA DEPARTMENT OF CORRECTIONS**

**INVESTIGATION & INTELLIGENCE DIVISION**

Confidential-For Official Use Only

Offense: Officer Misconduct    Case No.: 10-0376

Location: Holman Correctional Facility    County: Escambia    Date of Offense: 3/03/2009

**Victim(s)**
Inmate Allan C. Miller AIS# Z672-G1-16A

**Subject(s)**
Coordinator Gwendolyn Mosley
Captain Michael Strickland
Lieutenant Timothy Craft
Lieutenant James English
Lieutenant Joseph Raines
Officer Anthony Weaver

## DETAILS:

On February 1st, 2010, inmate Allen Miller wrote a letter complaining about the way he was forced to provide a mandatory DNA sample for DOC.

## SYNOPSIS:

On March 3rd, 2009, inmate Allan Miller Z672-G1-16A was scheduled to provide a mandatory DNA sample for DOC Officials. Lieutenants Strickland and English went to inmate Miller's cell to escort him to the day room for the DNA sample, but inmate Miller supposedly refused to provide the mandatory sample. As a result of inmate Miller's refusal he along with another inmate were passed over and left for last. When Lieutenants Strickland and English returned to escort inmate Miller to the day room he was on the telephone talking to his lawyer. Inmate Miller was instructed to hang the phone up and he refused to do so. At this time, supposedly the phone was pulled away from inmate

| Criminal | _____ | Non-Criminal | _____ | Internal | XX |
| Unfounded | _____ | Pending Investigation | _____ | Closed or Inactive | _____ |
| | | Cleared by Arrest | _____ | Not Cleared | _____ |

| Copies of Report to | | Date of Report | July 25, 2011 |
|---|---|---|---|
| Commissioner _____ | | Report Made by | Inv. Ron Cooper |
| D/A _____ | | | |
| D/C  AC Deloach _____ | | Report Typed by | Inv. Ron Cooper |
| Other _____ | | | |

AMILLER1983DISC0938

Miller when Lieutenant English sprayed him with O.C. Inmate Miller still failed to comply with Lt. English's verbal commands to be handcuffed. Lieutenant Strickland then intervened convincing inmate Miller to allow them to handcuff him. Inmate Miller was then escorted to the dayroom where he requested everyone's name involved in the sample taking as was instructed by his attorney. When DOC personnel refused to give their names to inmate Allen he again refused to provide a DNA sample for DOC Officials. Inmate Miller was then forced to the floor where he supposedly hit his head and sustained scratches to his face. Once on the floor Officials were able to obtain the samples they needed. Supposedly inmate Miller was denied medical attention and was taken back to his cell without any further incident. Inmate Miller has requested a formal investigation into alleged Officer Misconduct.

## INVESTIGATION

### INMATE ALAN E. MILLER AIS# Z672-G1-16A

On April 2nd, 2010, at approximately 10:05am, I interviewed inmate Miller at the Holman Correctional Facility concerning his letter alleging Officer Abuse. Inmate Miller is currently housed at the Holman Correctional Facility and sentenced to Death for Capital Murder Charges. Inmate Miller has been at Holman Correctional Facility since July 31st, 2000. According to inmate Miller, he had been talking to his lawyer for the last several days about the scheduled DNA testing and on this particular day they (Officers) were yelling at inmate George Martin, who is in the next cell to him. Lt. James English then maced inmate Martin because he was wanting to talk to his lawyer. Lt. English then begins yelling at him, so he tells Lt. English to let him get dress while he's talking to his lawyer on the phone. As he's talking to his lawyer his lawyer tells him to formally protest the mandatory DNA sample and ask for the names of everyone involved in taking it. Inmate Miller claims he again tells the officers to give him a moment so he can get dress and that's when the phone goes dead and that's when they tried to mace him in the face. Inmate Miller claims he then jumped back and yelled God Damn it did you not here what I just damn said. As he's putting his pants on they maced him again and he yells God Damn it didn't you hear what I said. Inmate Miller claims he then tells them he was talking to his lawyer and about that time Lt. Strickland pushes Lt. English out of the way stating he's (Miller) wanting to come outside.

At this point in the interview, inmate Miller points out, the first time Lt. English tried to mace him was when the phone with dead, but he threw his hands up and it got all over some paper. The second time was when he was trying to put on his pants, he sprayed him on the side of his head and some of it got in the corner of his eye.

According to inmate Miller, he then allows himself to be handcuffed by the officers and they escorted him to the room where they were taking the DNA samples. Inmate Miller claims he then tells the DNA guy that his lawyer wanted him to formally protest giving the DNA sample. The DNA guy acknowledges his request and then tells him they have to get his finger prints first. Inmate Miller claims once they took his fingerprints, he asked them for their names and they told him they couldn't give him their names. He then asked them to write it down showing that they refused and they said no. Inmate Miller then claims Ms. Mosley tells him it's mandatory that he provides a DNA sample. The next thing he knows, he gets jumped from behind, hit from behind his legs and pulled backwards. A guy named Sgt. Craft tackled him by his legs and grabbed him by his pants and yanked his legs upward causing him to fall to the floor. Once on the floor they grabbed his face and the DNA guy came and took his DNA. Inmate Miller claims he then yells out, God Damn it, I told y'all you could

AMILLER1983DISC0939

have my DNA. At this point, inmate Miller claims one of the officers struck his finger in his face and said, I told you I was going to get that fucking DNA.

Inmate Miller claims, he told the officers and the DNA people he was going to give them a sample all he wanted was there names so he could file a formal protest with his attorney. He never refused to give them his DNA and while standing there Lt. Raines kept telling him to stop resisting. Inmate Miller claims he wasn't resisting he was just standing there like the other inmates did wanting the names of those taking the DNA samples. Inmate Miller pointed out, that they weren't force to give a sample, why was he the only one forced to give a sample. Inmate Miller also pointed out, that they did not take him to health care until the next day for a body cart examination. Inmate Miller claims he never did anything to cause him to be treated the way he was treated by the officers.

### LIEUTENANT JOSEPH RAINES

On April 2nd, 2010, at approximately 10:50am, I interviewed Lt. Raines at the Holman Correctional Facility concerning inmate Alan Miller's allegations of officer abuse. According to Lt. Raines, he was assigned to the dayroom to take names of all the inmates being brought in for their mandatory DNA sample. He remembers inmate Miller and another inmate being the last ones brought in because they had supposedly refused to provide a DNA sample. Lt. Raines claims he can remember Lieutenants English and Strickland along with some other officers escorting inmate Miller into the dayroom. When it was time for inmate Miller to provide his DNA sample he refused to do so. He was instructed by Lt. English several times to allow the technicians to obtain a mouth swab from him. He refused each time. Ms. Gwendolyn Mosley from the Montgomery Office also explained to inmate Miller he was required to provide a DNA sample. Inmate Miller again refused to do so. At that time, Ms. Mosley instructed them (officers) to put inmate Miller on the floor. Inmate Miller was then placed on the floor and the technician was able to obtain a mouth swab from him. Once the DNA sample was obtained inmate Miller was stood up and escorted back to his cell.

According to Lt. Raines, he never saw anyone strike inmate Miller in anyway or abuse him in anyway. Lt. Raines claims inmate Miller never complained of being injured and he refused to be taken to health care to be decontaminated from the OC spray. Lt. Raines claims he thinks inmate Miller was taken the next day to health care for a body chart. <u>It should be noted,</u> at the time of this incident, Lt. Raines was in a leg cast and was not involved in taking inmate Miller to the floor.

### OFFICER ANTHONY WEAVER

On July 6th, 2011, at approximately 3:49pm, I interviewed Officer Weaver over the telephone concerning his involvement with inmate Alan Miller. According to Officer Weaver, on this particular day he remembers when a group of people came in to take DNA samples from all the inmates on Death Rowe. He doesn't know who the group belonged to all he knows is that they were there to get DNA samples from the inmates. He remembers that inmate Miller and another inmate refused to give a sample so they saved them for last. When they finally got to inmate Miller he refused to get off the phone with his attorney so Lt. English sprayed him with his OC Freeze Plus P Spray. After being sprayed he placed his hands through the handcuff port allowing them to place the handcuffs on him. At that time they escorted him down to the dayroom for his DNA sample. Officer Weaver then claims he can't remember if they had inmate Miller decontaminated before or after taking his DNA sample. When they got him to the dayroom he refused to provide a sample and started resisting. At that time, Officer Weaver claims they placed inmate Miller on the floor and the DNA sample was taken.

AMILLER1983DISC0940

According to Officer Weaver, it was explained to inmate Miller several times that it was a mandatory requirement for him to give a DNA sample, but he still refused to do so. He wasn't 100% for certain, but he believes Ms. Mosley was there when they took the sample from inmate Miller. Officer Weaver claims he can't remember who all was there, but he does remember Lt English being there and possibly Lt. Strickland being there. Officer Weaver claims, during the incident he never saw anyone strike inmate Miller or physically abuse him in anyway. Officer Weaver also claims there were no injuries to inmate Miller or anyone else to his knowledge. Officer Weaver claims he's pretty sure they did a body chart on inmate Miller, but he doesn't remember it. Once they obtained inmate Miller's DNA sample they placed him back on his feet and escorted him back to his cell without further incident.

## LIEUTENANT JAMES ENGLISH

On July 12th, 2011, at approximately 8:37am, I interviewed retired Lieutenant James English over the telephone concerning his involvement with inmate Miller.

According to Lt. English, he was told that inmate Miller had refused to come out of his cell to give a mandatory DNA sample. At that time, Lt. English claims he went to Ms. Mosley and the people collecting the DNA sample to see if they could collect DNA from an inmate sprayed with OC spray. Lt. English claims they told him yes, but they did not want the inmate sprayed in the room they were collecting the samples in. He then went to inmate Miller's cell where he told Miller he was going to have to give a DNA sample. Inmate Miller refused to give a sample claiming he was on the phone with his attorney. Lt. English claims he then unplugged the phone cord from the phone jack located outside of inmate Miller's cell at which time he began cursing. Lt. English claims he then informed inmate Miller he had to give a DNA sample and he again refused to do so. At that time he sprayed inmate Miller with his Freeze Plus P (OC spray) and inmate Miller wiped it off his face and began cursing. Lt. English claims he instructed inmate Miller again that he was going to have to come out of his cell and he refused. At that time he sprayed inmate Miller again when Lt. Strickland intervened telling inmate Miller he was going to have to come out of his cell. Inmate Miller then walked up to the handcuff port and allowed himself to be handcuffed. At that time, they escorted inmate Miller down the stairs to the dayroom to obtain his DNA sample. Lt. English claims as they escorted inmate Miller to the dayroom no one touched him. Once they entered the dayroom inmate Miller refused to provide a DNA sample. The Institutional Coordinator, Ms. Mosley was there and she walked up to inmate Miller and informed him that it was mandatory that he provide a sample. Lt. English emphasized that inmate Miller was told several times that it was mandatory that he provide a sample. Lt. English claims, Ms. Mosley then instructed the technicians to step back and then instructed us to do what we had to do to get the sample.

According to Lt. English, they then took inmate Miller to the floor by literally placing him on the floor without mistreating him. Once on the floor, Lt. English claims he used his thumbs to make inmate Miller open his mouth, at which time, the technician was able to obtain a mouth swab. Inmate Miller was then placed back on his feet. Lt. English then claims they were going to take inmate Miller to the health care unit for treatment, but he refused treatment. They then had the nurse come to the bottom of the stairway leading up to the tier (2nd floor of cells) to examine inmate Miller, but was only able to do a visual examination because of inmate Miller's lack of corporation. Inmate Miller would not let her check his vital signs so the nurse did a visual assessment of him and said everything looked good to her. Inmate Miller was then escorted back to his cell without further incident.

AMILLER1983DISC0941

## CAPTAIN MICHAEL STRICKLAND

On July 18th, 2011, at approximately 9:18am, I interviewed Captain Michael Strickland over the telephone concerning his involvement with inmate Alan Miller. At the time of this incident Captain Strickland held the rank of Lieutenant. Captain Miller is currently assigned to Donaldson Correctional Facility in Birmingham.

According to Captain Strickland, on this particular day, they were taking mandatory DNA samples from the inmates on Death Rowe. He along with Lieutenant English went to inmate Miller's cell to escort him to the dayroom to get his DNA sample. When they informed inmate Miller of the required sample, inmate Miller refused to be cuffed up. Captain Strickland claims they then told inmate Miller they would come back to get him because they were on a time line, but he will give a sample. When they came to get inmate Miller he again refused to be cuffed up, at which time, Lt. English sprayed inmate Miller with his Freeze Plus P OC spray. Captain Strickland claims inmate Miller dodged the spray and Lt. English sprayed him again this time striking him with the spray. At this time, inmate Miller became very irritated with Lt. English because the spray did not have the same affect on him as it did with the other inmates. Captain claims he then stepped between Lt. English and inmate Miller telling inmate Miller that he needed to cooperate with them because he was going to have to give the mandatory sample. At that time, inmate Miller allowed himself to be cuffed, but still claimed he was not going to give a sample. As they escorted inmate Miller into the dayroom he refused to open his mouth for the mouth swab. Captain Strickland then claims, the Institutional Coordinator, Gwendolyn Mosley tried several times to convince inmate Miller to give the mandatory required DNA sample. Inmate Miller refused to cooperate. At that time, they force inmate Miller to the floor where they were able to open his mouth and take a mouth swab to obtain the sample.

According to Captain Strickland, once the sample was obtained arrangements were made to have inmate Miller taken to the health care unit for a body chart examination. Captain Strickland claims he did not accompanied inmate Miller to the health care unit. Captain Strickland claims inmate Miller did not sustained any injuries and at no time did anyone physically abused inmate Miller. Inmate Miller was taken to the infirmary to be decontaminated from the OC spray which had little affect to him.

It should be noted, When asked if inmate Miller was on the telephone in his cell, Captain Miller replied, it was very well possible that he was because there were several inmates on the phone that day. If inmate Miller was using the phone they would of unplugged it from the wall jack located outside of his cell. Captain Strickland pointed out, nobody pulled the phone out of inmate Miller's hand. Captain Strickland also claims inmate Miller was very loud and disrespectable to them.

## LIEUTENANT TIMOTHY CRAFT

On July 18th, 2011, at approximately 1:42pm, I interviewed Lieutenant Craft over the telephone concerning his involvement with inmate Alan Miller. At the time of this incident Lt. Craft held the rank of Sergeant.

According to Lt. Craft, he along with Lieutenants English and Strickland were on the tier removing the inmates one by one from their cells and escorting them to the dayroom to give the required mandatory DNA sample to officials. When they got to inmate Miller's cell he claimed he was going to call his attorney. When they came back to his cell inmate Miller claimed his attorney told him he didn't have to give a sample to DOC. Lt. Craft claims they were then instructed to bring inmate

AMILLER1983DISC0942

Miller to the dayroom because it was mandatory that he give the sample. Lt. Craft claims they then told inmate Miller that it was mandatory that he give the sample, but inmate Miller again refused to do so as he was talking on the phone. At that time, Lt. English sprayed inmate Miller with his chemical agent and inmate Miller began screaming and cursing at Lt. English. Inmate Miller eventually came to the tray port to be handcuffed.

Lt. Craft then claims once they removed inmate Miller from his cell they escorted him to the dayroom for the DNA sample. There were no problems until they got to the dayroom and he refused to give the sample. Lt. Craft claims, Ms. Mosley then informed inmate Miller that it was a mandatory requirement for him to give a DNA sample. Inmate Miller again refused to do so when Lieutenants English and Strickland grabbed him around his torso and he grabbed him by his legs. They then picked inmate Miller up and placed him on the floor. Lt. Craft claims inmate Miller was placed on his back and it was possible that he might of hit the floor hard, but they did not slam him to the floor. Lt. Craft also pointed out, that they did have to physically wrestled with inmate Miller because he was a big man weighing at least 300lbs., but they did not slam him to the floor.

According to Lt. Craft, he never saw anyone strike inmate Miller and to the best of his knowledge inmate Miller never complained of being hurt. Lt. Craft also claims he cannot remember if inmate Miller was taken to health care for a body chart, but the normal procedure would be to take him for a body chart examination.

## COORDINATOR GWENDOLYN MOSLEY

On July 25, 2011, at approximately 10:44am, I interviewed Ms. Mosley over the telephone concerning her involvement with inmate Alan Miller. According to Ms. Mosley, she remembers inmate Miller being escorted by Lieutenants English and Strickland to the dayroom for his mandatory DNA sample. Inmate Miller had been sprayed with OC in his cell for refusing to be handcuffed and escorted to the dayroom. When inmate Miller arrived in the dayroom he again refused to submit to a DNA sample. Ms. Mosley then claims she informed inmate Miller that the DNA sample was not an option it was mandatory. Inmate Miller again refused to provide his DNA sample. Ms. Mosley then instructed the officers to place inmate Miller on the floor for the sample. Ms. Mosley claims once inmate Miller was on the floor, DFS personnel performed a mouth swab on him and inmate Miller was placed back on his feet. Ms. Mosley claims she wasn't for certain, but inmate Miller should have been taken to health care to be decontaminated.

According to Mosley, inmate Miller was never physically abused by any DOC personnel in her presence. Inmate Miller was placed on the floor and once the mouth swab was administered he was placed back on his feet. Inmate Miller never complained of any injuries while in her presence.

## EVIDENCE

The above evidence shows that inmate Alan C. Miller refused to cooperate with Correctional Officials when told he was required to provide a mandatory sample of his DNA. Inmate Miller while on the telephone in his cell with his attorney refused to be handcuffed. Inmate Miller then along with another inmate were left for last to have their DNA samples taken. When Correctional Officials returned inmate Miller was still on the phone and was instructed to hang up. Inmate Miller refused to hang up and the phone was unplugged from the telephone jack located outside of his cell. Inmate Miller refused to be handcuffed and was sprayed twice with OC spray. Inmate Miller then allowed

himself to be handcuffed and escorted to the dayroom for his DNA sample. Inmate Miller again refused to cooperate and was ordered by Ms. Mosley to be taken to the floor. Correctional Officials placed inmate Miller on the floor and DFS personnel were able to obtain a mouth swab from him. Inmate Miller was placed back on his feet and then refused to be taken to heath care to be decontaminated. The nurse from health care was eventually brought to him for an examination. Inmate Miller would not cooperate in the examination process and the nurse made a visual assessment of him. Noting there were no visible signs of injuries.

Whenever officers have to make physical contact with a subject the potential for injuries to both parties are always a possibility. It is very possible that inmate Miller hit his head on the floor and sustained a laceration to his face from a finger nail, as he claims, when taken to the floor. This investigative inquiry could not find any intentional acts on officers to inflict injuries to inmate Miller. As Ms. Mosley stated the DNA sample is not an option "it's mandatory".

## FINDING

The above evidence does not support inmate Miller's allegations of officer abuse.

/s/Ron Cooper
Ron Cooper, Investigator
Alabama Department of Corrections
Investigations and Intelligence Division

RC/

AMILLER1983DISC0944

Inmate's Statement        Attachment #1

On March 3, 2009, I was on phone with my lawyer about the DNA Test. My Lawyer "Mike Bartolic" wanted me to read what the letter said. I read it. He advise me to protest it but to take it because the letter said it was mandatory, but have it documented that I protested. I was asked to hurry up but wasn't order to get off phone or cuff up till right up to before the phone was jerked out of my hand and moved. I told English I was on phone with lawyer he said he didn't care. He said they were going to get DNA, I said you can have it so long what I said was documented. I put my hands out to be cuffed and went downstairs, where I gave my fingerprints with no problem, but they didn't have time for what I was saying. I never refused just protested. They had no reason to put me on ground for DNA. I did not resist. I never been wrote up since I have been here. I don't know if any other inmates witnessed what happen or heard. But I never refused anything.

Alan Miller
Z672 G1-16A Death Row

AMILLER1983DISC0945

Arresting Officer's Statement

On Tuesday Ms Mosley and several forensick science Members came to Holman to collect D.N.A. Samples. My instructions were that no inmate could refuse to give a sample. When Lt. Michael Strickland went to inmate Alan Miller's cell he told Lt. Strickland that he was not going to give the sample. When we finished that tier Lt. Strickland went back to inmate Miller's cell he again refused to exit his cell to give the sample. I went and spoke to the Forensick Science team and Ms. Mosley. Ms Mosley told me to bring inmate Miller to the Pd Q Day room for the sample.
I went to inmate Miller's cell and ordered him to cuff up and exit his cell. Inmate Miller told me that he was talking on the Phone. I told inmate Miller to hang the phone up and cuff up and exit his cell. He told me that he was not going to give a DNA sample. I had an officer to unplug the phone from the wall. Inmate Miller began cursing at me.

AMILLER1983DISC0946

I ordered inmate Miller to cuff up and exit his cell. He refused.

I sprayed inmate Miller with a one second burst of Freeze +P pepper spray. I then told inmate Miller to cuff up and exit his cell. He refused. I sprayed inmate Miller a second time. Inmate Miller was cuffed by Lt. Strickland. Inmate Miller was then escorted to the P & Q Day Room. Inmate Miller gave the left and right thumb print then refused to give the DNA sample. Ms Mosley tryed to talk inmate Miller into giving the DNA sample. He refused. Lt. Strickland, Sgt. Timothy Croft and I placed inmate Miller on the floor. I placed my thumbs on inmate Miller cheeks an Mouth cheeks and forced him to open his mouth. The sample was then retrieved by one of the techs. Inmate Miller was then helped to his feet and escorted back to his cell. He refused to go to the health care unit.

AMILLER1983DISC0947