IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALAN EUGENE MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:22-cv-506-RAH |
| ) | [WO] |
| JOHN Q. HAMM, Commissioner, ) | |
| Alabama Department of Corrections, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Alan Eugene Miller is a death row inmate in the custody of the Alabama Department of Corrections (ADOC) at Holman Correctional Facility (Holman).[1] On August 22, 2022, Miller filed this lawsuit under 42 U.S.C. § 1983, asserting three causes of action against the Commissioner of the ADOC, the Warden of Holman, and the Alabama Attorney General (collectively, the State or Defendants), in their official capacities, for deprivation of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 1.) Miller sought declaratory and injunctive relief.

---

[1] Holman is the primary correctional facility for housing death row inmates in Alabama and is the only facility in the state that performs executions.

Prior to Miller filing this lawsuit, the Alabama Supreme Court scheduled Miller's execution for September 22, 2022. On September 19, 2022, this Court granted Miller's Motion for Preliminary Injunction (hereinafter, PI Order) and enjoined the Defendants and their agents from executing Miller "by any method other than nitrogen hypoxia until further order from this Court." (Doc. 62 at 61.) When this Court entered its PI Order, it did not stay the injunction pending appeal.

On September 20, 2022, the State appealed the PI Order to the Eleventh Circuit Court of Appeals. (Doc. 63.) Later in the day, the State filed a Motion to Stay Pending Appeal in this Court, requesting a ruling by 12:00 p.m. CDT on September 21, 2022. (Doc. 67.) This matter is ripe for review.

For the following reasons, the State's Motion to Stay Pending Appeal is due to be denied.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

The general rule is that "[t]he filing of a notice of appeal . . . divests the district court of control over those aspects of the case involved in the appeal." *Pac. Ins. Co. v. Gen. Dev. Corp.*, 28 F.3d 1093, 1097 n.7 (11th Cir. 1994) (per curiam)

(alteration in original) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). However, Federal Rule of Civil Procedure 62(d) provides an exception to this rule, permitting a district court, in its discretion, to "suspend, modify, restore, or grant an injunction" during the pendency of the appeal. FED. R. CIV. P. 62(d). "A district court may, therefore, proceed as provided by such rule without leave of the court of appeals to grant or stay an injunction pending an appeal." 30 Am. Jur. 2d Executions and Enforcement of Judgments § 41 (2021).

In deciding whether to stay an injunction pending appeal, the Court uses a four-part test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000) (per curiam). "Courts rarely stay a preliminary injunction pending appeal given that the test for a stay is so similar to the test for a preliminary injunction." *Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1032 (N.D. Fla. 2018). The State, as the stay applicant, is held to the same demanding standard required for Miller to obtain injunctive relief. The State must, "by a clear showing," carry the burden of

persuasion on all four requirements. *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

## IV.  DISCUSSION

Having reviewed the pending motion, the Court finds that the State has not carried its burden by a clear showing.  Less than two days ago, in its PI Order, this Court meticulously analyzed the record evidence, applied the required constitutional standards, and implemented the well-settled, four-part test utilized in the Eleventh Circuit for evaluating motions for injunctive relief, ultimately finding that Miller was substantially likely to succeed on the merits of his equal protection and procedural due process claims and that the equities weighed in his favor.

The factors the Court considered before granting Miller injunctive relief are nearly identical to the factors it must now consider in deciding whether to stay the injunction. *See Detzner*, 347 F. Supp. 3d at 1032.  Granting the State's motion would require the Court to reanalyze those factors and yet reach an entirely opposite result.

The Court found in its PI Order that Miller—not the State—is likely to succeed on the merits of his equal protection and procedural due process claims. Inextricably intertwined with this finding was the Court's determination that, based on the evidence presented, including Miller's live testimony at the evidentiary hearing, it is substantially likely that Miller timely elected an execution by nitrogen hypoxia.  If the injunction is not enforced, Miller would be irreparably injured

because the State would be permitted to execute him by lethal injection on September 22, 2022, in contravention of his state-created interest in choosing to die by nitrogen hypoxia. And, although the Court recognized in its PI Order the State's strong interest in enforcing its criminal judgments, the Court found that the public interest lies in ensuring (1) that executions are not carried out in an unconstitutional manner, (2) that the State follows its laws generally, and (3) that the State honors an inmate's valid election of nitrogen hypoxia. The Court also found that any harm to the public is greatly outweighed by the harm to Miller if an injunction does not issue.

Before turning to the State's arguments in its stay motion, the Court wishes to highlight one of its findings in the PI Order, which the State overlooks in its motion. In his Amended Complaint, Miller asked the Court to declare that he "timely submitted his election form pursuant to Ala. Code § 15-18-82.1(b) and opted into execution by nitrogen hypoxia." (Doc. 18 at 19.) In its opposition to Miller's Motion for Preliminary Injunction, the State expressly argued that Miller was not substantially likely to show that he timely elected nitrogen hypoxia. And at the evidentiary hearing, the State agreed that this Court is the proper factfinder to determine whether Miller timely elected. (Doc. 58 at 160.) The parties—including the State—agreed that determining whether it is substantially likely that Miller timely elected was a key issue in evaluating Miller's entitlement to a preliminary injunction. And after considering all of the evidence presented and counsels'

5

arguments, the Court concluded it is substantially likely that Miller timely elected nitrogen hypoxia. Notably, the State does not argue that the Court's finding was clearly erroneous. Rather, the State presents legal arguments as if the Court had not made that finding. With that background, the Court now turns to the State's arguments in its stay motion.

*First*, equal protection. The State argues that it has a rational basis for requiring evidence corroborating an inmate's testimony when it evaluates whether an inmate timely elected nitrogen hypoxia. But the State views Miller's equal protection claim through the wrong lens. The question is not whether the State has a rational basis for requiring corroborating evidence when the *State* evaluates an inmate's assertion that he elected. As the Court explained in its PI Order, "the question is whether it would violate Miller's equal protection rights if the State executed him by lethal injection even though he timely elected nitrogen hypoxia, while not pursuing execution by lethal injection for other inmates who timely elected nitrogen hypoxia." (Doc. 62 at 44.)[2]

In its stay motion, the State argues that it has a rational basis only to dispute the veracity of Miller's allegations that he timely elected nitrogen hypoxia—*not* that

---

[2] All the nitrogen hypoxia election statute requires is an inmate's writing delivered to his or her warden within the proscribed time period. *See* ALA. CODE § 15-18-82.1(b). The State has not argued that the manner in which Miller delivered his form to the warden was legally insufficient; rather, the State maintains that he did not do so at all.

it has a rational basis to treat Miller differently (by executing him by lethal injection) *if* his allegations are true. In essence, the State contends that notwithstanding the Court's factual finding that it is substantially likely Miller timely elected nitrogen hypoxia, Miller's equal protection rights would not be violated if he were executed by lethal injection because the *State* wants more corroborating evidence.³ That result would be absurd and legally untenable. Moreover, it would require the Court to substitute the State as the factfinder after the State expressly requested that *this Court* sit as the factfinder.

In its PI Order, the Court concluded that it is "substantially likely, if not certain," that "it would violate Miller's equal protection rights if the State executed him by lethal injection even though he timely elected nitrogen hypoxia, while not pursuing execution by lethal injection for other inmates who timely elected nitrogen hypoxia." (Doc. 62 at 44.) The State has failed to persuade the Court that this conclusion was wrong. Indeed, the Court has not articulated a rational basis for treating Miller differently from other inmates who timely elected *if Miller timely elected*—and again, the Court found it substantially likely that he did.

---

³ Moreover, the Court's determination was based on much more than reading Miller's and Warden Raybon's affidavits and looking in the State's nitrogen hypoxia file. The Court listened to Miller's live testimony and considered a large amount of evidence surrounding the nitrogen hypoxia election period and election form distribution at Holman.

*Second*, procedural due process. The State argues that Miller's procedural due process claim fails because he has an adequate postdeprivation remedy: seeking a writ of mandamus in an Alabama state trial court. But the State appears to have ignored the portion of the Court's PI Order explaining that the deprivation of Miller's rights is not complete unless and until his execution is carried out by lethal injection in contravention of his nitrogen hypoxia election. (*Id.* at 50–51.) No adequate postdeprivation remedy exists for such a deprivation, (*see id.* at 52), and the State does not argue otherwise.

And the Court acknowledges, as before, that a negligent loss alone cannot give rise to an actionable due process claim. But, as the Court explained before, "the deprivation Miller complains of is about more than the negligent loss of a form. It is about the deprivation of his right to choose a nitrogen hypoxia execution and the State's plans to carry out his execution by lethal injection in contravention of his choice." (*Id.* at 53 n.19.) Thus, the Court finds the State's arguments unavailing, and the Court discerns no error in its prior finding that Miller is substantially likely to succeed on his procedural due process claim.

*Third*, delay. The State quotes language from a Supreme Court decision that "[i]n deciding whether to grant a stay of execution, courts must consider whether such a challenge could have been brought earlier or otherwise reflects a prisoner's attempt at manipulation." (Doc. 67 at 24 (quoting *Nance v. Ward*, 142 S. Ct. 2214,

8

2225 (2002)).)  True, the Supreme Court has stated on multiple occasions that "[a] court considering a stay [of execution] must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (citation omitted); *see also Nelson v. Campbell*, 541 U.S. 637, 650 (2004) (discussing the "strong equitable presumption against the grant of a stay").  But Miller did not seek or obtain an open-ended stay of execution.  Rather, he sought and obtained a narrowly tailored injunction designed to remedy the specific harm of which he complains: the State's refusal to honor his nitrogen hypoxia election and its plans to execute him by lethal injection.  That Miller's execution by nitrogen hypoxia cannot be carried out on September 22, 2022, is attributable to the State, not Miller.

Importantly, the State still does not contest that Miller likely faces irreparable injury without an injunction.  Nor does the State argue, let alone show, that the harm occasioned by a (short) delay in carrying out Miller's execution outweighs the irreparable harm to Miller.  The Court stands by its prior determination that Miller did not inexcusably delay filing this lawsuit such that it counsels against granting injunctive relief.  And the Court reiterates that any delay here[4] does not militate

---

[4] Moreover, courts have typically found that an inmate unreasonably delayed in bringing their claim where the inmate sought a stay mere days before their scheduled execution, *see, e.g.*, *Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1293 (11th Cir. 2019) (concluding inmate was not

9

against injunctive relief because Miller has met his burden of showing a substantial likelihood that he timely elected and that he can succeed on his claims, that he likely faces irreparable injury, and that the balance of harms weighs in his favor. *Cf. Smith v. Comm'r, Ala. Dep't of Corr.*, 844 F. App'x 286, 294 (11th Cir. 2021) (in case where an inmate sought to have his spiritual advisor in the room during his execution, explaining that a delay is not dispositive and concluding that "any delay [was] not so weighty" because the inmate was likely to succeed on his legal claim and, without an injunction, the ADOC would likely execute the inmate without his spiritual advisor present, and that there is "no do-over in this scenario").

Finally, the State argues that the Court should grant a stay under an alternative formulation of the test, which requires a "substantial case on the merits" and that the equities weigh heavily in favor of granting a stay. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). The State has not demonstrated its entitlement to a stay under this alternative test because the State has not shown that it has a

---

justified in waiting to seek a stay ten days before execution date and this delay counseled against the grant of a stay), or where the inmate could have brought their claim much earlier, *see, e.g.*, *Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (vacating stay of execution and explaining that the inmate's claim could have been brought "more than a decade ago"). Those circumstances are a far cry from this case, where Miller first learned that the State could not locate his election form in May 2022, and where he filed his lawsuit four weeks before his scheduled execution and his preliminary injunction motion three weeks before. And "it was not unreasonable for [Miller] to attempt to exhaust his state remedies by completing litigation on the State's motion to set his execution date before filing his section 1983 lawsuit here." *Hamm v. Comm'r, Ala. Dep't of Corr.*, No. 18-10473, 2018 WL 2171185, at *2 (11th Cir. Feb. 13, 2018).

substantial case on the merits. Even if it did, the State has not shown that the equities weigh heavily in favor of a stay.

The State's arguments do not persuade the Court that it erred in granting a preliminary injunction. A stay is not warranted here.

## V.  CONCLUSION

For the foregoing reasons, the State's Motion to Stay Judgment Pending Appeal (Doc. 67) is DENIED.

DONE on this the 21st day of September, 2022.

                                              /s/ R. Austin Huffaker, Jr.
                                              R. AUSTIN HUFFAKER, JR.
                                              UNITED STATES DISTRICT JUDGE