# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ALAN EUGENE MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. **2:22-cv-00506-RAH** |
| | ) |
| JOHN Q. HAMM, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## Defendants' Opposition to Plaintiff Miller's
## Second Motion for Expedited Discovery (Doc. 90)

Defendants oppose Miller's second motion for expedited discovery (Doc. 90). Early discovery is not warranted, particularly due to the Eleventh Amendment immunity issues implicated by the new claims added by Miller's second amended complaint – the basis for the requested discovery – and the fact that the claims for relief on which the discovery is sought are barred by the statute of limitations. Additionally, early discovery would be prejudicial to Defendants because the alleged need for the requested discovery is linked to Eighth and Fourteenth Amendment claims that are invalid as a matter of law, and Defendants have not yet had an opportunity to file their motions to dismiss, have them meaningfully considered by the Court, so as to obtain dismissal of the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A. **Miller is Not Entitled to Early Discovery Because His Eighth Amendment Claim is Barred by the Statute of Limitations.**

Miller's second amended complaint opens with the allegation that, "For Alan Miller's *entire adult life*, medical professionals have struggled to access his veins. Drawing blood *has always* been an [sic] long and painful affair for Mr. Miller." (Doc. 85, ¶ 1 (emphasis added).) The second amended complaint also concedes that Miller's conviction became final no later than May 19, 2006, meaning Plaintiff Miller was subject to execution by lethal injection at that time. (Doc. 85, ¶¶ 30-31.) Accepting these allegations as true, as this Court must, Miller's Eighth Amendment challenge must be dismissed pursuant to the applicable statute of limitations as his lifelong fear of needless and problematic veins existed throughout at least twelve years that he was subject to lethal injection as a method of execution, yet he did not challenge Alabama's lethal injection protocol.[1]

Alabama has used needles (cannula) to obtain intravenous access as part of its lethal *injection* method of execution since that method of execution was adopted in 2002. Giving Miller the most favorable reading of the facts pleaded in his second amended complaint, any challenge to the State's intent to use needles to conduct a lethal injection – based on the unique veinous access issues that he has suffered *his*

---

[1] That is, even if the Court accepts as true the averment that Miller elected nitrogen hypoxia, he was subject to lethal injection prior to June 2018. If Miller could not bring his "afraid of needles" Eighth Amendment challenge in May 2018, he cannot bring it now.

*entire adult life* – would have had to been filed within two years of his becoming subject to lethal injection as a method of execution. *See, e.g.*, *McNair v. Allen*, 515 F.3d 1168, 1176-77 (11th Cir. 2008). Despite Miller's alleged lifelong problems with intravenous access and needles, and despite his personal knowledge of those problems, he did not file an Eighth Amendment challenge to Alabama's lethal injection protocol's use of needles, a gurney, or any other aspect of the lethal injection procedure after his direct appeal became final. Long before Miller alleges that he elected nitrogen hypoxia in June 2018, Miller's ability to file a challenge to Alabama's use of needles to conduct a lethal injection, based on the alleged problems he has had his entire life, became barred by the statute of limitations.

Miller's second amended complaint does not allege that Alabama's use of needles to perform a lethal injection is the result of a material change to Alabama's lethal injection protocol, nor could it. Similarly, the use of bright lighting, tourniquets, and a gurney to carry out lethal injections, other aspects of Miller's second amended complaint, are not the product of recent, material changes to Alabama's protocol, nor does Miller allege that this is the case. Because these aspects of the lethal injection procedure have existed since that method of execution was adopted by the State, and because the second amended complaint does not allege any facts that would establish circumstances that would permit Miller's Eighth Amendment challenge at this late hour, Defendants are entitled to have the claim

dismissed. Permitting early discovery on a claim that is clearly time barred under the facts alleged in the complaint would be an abuse of discretion and highly prejudicial to the official-capacity defendants.

As a specific example, this Court recently dismissed another condemned inmate's § 1983 complaint on grounds illustrating why early discovery is inappropriate. *See Smith v. Hamm*, No. 2:22-cv-00497, 2022 WL 10198154, *4 (M.D. Ala. Oct. 16, 2022) (citing for comparison *Boyd v. Warden*, 856 F.3d 853, 873-74 (11th Cir. 2017)). Here, Miller requests the production of documents relating to the "process used to select medical professionals to serve on the IV team for Plaintiff's execution" as well as concerning the training or licensure of individuals on the IV team. (Doc. 90-2 at 5.) But Miller has not alleged that the training and licensure requirements for ADOC's IV team members has been changed (and he cannot, as they have not). As noted in *Boyd*, cited by this Court in *Smith*, any Eighth Amendment claim based on the adequacy of ADOC's selection process for medical professionals serving on the IV team and the training and licensure requirements is time-barred. Early discovery of these materials cannot be predicated on a time-barred claim.

**B.     Miller's request for early discovery is due to be denied on Eleventh Amendment grounds.**

Three claims added in the second amended complaint must be dismissed on Eleventh Amendment grounds, as will be shown in the Defendants' motion to dismiss. To illustrate why Plaintiff is seeking to put the cart before the horse in this proceeding, however, Defendants will briefly illustrate the constitutional infirmities of these claims.

In Count Six of the second amended complaint, Miller seeks to assert a claim against Defendants, in their official capacities, arising under the Constitution of Alabama of 1901. "Alabama grants sovereign immunity to its state executive officers pursuant to Article I, Section 14 of the Alabama Constitution of 1901." *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996). Defendants have not, and do not, consent to being sued in this forum. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 & n.9 (1984).

Dismissal of Count Six is required even if Miller asserts that he seeks only prospective injunctive relief. The limited exception to Eleventh Amendment immunity encompassed within the *Young* doctrine does not apply to claims brought under state law. *Halderman*, 465 U.S. at 106. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id*. Because such a result "conflicts

5

directly with the principles of federalism that underlie the Eleventh Amendment," the Supreme Court has concluded "that *Young* and *Edelman*[2] are inapplicable in a suit against state officials on the basis of state law." *Id*. Early discovery cannot be predicated on a ground that must be dismissed under circuit precedent as a matter of federalism and comity.

    Similarly, Miller is seeking nominal and punitive monetary damages against official capacity defendants who are not sued in their individual capacities. Miller plainly seeks "both nominal and punitive damages against Defendant Raybon and Defendant Hamm" for their official roles during the attempt to obtain intravenous access on September 22, 2022, to carry out a lawful order of the Alabama Supreme Court, as well as for seeking another execution date to carry out Plaintiff's lawful sentence. (Doc. 75 at 47 & ¶ 3.) A "suit against a state official is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting the sole exception (*Young*) for suits seeking prospective injunctive relief). But any relief that "in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986). Again, early discovery cannot be predicated on a claim that is subject to dismissal.

---

[2] *Edelman v. Jordan*, 415 U.S. 661 (1974).

Additionally, early discovery would be inappropriate because Miller cannot obtain the relief of a stay of the Alabama Supreme Court proceedings, which he seeks by means of the counts added in his second amended complaint. There exists a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances. *Middlesex Cty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Nonetheless, Plaintiff asks this Court to "[e]nter a motion [sic] to stay proceedings in the Alabama Supreme Court until the Court can resolve the merits of this litigation, in the interest of judicial efficiency and comity, and under the principles of federalism." (Doc. 85 at 47.) Miller's stated intent to use his second amended complaint as a means to interfere with the Alabama Supreme Court's performance of its duties under Rule 8(d) of the Alabama Rules of Appellate Procedure in a criminal proceeding warrants dismissal on *Younger*-abstention grounds, as well as the denial of the requested early discovery.

Proceedings to set an execution date in the Alabama Supreme Court are an extension of the original criminal prosecution. A sentence of death is automatically stayed at the time that it is imposed, and Rule 8(d) of the Alabama Rules of Appellate Procedure assigns the responsibility for determining the appropriate time to lift the stay and to issue the execution warrant to the Alabama Supreme Court. Thus, the decision to set an execution date is an extension of the capital sentencing process in

the underlying criminal case, as is evidenced by the fact that paragraph (d) of Rule 8 is entitled "Stays in criminal cases." Ala. R. App. P. 8(d).

But even if that were not true, the "policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. *Middlesex Cty. Ethics Comm.*, 457 U.S. at 432 (citing *Moore v. Sims*, 442 U.S. 415, 423 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975)). Important state interests include those proceedings that "bear a close relationship to proceedings criminal in nature" or that are "necessary for the vindication of important state policies or for the functioning of the state judicial system." *Id*. The State's request to set Miller's execution date, and the Alabama Supreme Court's role in that process, involve important state interests, as recognized by the Supreme Court and the Eleventh Circuit. *See Nelson v. Campbell*, 541 U.S. 637, 650 (2004) (recognizing "the State's significant interest in enforcing its criminal judgments"); *Bowles v. Desantis*, 934 F.3d 1230, 1248 (11th Cir. 2019) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)) (recognizing "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [valid] sentence."); *McNair v. Allen*, 515 F.3d 1168, 1175-76 (11th Cir. 2008) (quoting *Williams v. Allen*, 496 F.3d 1210, 1213 (11th Cir. 2007) ("It is well known in this circuit that 'it is common practice for the State to ask the Alabama Supreme Court to set an execution date for a death-row inmate shortly after the United States

Supreme Court has denied certiorari review of the petitioner's federal habeas petition."); *Jones v. Allen*, 485 F.3d 635, 639 n.2 (11th Cir. 2007) (same); *Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment."). As this Court is required to abstain from interference with the Alabama Supreme Court's consideration of Miller's sentence, the pendency of those proceedings do not contribute to the need for expedited discovery as Miller suggests.

Miller's request for this Court to stay proceedings in the Alabama Supreme Court is problematic, too, because the justices of the Alabama Supreme Court have not been named as defendants in his lawsuit. Thus, the *Young* exception to Eleventh Amendment immunity would not permit any injunctive relief directed to that Court. As the Court observed in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2nd Cir. 1930)), "a federal court exercising its equitable authority may enjoin *named defendants* from taking specified unlawful actions … [but] no court may 'lawfully enjoin the world at large.'" Although Miller invokes the principles of comity and federalism in his prayer for relief, "'comity' includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions

9

in their separate ways." *Middlesex Cty. Ethics Comm.*, 457 U.S. at 431 (quoting *Younger*, 401 U.S. at 44). This Court cannot accept Miller's invitation to interfere in the work of the Alabama Supreme Court, and the pendency of proceedings in that Court, and that invitation cannot provide justification for the extraordinary action of granting early discovery.

Finally, Eleventh Amendment considerations warrant denial of the requested early discovery until the Court can fully consider Defendants' soon-to-be-filed motion to dismiss. The Eleventh Amendment, and the related considerations of comity, dictate that the State's initial Rule 12(b)(6) defenses to Miller's claims, as asserted by the official capacity defendants, be meaningfully considered by a court before Miller's lawsuit is allowed to proceed further.

## C. Miller's Eighth Amendment cause of action cannot support early discovery, as it is subject to dismissal as a matter of law.

The Eighth Amendment does not guarantee a condemned inmate, such as Plaintiff Miller, a completely painless death, just as such a death was not provided to his three victims. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019) ("For one thing, it tells us that the Eighth Amendment does not guarantee a prisoner a painless death – something that, of course, isn't guaranteed to many people, including most victims of capital crimes."). The relevant question, for Eighth Amendment purposes, is whether "the State's chosen method of execution cruelly superadds pain to the

death sentence." *Id* at 1125. To violate the constitution, the superaddition of pain must be "well beyond what's needed to effectuate a death sentence." *Id*. at 1127.

To state the obvious, venous access (an injection) is necessary to perform a lethal *injection* execution. And, to minimize the risk of unnecessary pain should an IV line infiltrate or become unusable, ADOC protocol provides for intravenous access at *two* different locations before lethal injection is administered. Thus, the act of inserting an intravenous cannula to establish intravenous access is an act that is a necessary part of carrying out a lethal injection.[3] Nowhere does Plaintiff Miller's second amended complaint allege that needle sticks are unnecessary to obtain the intravenous access required for a lethal injection. Additionally, the second amended complaint does not allege that the effort to obtain IV access at a second location was done in a manner that superadded pain to the process, or that Miller offered or agreed to have the procedure proceed with only one point of established access to avoid additional needle sticks.

Because the second amended complaint does not allege facts that would establish that Alabama's use of needles (cannula) to obtain intravenous access are unnecessary to the conduct of a lethal injection or were performed in a manner designed to superadd pain to the process, his Eighth Amendment claim is legally

---

[3] The second amended complaint omits any factual averment acknowledging the fact that veinous access for Mr. Miller was obtained in one location. Because this is a material fact, that omission is notable.

11

defective. Such a claim is subject to dismissal and cannot support the request for early discovery.

### D. Miller's Equal Protection claim pertaining to Doyle Lee Hamm cannot support early discovery as it is due to be dismissed. Additionally, early discovery would be inappropriate

Miller is not entitled to any discovery on his "class of one" equal protection claim in which he names Doyle Lee Hamm as his comparator, as that claim is due to be dismissed for failing to state a claim upon which relief can be granted. (Doc. 85, ¶¶ 193-198.) The grant of discovery on such a claim prior to the official capacity defendants being able to file their motion for dismissal and to obtain judicial consideration of their legal claim would be prejudicial and would further be an affront to the guiding principles of federalism and comity.

Specifically, "the core concern of the Equal Protection Clause [is] as a shield against arbitrary classifications." *Enquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 598 (2008). As such, there are certain activities, such as employment, where the government acts in a manner that does not classify citizens as sovereign in which the class-of-one equal protection theory does not apply. *Id*. The defense of the government in civil litigation is one of those activities where the class-of-one equal protection theory does not apply.

First, like the employment context that was the subject of *Engquist*, the defense of civil litigation does not involve the government acting with "the power

to regulate or license," but rather "as proprietor, to manage [its] internal operation." *Engquist*, 553 U.S. at 598 (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896 (1961)). Further, "[g]iven the 'common-sense realization that government offices could not function'" if every settlement of a lawsuit "became a constitutional matter," constitutional review of such decisions "must rest on different principles than review of … restraints imposed by the government as sovereign." *Id*. (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983), and *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion)).

Federal "equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Engquist*, 553 U.S. at 601 (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). More specifically, the "basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes." *Id*. (quoting *San Antonio Independent School Dist. V. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring)). Where the Supreme Court has permitted "class of one" equal protection claims, such as in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), it has been because the claim involved the government's power to regulate; in that case, "the government's regulation of property." *Engquist*, 553 U.S. at 602. The class-of-one theory is borne

13

from the expectation that "legislative or regulatory classifications [] apply 'without respect to persons…'" *Id*. (quoting 28 U.S.C. 453).

Where state actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualize assessments," the Court has noted "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id*. at 603. For example, "allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in [a police officer's] challenged action." *Id*. at 604. "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id*.

And just as the fact that the at-will nature of government employment illustrates the incompatibility of government employment actions and the class-of-one equal protection theory, the fact that no plaintiff is entitled to a legal settlement in a lawsuit illustrates the legal incompatibility of such a claim to a defense of the government in civil litigation which led to the settlement of litigation under the facts of that particular case.

The fact that Miller's claim comparing himself to Doyle Lee Hamm is the *second* class-of-one equal protection claim he has brought against Defendants speaks to another important consideration: "the 'common-sense realization that government offices could not function if every [government settlement] became a constitutional matter.'" *Engquist*, 553 U.S. at 607 (citing *Connick*, 461 U.S. at 143). Just as in the employment context "an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful" refusal to compromise a legal claim in a lawsuit naming the government as defendant. But the "Equal Protection Clause does not require "[the] displacement of managerial discretion by judicial supervision," *id*. at 608-09 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)), nor does it require the displacement of the independent legal advice provided by a State's Attorney General by judicial supervision.

There is a more practical reason for declining early discovery on class-of-one equal protection claims involving civil settlements involving official capacity defendants, as well. Unlike ineffective assistance of counsel claims – brought by a previously represented client who waives the attorney-client privilege to the extent prior legal actions by their attorney are challenged – the type of class-of-one equal protection claim Miller asserts would necessarily involve intrusions into the legal advice given to state officials as part of the decision to settle (or not settle) litigation. If the State itself does not waive the attorney-client privilege (and it does not), then

15

the plaintiff will never be able to obtain evidence needed to establish such a class-of-one equal protection claim. Federal courts cannot be part of a process that purports to intrude, at the request of an unhappy litigant, into the legal representation of state officials to determine the reasonableness of legal settlements in cases where discriminatory intent and purpose against a protected class are not alleged.

A federal court has no business reviewing the settlement decisions of a state's attorney general. In *Halderman*, discussed previously, the Court observed, "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." 465 U.S. at 106. Equally true, it is difficult to think of a greater intrusion on state sovereignty than for a federal court to decide the appropriateness of a state attorney general's decision to settle civil litigation.

E. **The requested discovery is unduly burdensome and seeks information outside of the scope of Rule 26(b) of the Federal Rules of Civil Procedure.**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues as stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). As set forth below, permitting the requested discovery at this stage in

16

the proceedings will be unduly burdensome to Defendants and would serve as an impermissible intrusion of the federal government into the State's provision of legal services to government officials.

The Federal Rules of Civil Procedure are designed to protect defendants from the burden of *any* discovery process until after they have had an opportunity to resolve any required matters Rule 12 and to file a responsive pleading. To the extent the Court has required Defendants to respond to Miller's motion for expedited discovery less than forty-eight hours after it was filed, and after providing Defendants the reduced period of only eight days to file their motions to dismiss, they have already been prejudiced in their ability to defend the State's interests. If shortening Defendants' time to respond to the second amended complaint, from the time otherwise provided by the Federal Rules of Civil Procedure, was the method the Court believed best expedited this case, then Defendants should have been entitled to a full eight days to research, draft, and file their motions. The fact that the Court required an expedited response to Miller's discovery request during that severely shortened timeframe – removing two days from the eight originally provided – has already prejudiced the State.

Miller brings to this Court claims predicated on the right to notice and a meaningful opportunity to be heard, yet he asks this Court to require the State to produce discovery before the State has a meaningful opportunity to prepare and

respond. Miller has named Alabama's Attorney General in an official capacity and seeks documents in the possession of Defendant Marshall, the State's chief legal officer, many of which will be privileged and will have to be screened. That process will be undeniably (and unnecessarily) burdensome, especially in the light of the fact that Defendant Marshall is not an appropriate Defendant in this matter. For the Court to charge ahead with discovery without fully considering whether Miller's claims are sufficient to proceed past the Rule 12(b)(6) stage would be unfair. While the State may not have a right to due process, it is owed comity and an opportunity to offer defenses, and have them considered, by this Court before the case proceeds any further.

Adding to this burden, Miller seeks discovery of a "complete, unredacted set" of protocols for lethal injection and nitrogen hypoxia. First, Miller is not entitled to a nitrogen hypoxia protocol that has not been announced as being final. Second, Miller is not entitled to a complete, unredacted lethal injection protocol as he does not raise issues involving, for example, reception of the inmate, receipt and service of the execution warrant, a spiritual advisor, or the disposition of a condemned inmate's personal property following an execution. ADOC does not routinely release its protocol to the public and Miller has no right to non-public aspects of a document that are wholly unrelated to the issues raised in his complaint. Considering that

Miller's Eighth Amendment claim is time barred and legally deficient, early discovery of any unredacted protocol is unwarranted.

## CONCLUSION

For the above-mentioned reasons, Defendants ask this Court to deny Miller's request for expedited discovery. Consideration of Defendants' motion to dismiss, asserted on behalf of the State, and the dismissal of Miller's second amended complaint (or, at a minimum, winnowing of claims) that will necessarily follow from that process, is necessary to protect important interests of the State of Alabama.

Respectfully submitted,

Steve Marshall
*Attorney General*
BY—


*s/ James R. Houts*
James R. Houts
*Assistant Attorney General*


*/s Audrey Jordan*
Audrey Jordan
*Assistant Attorney General*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which shall cause an electronic copy of the same to be served upon counsel for Plaintiff Miller:

James Bradley Robertson
brobertson@bradley.com

Kelly Huggins
khuggins@sidley.com

Daniel J. Neppl
dneppl@sidley.com

Marisol Ramirez
Marisol.ramirez@sidley.com

Stephen Spector
sspector@sidley.com

*s/ James R. Houts*
James R. Houts
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Office (334) 353-1513
Fax (334) 353-8400
James.Houts@AlabamaAG.gov