**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

ALAN EUGENE MILLER,

     *Plaintiff,*

  v.

JOHN Q. HAMM, Commissioner of
Alabama Department of Corrections, et
al.,

     *Defendants.*

Civil Action: 2:22-cv-00506-RAH

**CAPITAL CASE**

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)
<u>OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

## Table of Contents

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

   I.   Mr. Miller Plausibly Alleges A Procedural Due Process Claim (Count I)........................ 4

     A.   *Mr. Miller Has Met the Pleading Standard for a Procedural Due Process Claim* ........ 4

     B.   *The Procedural Due Process Claim is Not a "Negligence" Theory of Liability* ........... 8

     C.   *The Procedural Due Process Claim is Not Barred by the Statute of Limitations* ......... 9

     D.   *Defendant Marshall is Not Immune from the Procedural Due Process Claim* ........... 10

     E.   *Defendants Prematurely Raise the Issue of Whether this Court Should Stay Alabama Supreme Court Proceedings* ........................................................................... 12

   II.   Mr. Miller Plausibly Alleges an Equal Protection Claim (Count II) ............................... 13

     A.   *The Equal Protection Claim Does Not Involve Defendant Marshall's Prosecutorial Discretion in a Different Case.* ........................................................... 15

     B.   *Mr. Miller Has Plausibly Alleged Disparate Treatment and a Lack of Rational Basis.* ............................................................................................................................ 18

   III.   Mr. Miller Plausibly Alleges An Equal Protection Claim Vis-à-vis Doyle Hamm (Count III) ..................................................................................................................... 22

   IV.   Mr. Miller Plausibly Alleges An Eighth Amendment Arbitrary and Capricious Claim (Count IV) ................................................................................................................ 23

   V.   Mr. Miller Plausibly Alleges An Eighth Amendment Cruel and Unusual Punishment Claim (Count V) ................................................................................................................. 25

     A.   *Mr. Miller Has Met the Pleading Standard for a Cruel and Unusual Execution Claim.* ............................................................................................................................ 25

     B.   *Factual Disputes Have No Place in a Fed. R. Civ. P. 12(b)(6) Motion.* ..................... 29

     C.   *The Availability of Money Damages is Irrelevant to a Motion to Dismiss Where A Plaintiff Has Alleged Other Types of Available Relief.* ....................................... 30

   VI.   The Court May Dismiss Count VI Without Prejudice.................................................. 31

CONCLUSION.................................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

*Ex Parte Alan Eugene Miller*,
  No. 1040564 (July 18, 2022) ........................................................................2

*Arthur v. Thomas*,
  674 F.3d 1257 (11th Cir. 2012) ..................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................3

*Bontkowski v. Smith*,
  305 F.3d 757 (7th Cir. 2002) ......................................................................13

*Bucklew v. Precythe*,
  139 S. Ct. 1112 (2019)..................................................................................27

*Campbell v. Rainbow City, Ala.*,
  434 F.3d 1306 (11th Cir. 2006) ..................................................................22

*Chaparro v. Carnival Corp.*,
  693 F.3d 1333 (11th Cir. 2012) (per curiam)................................................3

*Club Madonna, Inc. v. City of Miami Beach*,
  924 F.3d 1370 (11th Cir. 2019) ................................................................6, 7

*Collins v. Youngblood*,
  497 U.S. 37 (1990)........................................................................................24

*Cotton v. Jackson*,
  216 F.3d 1328 (11th Cir. 2000) ....................................................................6

*Damisse v. Paul*,
  No. 1:15-CV-199-NT, 2016 WL 9459304 (D. Me. Apr. 4, 2016) ...........31

*Daniels v. Williams*,
  474 U.S. 327 (1986)........................................................................................9

*Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*,
  635 F.3d 1106 (8th Cir. 2011) ....................................................................31

*Engquist v. Or. Dep't of Agric.*,
  553 U.S. 591 (2008)................................................................................16, 17

*Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla.*,
  559 F. App'x 811 (11th Cir. 2014) ...............................................................6

*Foxy Lady, Inc. v. City of Atlanta*,
  347 F.3d 1232 (11th Cir. 2003) (per curiam)...............................................4

*Furman v. Georgia*,
  408 U.S. 238 (1972)..........................................................................24

*Godfrey v. Georgia*,
  446 U.S. 420 (1980)..........................................................................24

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)............................................................................4

*Gregg v. Georgia*,
  428 U.S. 153 (1976)..........................................................................24

*Hamm v. Miller*,
  No. 22A258, 2022 WL 4391940 (U.S. Sept. 22, 2022)..........................2

*Johnson v. City of Shelby, Miss.*,
  574 U.S. 10 (2014) (per curiam)........................................................8

*Kentucky v. Graham*,
  473 U.S. 159 (1985)..........................................................................10

*La Grasta v. First Union Sec., Inc.*,
  358 F.3d 840 (11th Cir. 2004) ...........................................................3

*Malloy v. South Carolina*,
  237 U.S. 180 (1915)..........................................................................24

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)............................................................................4

*McKinney v. Pate*,
  20 F.3d 1550 (11th Cir. 1994) ............................................................7

*Miller v. Comm'r, Ala. Dept. of Corr.*,
  No. 22-13136-P (11th Cir. Sept. 22, 2022)................................. *passim*

*Mills v. State of Ala.*,
  384 U.S. 214 (1966)............................................................................8

*Newberry v. Champion*,
  No. 3:16-CV-143-DMB-RP, 2017 WL 1074463 (N.D. Miss. Mar. 17, 2017) .....................31

*Page v. Hicks*,
  2:16-cv-01993-KOB, 2018 WL 828770 (N.D. Ala. Feb. 12, 2018)........................31

*Price v. Comm'r, Ala. Dep't of Corr.*,
  920 F.3d 1317 (11th Cir. 2019) ........................................................28

*Randel v. Rabun Cnty. Sch. Dist.*,
  No. 21-12760, 2022 WL 1195655 (11th Cir. Apr. 22, 2022) ...................................7

*Republican Party of Guam v. Gutierrez*,
  277 F.3d 1086 (9th Cir. 2002) ...................................................................13

*Richards v. Childers*,
  1:19-CV-01027-ELR, 2019 WL 12444529 (N.D. Ga. Oct. 24, 2019) .......................3

*Smith v. Snow*,
  722 F.2d 630 (11th Cir. 1983) (per curiam)...............................................25

*Tinney v. Shores*,
  77 F.3d 378 (11th Cir. 1996) (per curiam)...................................................7

*Turner v. Safley*,
  482 U.S. 78 (1987) ...............................................................................18

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000)..............................................................................16

*Whole Woman's Health v. Jackson*,
  142 S. Ct. 522 (2021)...........................................................................11

*Wyatt v. Cole*,
  504 U.S. 158 (1992)..............................................................................16

*Zinermon v. Burch*,
  494 U.S. 113 (1990)...........................................................................4, 6

**Statutes**

28 U.S.C. § 2283.......................................................................................12

42 U.S.C. § 1983.................................................................................*passim*

Ala. Code § 15-18-82.1(b) ....................................................................*passim*

**Other Authorities**

Wright & Miller, § 1257 Relief in the Alternative or of Several Different Types, 5
  Fed. Prac. & Proc. Civ. § 1257 (4th ed.) (April 2022).............................13

Fed. R. Civ. P. 12(b)(6)......................................................................*passim*

U.S. Constitution Eighth Amendment .....................................................*passim*

U.S. Constitution Fourteenth Amendment...............................................*passim*

## INTRODUCTION

Defendants are responsible for ensuring that every execution that takes place in the State of Alabama is constitutional and conducted in accordance with state law. On September 22, 2022, Defendants failed this responsibility. They attempted to execute Mr. Miller via lethal injection despite the substantial likelihood—as found by this Court—that he exercised his statutory right to elect nitrogen hypoxia. They subjected him to hours of physical and mental agony by stabbing him with needles across his body in hopes of finding a vein they never found. And they left him hanging vertically from the gurney in the execution chamber with bloody wounds and his right foot throbbing in pain from a punctured nerve.

Their chosen course of action after these failures is to *try to do it all again as quickly as possible* without any judicial scrutiny of their actions.

To that end, Defendants now ask this Court to dismiss Mr. Miller's Second Amended Complaint ("SAC") in its entirety. However, the Second Amended Complaint has stated a claim upon which relief can be granted for five counts[1] against all Defendants:

*Count I*: Defendants' "process" for distributing, collecting, and retaining nitrogen hypoxia election forms was so profoundly deficient that it resulted in the deprivation of Mr. Miller's constitutionally-protected liberty interest in being executed by nitrogen hypoxia under Ala. Code § 15-18-82.1(b). This violates Mr. Miller's right to procedural due process under the Fourteenth Amendment of the U.S. Constitution.

*Count II*: Defendants refuse to treat Mr. Miller equally as every other man on Holman death row who timely elected nitrogen hypoxia in June of 2018. This violates Mr. Miller's right to equal protection of the law under the Fourteenth Amendment of the U.S. Constitution.

*Count III*: Defendants refuse to treat Mr. Miller equally as the only other man in the history of the State of Alabama who survived a botched lethal injection attempt, Doyle Hamm. Defendants did not subject Mr. Hamm to a second lethal injection attempt. By contrast, with Mr. Miller, they are urgently attempting a second lethal injection attempt in the Alabama Supreme Court. This violates Mr. Miller's right to equal protection of the law under the Fourteenth Amendment of the U.S. Constitution.

---

[1] Mr. Miller believes it is appropriate at this time to dismiss Count VI without prejudice, *see* Section VI below.

1

*Count IV*: By *twice* attempting to execute Mr. Miller by lethal injection instead of his statutorily-protected right to nitrogen hypoxia, Defendants are carrying out Mr. Miller's death sentence in a manner that is arbitrary and capricious. This violates Mr. Miller's right to be free from arbitrary and capricious punishments under the Eighth Amendment to the U.S. Constitution.

*Count V*: By *twice* attempting to execute Mr. Miller by lethal injection—a method by which Defendants could not competently perform the first time around and which caused Mr. Miller intense physical and mental agony—Defendants are carrying out Mr. Miller's execution in a manner that is cruel and unusual. This violates Mr. Miller's right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.

Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. 99, "Mot.") is premised on Defendants' refusal to accept the following facts:

(1) This Court has made a factual finding that it is "substantially likely" Mr. Miller timely elected nitrogen hypoxia in accordance with Ala. Code § 15-18-82.1(b). *See* Dkt. 62, Memorandum Opinion and Order ("Mem. Op.") at 41.

(2) The Eleventh Circuit upheld that factual finding. *See* Order at 9, *Miller v. Comm'r, Ala. Dept. of Corr.*, No. 22-13136-P (11th Cir. Sept. 22, 2022) ("Eleventh Circuit Op.").

(3) The U.S. Supreme Court left that factual finding undisturbed. *See Hamm v. Miller*, No. 22A258, 2022 WL 4391040, at *1 (U.S. Sept. 22, 2022).

(4) The Alabama Supreme Court refused to grant Mr. Miller the relief he seeks on his procedural due process claim. *See Ex Parte Alan Eugene Miller*, No. 1040564 (July 18, 2022).

(5) Defendants had a three hour-window of time in which they tried, and failed, to execute Mr. Miller by lethal injection. *See* SAC ¶ 97-140.

(6) This terrifying and painful execution attempt subjected Mr. Miller to tremendous physical and psychological pain. *See id.* ¶¶ 141-155.

Thus, Defendants continue the same misguided strategy for which they were admonished by this Court and the Eleventh Circuit. *See* Dkt. 70 at 6 ("[T]he State presents legal arguments as if the Court had not made that [factual] finding"); Eleventh Circuit Op. at 13 ("[T]he State apparently takes an *ex ante* view of the world, looking only at whether it acted reasonably

according to its understanding of the circumstances prior to the preliminary injunction hearing. But that is not the proper approach in a legal regime where facts are proved in court.").

The majority of Defendants' arguments in favor of dismissing the Second Amended Complaint are repeated from Defendants' unsuccessful first round of motions to dismiss this litigation. Therefore, and in the interest of efficiency and respecting this Court's time, Mr. Miller hereby incorporates by reference his Omnibus Response to Defendants' Motion to Dismiss, Dkt. 45.

## **LEGAL STANDARD**

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard means that the complaint "'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Chaparro*, 693 F.2d at 1337 (citing *Twombly*, 550 U.S. at 556)).

A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is "'apparent from the face of the complaint that the claim is time-barred,' because '[a] statute of limitations bar is an affirmative defense.'" *See, e.g, Richards v. Childers*, 1:19-CV-01027-ELR, 2019 WL 12444529, at \*3 n.4 (N.D. Ga. Oct. 24, 2019). A plaintiff is "not required to negate an affirmative defense in [his] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## ARGUMENT

**I.     Mr. Miller Plausibly Alleges A Procedural Due Process Claim (Count I)**

   A.     *Mr. Miller Has Met the Pleading Standard for a Procedural Due Process Claim*

Despite Defendants' best efforts at obfuscating the pleading standard on a Rule 12(b)(6)

motion to dismiss, the fact remains that there is no precise pleading standard on a procedural due

process claim:

> [T]o determine whether a constitutional violation has occurred, it is
> necessary to ask what process the State provided, and whether it was
> constitutionally adequate. This inquiry would examine the
> procedural safeguards built into the statutory or administrative
> procedure of effecting the deprivation, and any remedies for
> erroneous deprivations provided by statute or tort law. . . .
>
> Due process, as this Court often has said, ***is a flexible concept that
> varies with the particular situation***. To determine what procedural
> protections the Constitution requires in a particular case, we ***weigh
> several factors***: "First, the private interest that will be affected by
> the official action; second, the risk of an erroneous deprivation of
> such interest through the procedures used, and the probable value, if
> any, of additional or substitute procedural safeguards; and finally,
> the Government's interest, including the function involved and the
> fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail."

*Zinermon v. Burch*, 494 U.S. 113, 125, 126-27 (1990) (emphasis added) (quoting *Mathews v.

Eldridge*, 424 U.S. 319, 335 (1976)); *see also id.* at 139 (holding that the "complaint was sufficient

to state a claim under § 1983 for violation of [] procedural due process rights"). *See also Goldberg

v. Kelly*, 397 U.S. 254, 268–69 (1970) ("The opportunity to be heard must be tailored to the

capacities and circumstances of those who are to be heard."); *Mathews*, 424 U.S. at 334

(Procedural due process "is not a technical conception with a fixed content unrelated to time, place

and circumstances.") (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)); *Foxy

Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam) (Procedural due

process "'is flexible and calls for such procedural protections as the particular situation demands." . . . [T]here is a need to balance the governmental and private interests at stake.").

Such a flexible, facts-and-circumstances-specific inquiry is not well suited for a motion to dismiss in this case, because here, Defendants have not made transparent the process by which they improperly collected, stored, or lost Mr. Miller's nitrogen hypoxia election form, nor how they made the decision to—*again*—not honor Mr. Miller's nitrogen hypoxia election, and attempt a second lethal injection.

Mr. Miller has alleged a procedural due process claim under *Zinermon*. Mr. Miller's interests at issue here—his protected liberty interest in his statutorily-permitted choice to be executed by nitrogen hypoxia, and his protected liberty interest in not being subject to a cruel and unusual execution—are extremely significant. The risk of an erroneous deprivation of Mr. Miller's interest is incredibly high. The State has already deprived Mr. Miller of his right to be executed by nitrogen hypoxia once, and it now seeks to do so a second time. The probative value of additional procedural safeguards is also very high, particularly because it appears that as of the filing of Mr. Miller's Second Amended Complaint, no Defendant has collected evidence of how Mr. Miller's election form was lost, improperly collected, or stored, nor does any Defendant have any intent to treat Mr. Miller like every other Alabama death row inmate who elected nitrogen hypoxia. And finally, the government—and every member of the public—has a significant interest in providing sufficient procedures to ensure that Defendants follow Alabama law on nitrogen hypoxia elections, and only perform constitutional executions.

Defendants assert that Mr. Miller's procedural due process claim must be dismissed because of the "availability" of a state law remedy, via the extraordinary writ of mandamus. As a preliminary matter, Mr. Miller is now in an extremely unusual situation, caught between two

unconstitutional execution attempts. One deprivation has *already* occurred, when Defendants tried and failed to execute Mr. Miller by lethal injection. The other deprivation is *soon* to occur, as Defendants are trying again to execute Mr. Miller by lethal injection. The types of procedural due process cases Defendants cite—termination of employment by a government entity, or the revocation of a local business license—simply do not relate to this situation. Under the flexible *Zinermon* rubric, which directs courts to look to the "particular situation" at hand, such run-of-the-mill cases are not particularly instructive.

To this point, none of the cases Defendants cite regarding the "availability" of a state law remedy are relevant precedent for Mr. Miller's situation, as those cases involved instances where a specific state administrative process was available. *See* Mot. at 1-5; *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000) (holding, on a review of a *summary judgment* decision, that the plaintiff had could not prevail on a procedural due process claim for reputational damages suffered as a result of his termination by the state, because the state offered "name-clearing hearing[s]"); *Flagship Lake Cnty. Dev. No. 5, LLC v. City of Mascotte, Fla*., 559 F. App'x 811, 814 (11th Cir. 2014) (holding that plaintiff could not bring a due process claim when the local county denied his proposal for a rezoning to allow plaintiff to build a waste management plan, because there was a specific remedy provided for in the Florida Administrative Procedure Act for these types of zoning appeals); *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1378–79 (11th Cir. 2019) (holding that plaintiff, whose strip club's license was suspended, did not have property interest-based due process claim because city law specifically provided a hearing with a special master to challenge license revocation decisions). The remaining cases Defendants cite on this subject do not apply to the procedural posture at hand; several are summary judgment decisions, whereas a Rule 12(b)(6) motion only succeeds if Defendants can establish that none of Mr. Miller's

allegations state a claim upon which relief can be granted. *See* Mot. at 1-5; *Tinney v. Shores*, 77 F.3d 378, 381-82 (11th Cir. 1996) (per curiam) (review of *summary judgment* decision on substantive and procedural due process claims based on deprivation of property interest); *McKinney v. Pate*, 20 F.3d 1550, 1556-59 (11th Cir. 1994) (holding, on review of a district court's *setting aside of jury's verdict*, that plaintiff could not succeed on a *substantive* due process claim for his termination by board of county commissioners); *Randel v. Rabun Cnty. Sch. Dist.,* No. 21-12760, 2022 WL 1195655, at *2 (11th Cir. Apr. 22, 2022) (declining plaintiff's request to overturn Eleventh Circuit precedent regarding the availability of procedural due process claims to terminated public school teachers who claim bias is present in their termination proceedings).

The Supreme Court and the Eleventh Circuit have been clear that the technical availability of a pre- or post-deprivation remedy does not doom all procedural due process cases—and certainly not at the pleading stage. *See Club Madonna*, 924 F.3d at 1378 ("Though *Mathews v. Eldridge*, 424 U.S. 319 [] (1976) can require pre-deprivation process, that is not always the case. Among other such circumstances, the Supreme Court has determined that pre-deprivation process is not required when a need for "quick action" exists. *Zinermon v. Burch*, 494 U.S. 113, 128 [] (1990)."). And as this Court has already found, no adequate post-deprivation remedy exists for Mr. Miller. *See* Mem. Op. at 52 ("An execution is final; there are no do-overs or give-backs. Thus, an order directing the State to posthumously honor Miller's election would be utterly inadequate.").

Moreover, Defendants' "state remedy" argument ignores the fact that Mr. Miller has already requested relief on his due process violation from the highest court in Alabama. Indeed, before initiating this action, Mr. Miller litigated his nitrogen hypoxia election in front of the Alabama Supreme Court, and explicitly asked for a remand to the trial court for a factual finding on the issue of whether Mr. Miller elected. The Alabama Supreme Court did not grant Mr. Miller's

request for a hearing on that issue. It is unclear why Defendants think an Alabama trial court would defy the direct precedent of the Alabama Supreme Court on the identical issue of Mr. Miller's nitrogen hypoxia election. That unlikely possibility is not justification for dismissing this lawsuit. *Cf. Mills v. State of Ala.*, 384 U.S. 214, 217 (1966) (finding that a remand from the Alabama Supreme Court back to trial court would be no more than "a few formal gestures" leading towards another appeal to the Alabama Supreme Court and inexcusable delay).

Defendants thus advance the remarkable proposition that to perfect a due process claim one must "kick a dead horse"; that is, a plaintiff must return to the court where he has already sought a remedy and seek even more remedies through an extraordinary writ. None of the cases cited by Defendants even remotely stand for that proposition.

Defendants also regurgitate a few other arguments from their first round of motions to dismiss Mr. Miller's procedural due process claim. These arguments have already been considered and rejected by this Court, and they are no more persuasive today than they were two months ago.

B.    *The Procedural Due Process Claim is Not a "Negligence" Theory of Liability*

Defendants claim that Mr. Miller's procedural due process claim must be dismissed because he has only alleged "negligence." *See* Mot. at 5-6. Not once does the Second Amended Complaint say any Defendant acted "negligently." As Mr. Miller has already explained in his Omnibus Response to Defendants' First Motions to Dismiss, he does not allege that the loss of his nitrogen hypoxia election form was a "negligent" act by Defendants. *See* Dkt. 45 at 15-17. And Defendants' guess as to Mr. Miller's theory of liability is irrelevant on a motion to dismiss. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

Defendants cite *Daniels v. Williams*, 474 U.S. 327, 328 (1986), for the proposition that the Due Process clause is "not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Mot. at 5. But in *Daniels*, the plaintiff sought monetary damages for injuries sustained from slipping on a pillow that he argued was negligently left on a prison staircase by a correctional officer. 474 U.S. at 327. The plaintiff argued that the officer's "negligence" deprived him of his "liberty" to be free from bodily injury. *Id. Daniels* was a tort claim dressed up in the due process clause, which is nothing like Mr. Miller's procedural due process claim. Miller was subject to a "process" so actively and recklessly mishandled that, among other glaring problems, the Holman Warden "instructed" the prison official responsible for collecting Mr. Miller's election form "not to keep track of who submitted a form." Mem. Op. at 12; *see also* Eleventh Circuit Op. at 13 ("One more point is worth mentioning. The officials at Holman chose not to keep a list or log of those inmates who submitted election forms, and the State cannot now blame Mr. Miller for that institutional decision.").

C.  *The Procedural Due Process Claim is Not Barred by the Statute of Limitations*

Defendants argue that Mr. Miller's procedural due process claim is barred by the two-year statute of limitations for Section 1983 claims. *See* Mot. at 6-8. That is the same argument this Court has already rejected: that Mr. Miller knew or should have known of Defendants' procedural due process violations by June of 2018, due to his personal observations of the chaotic nature of the nitrogen hypoxia election form distribution and collection process. As this Court held:

> While a procedural due process claim requires a showing of a 'constitutionally-inadequate process,' it first requires a 'deprivation of a constitutionally-protected liberty interest,' that is, an injury. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). And here, Miller had no reason to know that the State had refused to honor his right to elect nitrogen hypoxia until the moment the State informed him that it had no record of his election form.

> [T]he disorganized process . . . would not have given rise to a viable
> action . . . because this information does not make 'apparent' to a
> 'reasonably prudent' person that Miller himself had been deprived
> of his protected interest in electing nitrogen hypoxia, *i.e.*, that Miller
> himself had been injured.

Mem. Op. at 48-49.  Defendants offer no reason why the Court should reconsider its holding on

this issue.

### D.   *Defendant Marshall is Not Immune from the Procedural Due Process Claim*

Defendants claim that Attorney General Marshall has no authoritative role in executions in

Alabama, Mot. at 9-10, and cite to *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) for the rule that

"a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind

the deprivation." But *Graham* is inapposite, as it involved a case brought only for money damages,

against a variety of local police officers in their personal capacities, which the Supreme Court

examined for the question of whether attorney's fees can be recovered "from a governmental entity

when a plaintiff sues governmental employees only in their personal capacities and prevails." *Id.*

at 161-62.

That point aside, the Second Amended Complaint clearly alleges that Defendant Marshall

is a "moving force" in Mr. Miller's execution(s) by lethal injection. Specifically, Defendant

Marshall deprived Mr. Miller of his due process rights by: (i) ***losing*** his nitrogen hypoxia election

form, SAC ¶ 169; (ii) ***moving*** to set *two* lethal injection execution dates despite Mr. Miller's

nitrogen hypoxia election (while doing precisely the opposite with another inmate whose form

Marshall lost), *id.* ¶¶ 61-64; ***conferring*** with Defendant Hamm during Mr. Miller's failed

execution via an open telephone line, *id.* ¶ 25; "***clearing***" Mr. Miller's failed execution to begin,

*id.* ¶ 26; and ***permitting*** the failed execution attempt to continue despite knowing that the IV team

was having a great deal of difficulty accessing Mr. Miller's veins, and that Mr. Miller was suffering greatly as a result, *id.* ¶¶ 98-99, 113, 117, 128.[2]

Defendant Marshall's statement that he has "no relationship to the decision by the Alabama Department of Corrections as to the appropriate method of execution used to carry out [Mr. Miller's death] sentence" is disingenuous at best. *See* Mot. at 9. On October 4, 2022, when Defendant Marshall filed a motion to set an expedited execution date for Mr. Miller in the Alabama Supreme Court, he knew two things: (1) that ADOC was not ready to use nitrogen hypoxia, and would again attempt to execute Mr. Miller by lethal injection; and (2) that this Court made a factual determination that it is "substantially likely" that Mr. Miller elected nitrogen hypoxia. Defendant Marshall filed the motion anyways, in spite of his full knowledge of these facts, and thus is a "moving force" behind the deprivation of Mr. Miller's liberty interest in his statutory right to execution by nitrogen hypoxia.

In spite of Defendant Marshall's obvious involvement in seeking Mr. Miller's execution by lethal injection, Marshall contends that he cannot be named as a defendant to the procedural due process claim because he "does not perform duties in relation to the determination of the method of execution to be used to carry out a sentence of death." Mot. at 10. The only case Defendants cite in support of this argument is inapposite. In *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 529 (2021), the Supreme Court assessed a plaintiff's standing to bring a "pre-enforcement challenge" regarding a law that the state had not yet enforced against anyone. *See id.* at 535, 539. The case does not support dismissing Mr. Miller's procedural due process claim against Defendant Marshall. And it certainly does not create a loophole for state officials who

---

[2] Discovery will reveal additional evidence of Defendant Marshall being a "moving force" in the State's attempts to execute Mr. Miller by lethal injection.

knowingly move to initiate an unconstitutional execution simply because the state official is not the statutory executioner.

E. *Defendants Prematurely Raise the Issue of Whether this Court Should Stay Alabama Supreme Court Proceedings*

As a final effort to justify dismissal, Defendants point to a single sentence in the "Prayer for Relief" section of the Second Amended Complaint, which informs the Court that one of the types of legal relief Mr. Miller is entitled to seek is a stay of the execution proceedings in the Alabama Supreme Court. *See* SAC p. 47. Defendants argue that this "count" must be dismissed under *Younger*-abstention grounds. *See* Mot. at 11. Defendants are wrong. As an initial matter, 28 U.S.C. § 2283 provides that a federal court may grant an injunction to stay proceedings in a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *See* 28 U.S.C. § 2283. But more fundamentally, Mr. Miller has made no motion for this relief, so Defendants' legal arguments on the merits of a hypothetical motion are premature.

The "Prayer for Relief" section of a federal complaint is not an instantaneous motion for all the different types of relief set forth therein. The Federal Rules of Civil Procedure allow plaintiffs to set forth multiple theories of relief in complaints:

> Under Federal Rules of Civil Procedure 8(a)(3) and 8(d)(2), a party may demand relief in the alternative or of several different types. ***No election between or among remedies is necessary at the pleading stage***. These provisions are desirable because on many occasions the pleader may find it necessary to demand relief in the alternative when he is uncertain about the factual background or legal bases for the right to recovery. . . .

> The effect of Rule 8(a)(3) is to permit a party to seek legal and equitable relief cumulatively or in the alternative. This approach is consistent with the continuing policy under the rules of minimizing the type of formalism that was characteristic of earlier procedural systems and the objective of providing a party with the best possible opportunity to present his or her claims in their entirety before a single impartial tribunal.

Wright & Miller, § 1257 Relief in the Alternative or of Several Different Types, 5 Fed. Prac. & Proc. Civ. § 1257 (4th ed.) (April 2022) (emphasis added). *See* Dkt. 98, Oct. 20, 2022 Order, at 10 ("[T]hat Miller may be unable to obtain the relief of a stay of the Alabama Supreme Court proceedings has little bearing on the legal merits of his claims . . . ."); *see also Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1089 n.1 (9th Cir. 2002) ("While informative regarding the thrust of this case, the Prayer for Relief is not controlling."); *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) ("[E]ven if . . . [plaintiff] is seeking relief to which he's not entitled, this would not justify dismissal of the suit. Although Rule 8(a)(3) of the civil rules requires that a complaint contain 'a demand for judgment for the relief the pleader seeks,' the demand is not itself a part of the plaintiff's claim . . . ."). It is improper for Defendants to treat the Second Amended Complaint as a motion for a stay of the Alabama Supreme Court proceedings. There is no need for the Court to delve into the merits of a hypothetical motion at this juncture.

## II.     Mr. Miller Plausibly Alleges an Equal Protection Claim (Count II)

An equal protection claim requires plausible allegations that Mr. Miller is being treated "disparately from other similarly situated persons," and that the disparate treatment is not "rationally related to a legitimate government interest." *Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012) (per curium) (citations omitted).

The Second Amended Complaint plausibly alleges these basic requirements. Mr. Miller timely submitted his election form invoking his right to be executed by nitrogen hypoxia under Ala. Code § 15-18-82.1(b). *See* SAC ¶¶ 52-53, 183. So did other inmates on death row at Holman. *Id.* ¶ 183. Mr. Miller is similarly situated "in all legally relevant respects" to those inmates because, as this Court has correctly recognized, they all complied with the statute in exercising their election. Mem. Op. at 44 (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204-07 (11th Cir. 2007) and *Price v. Comm'r, Ala. Dep't of Corr.*, 920 F.3d 1317, 1325 (11th Cir. 2019)). *See also*

Eleventh Circuit Op. at 15 (concluding that Mr. Miller is likely "similarly situated to the other inmates" who timely submitted election forms). Yet Defendants are treating Mr. Miller differently from the other inmates by refusing to honor his election form and proceeding with his execution by lethal injection. SAC ¶¶ 187-189. It follows that Mr. Miller's equal protection rights are violated when the State "execute[s] him by lethal injection even though he timely elected nitrogen hypoxia, while not pursuing execution by lethal injection for other inmates who timely elected." Mem. Op. at 44.

There is no rational basis for this treatment. Defendants have no rational interest in refusing to recognize Mr. Miller's election and proceeding with his execution by lethal injection, while honoring every other election exercised by similarly-situated inmates. *Id.* at 45 ("The Court can conceive of no rational basis to treat Miller differently."). Nor do Defendants have an interest in straying from the plain language in Ala. Code §15-18-82.1(b), which requires them to recognize timely-submitted election forms. Defendants simply have no basis to execute Mr. Miller by lethal injection given that he elected nitrogen hypoxia. Mr. Miller has therefore plausibly alleged his equal protection claim under Count II. *See id.* (finding that Mr. Miller is "substantially likely" to succeed on his equal protection claim).

In seeking to avoid their constitutional obligations, Defendants assert several meritless arguments, none of which address—or even acknowledge—this Court's factual finding, based on its "meticulous" review of the record, that Mr. Miller likely elected nitrogen hypoxia. *See* Dkt. 70 at 4. Nor do Defendants acknowledge the Eleventh Circuit's determination that Mr. Miller has "established a substantial likelihood of success" on his equal protection claim. Eleventh Circuit Op. at 15. Instead, Defendants confuse the issues, point to irrelevant case law, and assert arguments

that do not address the allegations in the Second Amended Complaint. Mr. Miller will address those arguments in turn.

A.   *The Equal Protection Claim Does Not Involve Defendant Marshall's Prosecutorial Discretion in a Different Case.*

In an effort to confuse the issues, Defendant Marshall focuses on the Jarrod Taylor case and argues that Mr. Miller's equal protection claim challenges a "prosecutor's decision to seek termination of criminal legal proceedings based on the evidence received in that proceeding," and that such a decision is immune from constitutional review. Mot. at 14.

This mischaracterizes Mr. Miller's claim. Regarding Mr. Taylor, the relevant conduct is not Defendant Marshall's decision to withdraw the motion to set Mr. Taylor's execution date. *See id*. Instead, it is Defendant Marshall's continued refusal to recognize Mr. Miller's election. *See* SAC ¶¶ 183, 187-189. That refusal—which has nothing to do with the termination of someone else's proceeding—comes *despite* this Court's factual finding (which the Eleventh Circuit affirmed and the Supreme Court left unaddressed) that Mr. Miller likely submitted his election form.

Given that Defendant Marshall's argument is misplaced, so too are the cases upon which he heavily relies. Mr. Miller's claim is not about a "decision to prosecute," nor is it analogous to a prosecutor's ability to dismiss a *qui tam* lawsuit. *See* Mot. at 14-15, 18 (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985) (determining whether prosecutors have discretion "as to whom to prosecute") and *Barati v. Fla. Att'y Gen*., No. 18-13998, 2021 WL 2911729, at *5 (11th Cir. July 12, 2021) (considering whether a prosecutor can properly dismiss a *qui tam* lawsuit)). And nothing in the Second Amended Complaint alludes to, or is analogous with, a prosecutor's decision of whether to file charges, conduct a criminal investigation in a particular manner, or engage in plea-bargaining. Mot. at 17 (citing *In re Wild*, 994 F.3d 1244, 1269 (11th Cir. 2021) (analyzing whether the Crime Victims' Rights Act creates a private right of action)). None of those issues are

relevant here, and no case cited by Defendants addresses the circumstances alleged by Mr. Miller. Notably, Defendant Marshall does not contend otherwise.

Further engaging in misdirection, Defendant Marshall also contends that Mr. Miller's claim seeks "to prove [that] a prosecutor improperly refused to settle a case in a manner similar to a comparator's case." Mot. at 19. Again, the Second Amended Complaint does not allege that Mr. Miller is being treated differently based on a decision by Defendant Marshall to settle or not settle another person's case. Nor is there the faintest suggestion in the Second Amended Complaint that Mr. Miller asks this Court to scrutinize a "state attorney general's decision to compromise in criminal litigation." *Id*. at 20. Since it bears repeating: Mr. Miller's claim challenges Defendants' efforts to "execute[] him by lethal injection even though he timely elected nitrogen hypoxia, while not pursuing execution by lethal injection for other inmates who timely elected." Mem. Op. at 44. That conduct runs afoul of the Equal Protection Clause, which proscribes "arbitrary discrimination, whether occasioned by express terms of a statute or *by its improper execution through duly constituted agents*." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (emphasis added). Defendants are improperly executing Ala. Code § 15-18-82.1(b), and are thus not providing Mr. Miller equal protection under the law. 42 U.S.C. § 1983 provides Mr. Miller the vehicle to assert his claim, and allows this Court to hold Defendants accountable for their unlawful actions, including Defendant Marshall. *See*, *e.g.*, *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

Defendant Marshall's reliance on *Engquist v. Oregon Department of Agriculture* is unavailing. 553 U.S. 591 (2008). The *Engquist* court stated no fewer than six times that its decision precluding certain class-of-one claims was limited to situations where the disparate treatment

16

arises *in the context of public employment*. *See*, *e.g.*, *id.* at 598 ("[We] conclude that the class-of-one theory of equal protection does not apply in the public employment context.").

Putting aside the fact that Mr. Miller's case has nothing to do with public employment, Defendant Marshall offers no basis to extend *Engquist* to this context. On Defendant Marshall's view, he should be immune from equal protection violations because his office "could not function" if every "plea bargain" or "dismissal of a prosecution" that was subject to his discretion "became a constitutional matter." Mot. at 18. The question, however, is not whether Defendant Marshall has discretion in engaging in plea bargains or dismissing criminal actions. Instead, the question is whether Defendant Marshall is arbitrarily treating Mr. Miller differently from similarly-situated inmates when the underlying statute—which governs the weighty issue of how someone is executed—provides Defendant Marshall no discretion at all. *See* Ala. Code § 15-18-82.1(b); Mem. Op. at 44 ("All § 15-18-82.1(b) requires for a nitrogen hypoxia election is an inmate's writing delivered to his or her warden within the proscribed time period."); Eleventh Circuit Op. at 12 ("The provision on its face does not give the State any discretion in the matter."); Dkt. 58 at 150:3-6 (The Court: "So your position is there's no discretion. The statute has to be followed." [The State]: "We can't disregard the statute because we don't like it. Yes, your honor.").

When viewed through the appropriate lens, this case has similarities to *Olech,* where the Supreme Court held that a landowner plausibly alleged an equal protection claim since the government actor who treated the landowner differently could not stray from the same requirements applied to all other landowners. *See Engquist*, 553 U.S. at 602 ("What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed."). Here too, Mr.

Miller has plausibly alleged that Defendants are treating him differently under a statute that "does not give the State any discretion in the matter." Eleventh Circuit Op. at 12.

In the end, no mischaracterization by Defendant Marshall can change what is plainly alleged in the Second Amended Complaint—that Defendant Marshall is violating Mr. Miller's equal protection rights. And even if this Court concluded otherwise, Defendant Marshall's arguments only apply to Defendant Marshall. Mr. Miller has alleged that Defendants Hamm and Raybon are also liable for their roles in violating Mr. Miller's equal protection rights based on their own conduct. *See* SAC ¶¶ 11-21, 187-192. Neither case cited in the Defendants' motion in support of Defendant Hamm states that prison officials are immune from violating the constitutional rights of prisoners. *See* Mot. at 20. To the contrary, "federal courts must take cognizance of the valid constitutional claims of prison inmates" as "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987).

B.     *Mr. Miller Has Plausibly Alleged Disparate Treatment and a Lack of Rational Basis.*

Unable to immunize Mr. Miller's claim through prosecutorial discretion, Defendants argue next that (1) Mr. Miller does not allege that he was "treated differently" from Mr. Taylor or that he is "similar" to Calvin Stallworth, and (2) even assuming Defendants treated Mr. Miller differently, they had a rational basis to do so. Mot. at 20-29.

**_Mr. Taylor and Mr. Stallworth_**. Defendants argue that Mr. Miller's claim fails because "the government" "demanded" the same thing from both Mr. Miller and Mr. Taylor: attorney-client communications. According to Defendants, Mr. Miller is just complaining that they "asked him for the very same thing they received from Taylor." Mot. at 24.

This argument misses the mark for several independent reasons. *First*, Mr. Miller's equal protection claim is based on disparate treatment compared not only to Mr. Taylor, but ***all similarly situated*** death row inmates at Holman who, like Mr. Miller, submitted election forms invoking their right to be executed by nitrogen hypoxia. SAC ¶ 183. That is the basis on which this Court found that Mr. Miller is "substantially likely" to succeed on his claim, and on which the Eleventh Circuit affirmed. *See* Mem. Op. at 44 ("But Miller . . . makes the broader argument that he is similarly situated to all inmates who timely elected nitrogen hypoxia, and that there is no rational basis to treat him differently than any inmate who timely elected. The Court finds that this is the proper inquiry.") (citations omitted). Defendants do not contend in their motion that this Court got this wrong the first time around. Nor do they disagree that Mr. Miller and Mr. Taylor are both inmates at Holman, sentenced to death, who submitted nitrogen hypoxia election forms, and that Mr. Taylor's form is being honored.

*Second*, the differential treatment that is relevant here is *not* what Defendants supposedly "demanded" from Mr. Taylor and Mr. Miller. Rather, it is Defendants' *recognition* of Mr. Taylor's election *but not* Mr. Miller's. Indeed, Ala. Code § 15-18-82.1(b) provides Mr. Miller a statutory right to elect execution by nitrogen hypoxia. Mr. Miller exercised that right in full compliance with the statute. So did other inmates, including Mr. Taylor. But rather than treat Mr. Miller the same as those inmates, Defendants are refusing to recognize his election. That is the differential treatment that supports Mr. Miller's claim.

*Third*,  while Defendants frame their response on what "the government" supposedly "demanded" from Mr. Taylor, the Second Amended Complaint alleges something different—that Defendant Marshall "received copies of privileged attorney-client communications from around the time of Mr. Taylor's election." SAC ¶ 184. That allegation is based on Defendant Marshall's

own motion filed in the Alabama Supreme Court in Mr. Taylor's case, which states that counsel for Mr. Taylor called the Attorney General's office and "offered to send" communications demonstrating Mr. Taylor's election. *See* Dkt. 85-2 ¶ 2. That is very different from, if not the opposite of, Defendants "demand[ing]" that Mr. Taylor turn over communications.

*Fourth*, and finally, Defendants are incorrect that Mr. Miller has not plausibly alleged that he and Mr. Stallworth are similarly situated. As explained, both men are inmates at Holman sentenced to death who submitted nitrogen hypoxia election forms. *See* SAC ¶¶ 183, 185. The analysis does not change simply because Defendants eventually received a copy of Mr. Stallworth's form.[3] As the Eleventh Circuit has explained, even if "in the State's eyes" other inmates submitted sufficient evidence of their elections, Mr. Miller alleges (and this Court has found it likely) that, he too, submitted a form. *See* Eleventh Circuit Op. at 12. Mr. Miller is "therefore similarly situated to other capital inmates who turned in a timely election form." *Id.* at 12-13.

**<u>No Rational Basis</u>**. The crux of Defendants' final argument is that the State can differentiate between individuals based on credibility determinations, and that a rational decisionmaker can use "a quantum of evidence" to determine whether someone timely submitted a nitrogen hypoxia election under Ala. Code § 15-18-82.1(b). *See* Mot. 25-29.

This is the same argument that this Court and the Eleventh Circuit have already rejected. Memo. Op. at 45; Eleventh Circuit Op. at 13-15. Defendants do not offer anything new, nor do they explain why the Court's previous conclusions were wrong.

---

[3] Mr. Stallworth's attorney wrote a letter to the Warden informing her that Mr. Stallworth "attempted" to submit his form, but a guard at Holman refused to deliver the form to the Warden. *See* SAC ¶ 66 (citing Dkt. 62 at 18 and Dkt. 52-8 at 2-3).

Instead, Defendants continue to view Mr. Miller's "equal protection claim through the wrong lens." Dkt. 70 at 6. The issue is not whether "the State has a rational basis for requiring corroborating evidence when the *State* evaluates an inmate's assertion that he elected." *Id.* That is an "*ex ante* view of the world," and "not the proper approach in a legal regime where facts are proved in court." Eleventh Circuit Op. at 13. The proper approach instead is whether Defendants have a rational basis "for treating Miller differently from other inmates who timely elected *if Miller timely elected*." Dkt. 70 at 7. Mr. Miller alleges that he timely elected, *see* SAC ¶¶ 183, 193, and this Court "found it substantially likely that he did," Dkt. 70 at 7. Any suggestion by Defendants that they are still entitled to request additional evidence at this point is "absurd and legally untenable." *Id.*

Moreover, even when viewing Mr. Miller's claim through Defendants' *ex ante* lens, there is still no rational basis for their actions. It is simply not rational for Defendants to: (1) be bound by law to provide an important right to death row inmates, (2) allow a person to exercise that right in the manner in which the law dictates, (3) lose the form showing that the person exercised his right, and (4) then refuse to honor the right for no reason other than failing to meet a "quantum of evidence" not found in the statute. *See* Eleventh Circuit Op. at 12 ("Moreover, the determination prescribed by Ala. Code § 15-18-82.1(b), was always binary: Did an inmate timely elect for execution by nitrogen hypoxia? If so, that inmate was to be executed by nitrogen hypoxia. The provision on its face does not give the State any discretion in the matter."). Defendants' assertion that they "have a right to require corroborating evidence beyond an inmate's own statements," Mot. at 29, thus flies in the face of not only the plain language in the statute, but also the reasoned analysis of this Court and the Eleventh Circuit.

Defendants rely on *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006), but the Eleventh Circuit already rejected that comparison. The Eleventh Circuit noted that while the *Rainbow City* court found a rational basis to deny a proposal that failed to comply with certain requirements, "Mr. Miller acted identically to the similarly situated class of inmates—all of them timely submitted the form electing to be executed by nitrogen hypoxia." Eleventh Circuit Op. at 14.

Defendants simply do not have a rational basis to justify their actions. The motion to dismiss Count II should be denied.

## III.   Mr. Miller Plausibly Alleges An Equal Protection Claim Vis-à-vis Doyle Hamm (Count III)

Mr. Miller has plausibly stated an equal protection claim under Count III. Mr. Miller is similarly situated to Doyle Hamm because both men survived lethal injection executions conducted by the State of Alabama. SAC ¶¶ 70-71. In fact, upon information and belief, Mr. Miller and Mr. Hamm are the only two people ever to survive a lethal injection execution in Alabama. Mr. Miller is being treated disparately from Mr. Hamm because while Defendants did not attempt to execute Mr. Hamm by lethal injection again following the failed attempt, Defendants have moved to execute Mr. Miller by lethal injection as soon as possible. *Id.* ¶ 196. There is no rational basis to attempt to execute Mr. Miller by the same failed method twice, while declining to do so for Mr. Hamm—the only other person in state history who has stood in Mr. Miller's shoes.

Defendants do not dispute (and thus they concede) that Mr. Miller and Mr. Hamm are similarly situated. Mot. at 30-32. Nor do they dispute (and thus they concede) that there is no rational basis to treat Mr. Miller and Mr. Hamm differently. *Id.* The only argument Defendants put forward is that the State is not "constitutionally required to reach the same legal settlement with Miller that the State entered into [] with Hamm." *Id.* at 30.

But again, Defendants mischaracterize Mr. Miller's claim. Mr. Miller is not alleging that he is entitled to enter into a settlement agreement with the State. Instead, Mr. Miller is alleging that his equal protection rights are violated when the State does not execute Mr. Hamm by lethal injection after the first execution failed, but does so for Mr. Miller. *See* SAC ¶ 196. Both men were subject to horrific executions that lasted several hours after executioners prodded them with needles across their bodies. *See* SAC ¶¶ 70-71, 134, 139-140. Neither man was able to get off the gurney without substantial assistance, and both were bleeding from their wounds. *Id.* Defendants now seek to execute Mr. Miller using the same exact method that just recently failed, but do not at all explain what steps, if any, they have taken or are taking to ensure that what went terribly wrong during those long hours in the execution chamber does not happen again.

To remedy their constitutional violations, Defendants need not enter into a settlement agreement with Mr. Miller. They can simply honor his election form under Ala. Code § 15-18-82.1(b) and execute him by nitrogen hypoxia. In the absence of Defendants' voluntary compliance with the law, they can be bound by an injunction or declaratory judgment from this Court. But as long as they continue to seek Mr. Miller's execution by lethal injection again, after having not done so for Mr. Hamm, Defendants are violating Mr. Miller's equal protection rights.

## IV. Mr. Miller Plausibly Alleges An Eighth Amendment Arbitrary and Capricious Claim (Count IV)

Defendants argue that the Eighth Amendment's protection against the "arbitrary and capricious" infliction of a death sentence does not apply to the actual course of conduct taken to execute a human being, and that Mr. Miller's "imposition of a sentence of death" occurred more than two decades ago. *See* Mot. at 32-34. Defendants do not, however, point to any case law stating that the Eighth Amendment right to be free from the arbitrary and capricious infliction of a death sentence stops when the sentence is first imposed and affirmed.

23

To the contrary, Defendants admit that the decision to set Mr. Miller's execution date was part of the sentencing process and thus subject to the relevant case law Mr. Miller cites in his Second Amended Complaint. Indeed, in responding to Mr. Miller's procedural due process claims, Defendants state that "[p]roceedings to set an execution date in the Alabama Supreme Court are an extension of the original criminal prosecution." Mot. at 11. Furthermore, a "sentence of death is automatically stayed at the time that it is imposed and Rule 8(d) assigns the responsibility for determining the appropriate time to lift the stay and to issue the execution warrant to the Alabama Supreme Court." *Id.* Thus, "the decision to set an execution date is an extension of the capital sentencing process in the underlying criminal case." *Id.* Defendants accordingly admit that the decision to set Mr. Miller's execution date is an extension of the sentencing process, and thus must be carried out in a manner that is not arbitrary and capricious. *See, e.g.*, *Furman v. Georgia*, 408 U.S. 238, 239-40 (1972); *Gregg v. Georgia*, 428 U.S. 153, 195 (1976); *Godfrey v. Georgia*, 446 U.S. 420, 427 (1980).

Since Defendants cannot point to any cases supporting their position, they argue instead that a change in the method of execution is not equivalent to the imposition of the death penalty. Aside from the fact that the entire sentencing process, including the decision to set an execution date, must be carried out in a manner that is not arbitrary and capricious, Defendants rely on case law that does not involve arbitrary and capricious Eighth Amendment challenges to the infliction of a death sentence. For example, both *Malloy v. South Carolina*, 237 U.S. 180, 185 (1915) (a case that is over a century old) and *Collins v. Youngblood*, 497 U.S. 37, 46 (1990) (a case that does not involve a death sentence) involved ex-post facto challenges under Art. 1 § 10 of the U.S. Constitution and other issues that are completely irrelevant here. Furthermore, Defendants'

reliance on *Smith v. Snow*, 722 F.2d 630, 632 (11th Cir. 1983) (per curiam) is misplaced because that case involved the denial of a clemency petition, which is not an issue before this Court.

The heart of Mr. Miller's allegations state that execution by lethal injection would be arbitrary and capricious under the Eighth Amendment because he timely elected to be executed by nitrogen hypoxia. He is not challenging the unfettered discretion associated with a clemency petition, but the refusal to honor his statutorily-protected election.

## V.     Mr. Miller Plausibly Alleges An Eighth Amendment Cruel and Unusual Punishment Claim (Count V)

### A.     *Mr. Miller Has Met the Pleading Standard for a Cruel and Unusual Execution Claim.*

Despite the clear wording in the Second Amended Complaint, and an admonishment *from this Court* that Defendants are misconstruing the nature of Mr. Miller's cruel and unusual execution claim, Defendants persist in arguing against a straw man. *See* SAC ¶¶ 209-225; Dkt. 98, Oct. 20, 2022 Order, at 3, 8. Defendants deliberately misconstrue Mr. Miller's cruel and unusual punishment claim as being centered on the use of lethal injection as the current method of execution in Alabama. *See* Mot. at 36-41; *see id*. at 38 ("[T]he fact that [Mr. Miller] alleges he was subjected to the discomfort of attempts at veinous access does not state a colorable Eighth Amendment claim."). The cruel and unusual punishment is not, as Defendants claim, that the lights in the execution chamber were bright, or that Defendants used needles to set an IV. *See id.* at 35-36. The cruel and unusual punishment is Defendants subjecting Mr. Miller to the same traumatic and painful experience *for a second time*. *See* SAC ¶ 225 ("To subject Mr. Miller to a second execution by lethal injection would subject him to a torturous experience of physical and psychological unnecessary pain. Therefore, further attempts to execute Mr. Miller by lethal injection would violate the Eighth Amendment."); Dkt. 98, Oct. 20, 2022 Order, at 8 (emphasis in original) (". . . Defendants fail to sufficiently appreciate the nature of Miller's new Eighth

Amendment claim, which is that it would violate the Eighth Amendment for the Defendants to attempt a *second* lethal injection execution of Miller after he allegedly experienced extreme pain and suffering during the *first* execution attempt on September 22, 2022.").

For the same reason, Defendants' statute of limitations argument fails. Defendants argue that Count V must be dismissed because the State has been using needles to obtain intravenous access in its lethal injections for far longer than the two-year statute of limitations. *See* Mot. at 35-36. But Mr. Miller's cruel and unusual execution claim is based on the State's attempt to execute him by lethal injection a *second* time. Mr. Miller could not have known, when lethal injection became the default method of execution in Alabama back in 2002, that one day Defendants would try *and fail* to execute him by that method. Indeed, Defendants have—since the inception of lethal execution in Alabama—been touting their *ability* to execute people via lethal injection. As recently as September 15, Defendant Hamm affirmed that the State of Alabama would be able to execute Mr. Miller via lethal injection. *See* Dkt. 59-1 ¶ 3 ("The ADOC remains ready to carry out Plaintiff's sentence by lethal injection on September 22, 2022."). The statute of limitations on Mr. Miller's cruel and unusual execution claim began to run on September 22, 2022, when Defendants botched his execution.

The fact that Defendants refuse to engage with the actual claim in Mr. Miller's complaint is a sufficient basis on which to reject Defendants' request to dismiss Count V. Nevertheless, Mr. Miller will explain how Count V states a claim upon which relief can be granted. Although *Bucklew* is an opinion concerning the summary judgment standard, and thus is not dispositive on a motion to dismiss, it is instructive on the core pleading requirements on a cruel and unusual execution claim: a plaintiff must allege (1) that a state's chosen execution method cruelly "superadds" pain to the death sentence; and (2) there exists a readily-available alternative method

26

of execution to the method the state is currently pursuing, which alternative would "clear[ly] and considerabl[y]" reduce the risk of severe pain. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1125, 1130 (2019).

Mr. Miller has pleaded both of these elements. The Second Amended Complaint alleges that Defendants' choice of a *second* execution attempt by lethal injection cruelly "superadds" pain to Mr. Miller's death sentence. *See* SAC ¶¶ 113; 133-35; 139; 141; 144-45; 149-55; 213; 218-225. The Second Amended Complaint also alleges that the readily-available alternative method of execution, nitrogen hypoxia, would significantly reduce the risk of severe pain in a second execution attempt. *Id.* ¶¶ 168, 218, 221-24 ("Nitrogen hypoxia will significantly reduce the substantial risk of severe pain at Mr. Miller's next execution. Mr. Miller is in the rare position of having *proof* that an execution by lethal injection causes him severe pain—because Defendants have already attempted one on him. In contrast, nitrogen hypoxia does not involve needles in any way, and entirely avoids the veinous access issue.").

Defendants contend that Mr. Miller has not pleaded the second *Bucklew* factor, the ready availability of an alternate method of execution, because the State "has [not yet] determined the method is ready." *See* Mot. at 41. For this proposition, Defendants cite to *Bucklew*, 139 S. Ct. at 1130 & n.1. But neither this nor any other portion of the *Bucklew* opinion holds that a plaintiff cannot plead an available alternative whenever the state insists that it has not finalized its protocol on a method of execution that it is actively developing. Indeed, the Supreme Court in *Bucklew* specifically rejected the argument that a state's "readiness" to implement a particular method is dispositive of whether a plaintiff can state a cruel and unusual execution claim. *See id.* at 1128 ("Finally, the burden [a plaintiff] must shoulder under the *Baze-Glossip* test can be overstated. An inmate seeking to identify an alternative method of execution is not limited to choosing among

those presently authorized by a particular State's law. . . . So, for example, a prisoner may point to a well-established protocol in another State as a potentially viable option."). And the Eleventh Circuit, in a post-*Bucklew* opinion, held that in the State of Alabama, ***nitrogen hypoxia is a readily-available alternative*** to lethal injection:

> Here, the State argues that although the Code of Alabama now contemplates nitrogen hypoxia as a means of execution, it is not "available" because the ADOC is still developing a protocol . . . . We are not persuaded. ***If a State adopts a particular method of execution—as the State of Alabama did in March 2018—it thereby concedes that the method of execution is available to its inmates.*** Unlike in *Bucklew*, where the inmate proposed the adoption of a new method, here, the State of Alabama chose, on its own, and after careful consideration, to offer nitrogen hypoxia as a method of execution for its death-row inmates. So unlike the inmate in *Bucklew*, [plaintiff] is not attempting to "compel" the State to adopt a different and new method of execution at all. The method was already adopted well before [plaintiff's] Eighth Amendment challenge . . . .
>
> A State may not simultaneously offer a particular method of execution and deny it as "unavailable." Rather, because the State voluntarily included nitrogen hypoxia in its statute, we reject the State's argument that nitrogen hypoxia is not "available" to [plaintiff] simply because the State has not yet developed a protocol to administer this method of execution. ***If we were to find otherwise, it would lead to an absurd result. States could adopt a method of execution, take no action at all to implement a protocol to effectuate it, and then defeat an inmate's Eighth Amendment challenge by simply claiming the method is not "available" due to a lack of protocol.***
>
> . . . The bill was [] passed and enacted into law more than a year ago, and inmates have been electing nitrogen hypoxia since June 2018. Under these circumstances, we cannot agree that nitrogen hypoxia is not available in the State of Alabama. Indeed, ***Alabama's official legislature-enacted policy is that nitrogen hypoxia is an available method of execution in the State***.

*Price*, 920 F.3d at 1327–28 (emphases added). As explained by the Eleventh Circuit, nitrogen hypoxia is a readily-available method of execution in the State of Alabama.

28

Even if the Eleventh Circuit had not made this finding—Defendants have repeatedly, recently, stated that they are *near-completion* of their final protocols on nitrogen hypoxia executions. *See* Mem. Op. at 18-19; *see also* Oct. 13, 2022 Rough Hr'g Tr. at 14:11-14 ("I do believe that—you know, my personal belief is that [the nitrogen hypoxia protocol] is close."); *Smith v. Hamm*, No. 22-cv-00497-RAH, Oct. 13, 2022 Rough Hr'g Tr. at 4:3-5 ("The status of nitrogen hypoxia with the Alabama Department of Corrections is that it is being developed."); *id*. at 41:1-5 ("[E]arnest efforts are being made to bring [the nitrogen hypoxia protocol] to completion."); *id.* at 43:11-16 (When asked by this Court if the State would represent that its nitrogen hypoxia protocol would not be ready be November 17, 2022, the State replied, "I don't want to make that representation, Your Honor.").

Mr. Miller has pleaded a cruel and unusual execution claim under the Eighth Amendment to the U.S. Constitution.

B.      *Factual Disputes Have No Place in a Fed. R. Civ. P. 12(b)(6) Motion.*

Defendants also raise a variety of factual disputes, all of which are irrelevant to a Rule 12(b)(6) motion to dismiss. *See* Mot. at 37 (claiming that the State "obtained" "veinous access" in one location in Mr. Miller's body and arguing that Mr. Miller omitted this "material fact" from his Second Amended Complaint—which "material fact" Defendants never provided to Mr. Miller and which directly conflicts with Defendants' prior statements[4]); *id.* at 38 (arguing that Mr. Miller's failure to identify the exact number of needle punctures—without the benefit of *any* discovery from Defendants—is an "omission" that "require[s] dismissal"); *id.* at 39 (arguing that it was Mr. Miller's fault that Defendants botched his lethal injection because Mr. Miller "declined to extend

---

[4] *See, e.g.,* Sept. 23, 2022 Hr'g Tr. at 21:17-22 (ADOC Counsel: "[T]hey look, you know, all over the body, not just on the arms." Court: "Okay. And they were unsuccessful in all of those efforts?" ADOC Counsel: "They weren't able to get one accessed through the skin last night.")

his arms through the bean hole" for a veinous inspection on September 20, 2022, while the Court's preliminary injunction was in place[5]). None of Defendants' factual disputes are relevant on the current procedural posture. Mr. Miller will soon receive discovery on what exactly Defendants did (or did not do) to prepare for Mr. Miller's execution, and how exactly Defendants attempted to access Mr. Miller's veins. Defendants' speculation in the meantime is inappropriate.

C.    *The Availability of Money Damages is Irrelevant to a Motion to Dismiss Where a Plaintiff Has Alleged Other Types of Available Relief.*

Defendants raise Mr. Miller's request for monetary damages from Defendants Raybon and Hamm as a separate ground upon which Count V must be dismissed. Defendants are correct that that state officials sued only in their official capacity in Section 1983 suits are immune from money damages. *See* Mot. at 34.

However, the "dismissal" of Mr. Miller's money damages relief has no impact on the viability of Count V itself. Again, Defendants are focused on the precise scope of relief, when the issue before the Court now is whether Mr. Miller has stated a *claim* upon which relief can be granted. *See supra* at Section I(E). As this Court has already held:

> Defendants argue that Miller cannot recover nominal or punitive damages from the official capacity defendants. This argument also appears to have merit. But even assuming this argument ultimately prevails, it would impact only the relief available to Miller, not the legal merits of his claims. The Defendants do not argue that sovereign immunity bars the new Eighth Amendment and equal protection claims to the extent they seek declaratory and injunction relief. Thus, that sovereign immunity may bar Miller from obtaining damages is entitled to little weight in the Court's analysis here.

---

[5] By this argument, Defendants admit that they attempted to violate the Court's Preliminary Injunction by initiating their lethal injection protocol on Mr. Miller while the Preliminary Injunction was in place. That they violated the Court's order speaks volumes of Defendants, but it certainly does not mean Mr. Miller "resisted" or otherwise "caused" Defendants' failures. As alleged in the Second Amended Complaint, Mr. Miller simply informed Deputy Warden Katrina Brown that it would be inappropriate to initiate the lethal injection protocol on his body while the Court's Preliminary Injunction against performing a lethal injection on Mr. Miller was in place. *See* SAC ¶ 110. Brown then immediately took the IV team member away from Mr. Miller's cell. *See id.*

*See* Oct. 20, 2022 Order, Dkt. 98, at 9. Mr. Miller is seeking prospective declaratory and injunctive relief under Count V; there is no basis to dismiss the claim itself when there are valid means of relief available to Mr. Miller. *See, e.g., Damisse v. Paul,* No. 1:15-CV-199-NT, 2016 WL 9459304, at *1 (D. Me. Apr. 4, 2016) ("I do not agree with the parties that resolving whether one of multiple types of damages will be available constitutes a 'threshold issue.' If the Defendants are correct that non-pecuniary damages are unavailable, the claims in this matter would remain the same—only the amount of potential recovery would change. Picking off one type of relief requested when other types of relief remain available does not demonstrate a 'failure to state a claim upon which relief can be granted,' in [Rule] 12(b)(6) terms. … I understand that the parties would like guidance on the issue of non-pecuniary damages to shape their discovery and have more informed settlement discussions… but that desire for clarity does not overcome the limits of Rule 12(b)(6)."); *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir. 2011) (citation omitted) ("[S]election of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.").

## VI.     The Court May Dismiss Count VI Without Prejudice

Defendants' only response to Count VI is an assertion of forum immunity under the Eleventh Amendment. Given that Defendants have now invoked forum immunity, Mr. Miller respectfully requests that this Court dismiss Count VI without prejudice. Where a federal court lacks jurisdiction over a claim because sovereign immunity applies, a dismissal without prejudice is required. *See Newberry v. Champion*, No. 3:16-CV-143-DMB-RP, 2017 WL 1074463 at *4 (N.D. Miss. Mar. 17, 2017) (citing *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)) (stating that a dismissal based on Eleventh Amendment immunity "may only be without prejudice" because the Eleventh Amendment deprives the federal court of jurisdiction when it applies); *Page*

31

*v. Hicks*, 2:16-cv-01993-KOB, 2018 WL 828770 at *7 (N.D. Ala. Feb. 12, 2018) (dismissing without prejudice claims barred by Eleventh Amendment sovereign immunity). Moreover, a dismissal without prejudice is appropriate in the event Defendants decide to waive forum immunity in the future, or Mr. Miller brings this claim in state court. Dismissal without prejudice is also proper here because Defendants have not requested that any of Mr. Miller's claims be dismissed with prejudice. In the alternative, Mr. Miller asks this Court to allow for leave to amend the Second Amended Complaint in order to remove Count VI from his claims against Defendants.

## **CONCLUSION**

For all these reasons, Mr. Miller respectfully requests that this Court deny the Defendants' Motions to Dismiss.

Dated: October 26, 2022                          Respectfully submitted,

/s/  *J. Bradley Robertson*
J. Bradley Robertson
Bradley Arant Boult Cummings LLP
One Federal Plaza
1819 5th Ave. N.,
Birmingham, AL 35203
Tel: (205) 521-8188
Fax: (205) 488-6188
Email: brobertson@bradley.com

Daniel J. Neppl
Kelly J. Huggins
Mara E. Klebaner
Stephen Spector
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
Email: dneppl@sidley.com
Email: khuggins@sidley.com
Email: mklebaner@sidley.com
Email: sspector@sidley.com

Marisol Ramirez
SIDLEY AUSTIN LLP
555 West Fifth Street
Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6000
Fax: (213) 896-6600
Email: marisol.ramirez@sidley.com

*Attorneys for Plaintiff Alan Eugene Miller*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 26, 2022, I served a copy of the foregoing via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to all counsel of record.

/s/ *J. Bradley Robertson*
J. Bradley Robertson