# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ALAN EUGENE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2:22-cv-00506-RAH** |
| | ) | |
| JOHN Q. HAMM, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### Defendants' Reply to Plaintiff's Response in Opposition (Doc. 101)
### To the Motion to Dismiss Second Amended Complaint
### Pursuant to Rule 12(b)(6) (Doc. 99)

Plaintiff's response in opposition to Defendants' motion to dismiss concedes that Count VI of the second amended complaint is due to be dismissed. (Doc. 101 at 6 n.1, 36-37.) And though his response addresses Count Four – his Eighth Amendment "arbitrary and capricious" claim – it adds nothing that this Court has not seen previously. Accordingly, Defendants reply only to aspects of the response in opposition pertaining to Counts One through Three and Count Five.

## Count One: Procedural Due Process Claim

### A. Miller's response concedes that his procedural due process cause of action fails to plead a claim upon which relief may be granted.

Plaintiff's response in opposition ignores this Court's previous finding that the state court extraordinary writ of mandamus is an available and adequate state

procedural remedy and blatantly misrepresents other aspects of that order. (Doc. 101 at 12.) But as this Court has previously found "Miller has an adequate postdeprivation remedy because he could seek a writ of mandamus in a state circuit court." (Doc. 62 at 53 n.21.) The availability of this remedy requires dismissal.

Miller's response in opposition attempts to divert attention away from the availability of this adequate state remedy, but in doing so it only provides this Court additional grounds requiring dismissal of Count One. *See* 42 U.S.C. § 1997e(c) (West 2022). He argues that the availability of the extraordinary writ of mandamus in state courts should not bar relief because "Miller has already requested relief on his due process violation from the highest court in Alabama." (Doc. 101 at 12.) Miller *has* requested relief in the Alabama Supreme Court, but if he is arguing that the Alabama Supreme Court was his adequate state court remedy, then Count One must be dismissed. That is, once that Court issued the execution warrant in July 2022, Miller had availed himself of an adequate state post-deprivation remedy and Miller suffered no constitutional violation. *See McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994).

The second amended complaint does *not* allege that the Alabama Supreme Court provided a constitutionally inadequate post-deprivation remedy. If, as Miller suggests in his response in opposition, the Alabama Supreme Court was his appropriate and adequate forum for seeking post-deprivation relief, Count One is at

an end because no constitutional violation occurred. The fact that Miller did not prevail in that court is immaterial, as a state's postdeprivation process is adequate for procedural due process purposes even where it is likely that the plaintiff's claim will be foreclosed by sovereign immunity. *See Powell v. Ga. Dep't of Human Resources*, 114 F.3d 1074, 1082 n.11 (11th Cir. 1997) (citing *Rittenhouse v. Dekalb County*, 764 F.2d 1451, 1459 (11th Cir. 1985)). The fact that a plaintiff might not be able to recover under state remedies the full amount that he might receive in a 1983 action is not … determinative of the adequacy of the state remedies. *Hudson v. Palmer*, 468 U.S. 517, 535 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 544 (1981)).

Miller's invocation of the Alabama Supreme Court proceedings to avoid dismissal of Count One due to the availability of state mandamus relief places another procedural obstacle in his path. Even assuming Miller wanted to assail the Alabama Supreme Court proceedings as constitutionally inadequate, Miller can only challenge any inadequacy in those proceedings by means of habeas corpus. Proceedings under Rule 8(d) of the Alabama Rules of Appellate Procedure are *criminal* proceedings.[1] The Alabama Supreme Court's decision in July to set Miller's execution date for September 22, 2022, (and any decision that it may reach

---

[1] By its own terms, Rule 8(d) of the Alabama Rules of Appellate Procedure applies to "Stays in criminal cases."

as to the State's currently pending motion) is part of Miller's criminal prosecution and any allegation of irregularity in those proceedings sounds in habeas corpus.

If, as he alleges in his response, Miller's *criminal* proceeding was the proper place to seek a postdeprivation remedy for the alleged due process violation (rather than the state writ of mandamus), then Count One sounds in habeas corpus. 28 U.S.C. § 2254 (West 2022). Thus, even if Miller could point to *any* specific allegations in the second amended complaint that attack the Alabama Supreme Court's Rule 8(d) proceedings as being constitutionally inadequate, evidentiary development of that claim in this proceeding would be an abuse of discretion. This Court would be prohibited from issuing *any* discovery orders as to Count One under jurisdiction conferred by § 1983. *See Shoop v. Twyford*, 142 S. Ct. 2037 (2022). That is because Miller's sole avenue for attacking the Alabama Supreme Court's decision in his *criminal* case would fall under the Anti-terrorism and Effective Death Penalty Act of 1996, and he would have to satisfy that law's requirements before being allowed discovery or the opportunity to present evidence other than that presented in the state court.

There is a final reason Miller's attempt to use the Alabama Supreme Court proceedings to avoid addressing the availability of state mandamus relief warrants dismissal. If the Alabama Supreme Court was the source of Miller's available postdeprivation state remedy, this Court must apply a presumption of regularity to

that Court's July decision. *Allen v. Sec'y, Fla. Dep't of Corrs.*, 611 F.3d 740, 749 (11th Cir. 2010); *see also United States Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) ("We generally accord Government records and official conduct a presumption of legitimacy."). And that required presumption of regularity rises "to its highest level in considering the work of the highest court of the state." *Ford v. Strickland*, 696 F.2d 804, 811 (11th Cir. 1983) (en banc). Miller has not pleaded any specific facts that would overcome this presumption, which applies even at the motion to dismiss stage of the proceedings.

### B. Miller's response in opposition does not point to any facts that would establish a claim predicated on any ground other than negligence.

In his response in opposition, Plaintiff alleges both that Count One's procedural due process claim is not based on negligence *and* that *Daniels v. Williams*, 474 U.S. 327, 328 (1986), is inapplicable because it only applies to "a tort claim dressed up in the due process clause." (Doc. 101 at 13-14.) This response is interesting, because if Count One pleads a procedural due process cause of action that is not predicated on negligence, there is no reason to attempt to distinguish *Daniels*. But either way, Plaintiff is wrong.

Miller's response in opposition cites *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) (per curiam), for the proposition that federal pleading rules do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted. (Doc. 101 at 13.) But what Defendants pointed out in

their motion to dismiss was that the *factual* averments of Count One allege acts only amounting to negligence. (Doc. 99 at 5 (citing (Doc. 85, ¶ 169).) *Johnson* makes clear the same point raised by Defendants: a plaintiff "must plead facts sufficient to show that [his] claim has substantive plausibility." In the absence of specifically pleaded facts, *Johnson* offers no aid to Miller. "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

Miller's response points to no factual pleadings that allege anything other than negligent conduct on the part of ADOC employees. Dismissal of a § 1983 claim is warranted where a plaintiff does not allege *facts* that would establish that the official actions "constituted more than mere negligence," even if they otherwise plead conclusions that those actions were reckless, callous, malicious, or willful. *Robertson v. Hecksel*, 420 F.3d 1254, 1259 n.5 (11th Cir. 2005). In *Marsh*, for example, plaintiffs relied on the allegation that a sheriff "had a 'policy of releasing sick or injured inmates' and concluded that the policy was 'developed and implemented … with deliberate indifference to the medical needs" of plaintiffs; with the latter deemed to be an unsupported conclusion. *Marsh*, 268 F.3d at 1036 & n.16. Here, Miller's use of the unsupported hyperbole "flagrant violation" does not alter the fact that the factual basis of his claim boils down to his allegations that he

"returned the [election] form to the prison official" and that Defendants "lost, misplaced, or improperly collected Mr. Miller's form." That is an allegation of negligence or the lack of ordinary care.

As for Miller's effort to distinguish *Daniels* on the basis that it only applies to cases that are torts-in-1983-clothing (Doc. 101 at 14), the Eleventh Circuit has taken a different view; a view that is binding on this Court. For example, *Daniels* was applied to deny an allegation of a *Brady v. Maryland*, 373 U.S. 83 (1963) violation occasioned by a law enforcement officer's negligent or inadvertent failure to turn over exculpatory materials to the prosecution. *Porter v. White*, 483 F.3d 1294, 1307-08 (11th Cir. 2007). This is not the "bodily injury" claim Miller says limits *Daniels*' holding, as *Brady* violations are rooted in due process. *See Porter*, 483 F. 3d at 1296 ("We set aside his conviction after concluding that the prosecution had violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963)[.]").

In *Robertson*, the court cited *Daniels* as an alternate basis for denying relief on a novel § 1983 claim predicated on the alleged deprivation of a mother's Fourteenth Amendment right to a relationship with her adult son. 420 F.3d at 1259 n.5. The Supreme Court has indicated in dicta that *Daniels* would necessitate denial of a § 1983 excessive force claim if a jailer's Taser was accidently discharged into a detainee. *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). These cases do not reflect the novel and strained interpretation urged by Plaintiff.

Plaintiff's attempt to distinguish *Daniels* fails under its own weight. The Supreme Court has held that § 1983 claims are best characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 279 (1985). Later, the Court held that the governing statute of limitations in § 1983 cases is controlled by a state's general or residual limitations period for personal injury actions. *See, e.g.*, *Owens v. Okure*, 488 U.S. 235, 240-241 (1989). If the Court believes § 1983 claims are most analogous to personal injury torts, Miller's argument that *Daniels* "was a tort claim dressed up in the due process clause" is just another way of saying that *Daniels* "was a § 1983 claim." Such a distinction without a different does provide this Court a ground to avoid the application of *Daniels*' clear holding.

### C.   Miller's response in opposition ignores the requirement that he establish Article III standing as to Defendant Marshall.

Plaintiff's response continues to ignore the legal requirement that he plead specific facts sufficient to establish that he possesses Article III standing under the controlling law. There must be both a factual and legal basis establishing Miller's standing to bring suit against Defendant Marshall under Count One or it must be dismissed. This is no minor quibble. Because "standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim[.]" *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019). In prisoner litigation cases, such as this, the Court's duty is further heightened by the Prison Litigation Reform Act's requirement

of *sua sponte* dismissal if the action is frivolous or fails to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c).

The standing component of traceability requires that Miller plead facts sufficient to establish under controlling law that his injuries are traceable to the Attorney General's conduct, and the component of redressability requires that any prospective injunctive relief sought redress the alleged injury. *See Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022); *Lewis*, 944 F.3d at 1296-97. At this stage, this Court must accept *specifically* pleaded facts as true, but must disregard incorrect statements of law, broad factual allegations lacking application to Plaintiff's claim, and unsupported conclusions of mixed fact and law. So, for example, it is irrelevant that Miller argues that he "clearly alleges" that Alabama's Attorney General lost his nitrogen hypoxia election form (Doc. 101 at 15), because he has pleaded no facts that, if true, would establish that the Attorney General ever possessed Miller's form and there is no legal basis, or specific factual allegation, that would allow this Court to find that the Attorney General could have possibly played a role in the loss of Miller's form.

Just as the Attorney General had no affirmative legal duty in *Lewis* to perform any of the official acts plaintiffs alleged in that complaint, the Attorney General had no legal duty to perform any act associated with the collection of nitrogen hypoxia forms alleged in this case. It is highly relevant, and controlling, that Miller has cited

to no statute that places any duty on the Attorney General that is relevant to this case. *See id.* at 1297-98 & n.6. Miller has had multiple opportunities to explain how Count One meets the traceability and redressability requirements for standing and he has steadfastly refused to do so.

In *Lewis*, the court's holding that plaintiff's lacked standing was rooted, in part, on the fact that the Attorney General's statutory powers are insufficient "to confer standing to sue the Attorney General for *any* violation of *any* Alabama law." 944 F.3d at 1300. As Defendants have maintained throughout this litigation, it is irrelevant what Miller "clearly alleges" in his second amended complaint, if such clear allegations do not include specific factual averments that support the inferences and deductions employed in each count. If Miller's "clear allegation" is conclusory and not based on specific factual averments, it fails to state a claim and it cannot provide the factual support necessary to establish his standing to sue the Attorney General. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Hunstein*, 48 F.4th at 1241-42.

Miller continues to baselessly contend that *Whole Women's Health v. Jackson*, 142 S. Ct. 522, 529 (2021), is inapplicable to this case. The Eleventh Circuit disagrees with Miller's analysis. In *Lewis*, the court acknowledged that the redressability component of the standing requirement is not satisfied where the Attorney General has no enforcement role in the underlying controversy and where issuance of an injunction will not substantially increase the likelihood that the injury

alleged by plaintiff will be redressed. 944 F.3d at 1301. The Eleventh Circuit repudiated the idea that "even where a state attorney general 'lacks the necessary enforcement authority to support the grant of injunctive relief" that "a plaintiff might nonetheless have standing to seek a free-floating 'declaratory judgment against the attorney general holding the statute invalid." *Id*. at 1305 n.19.

Miller argues that the Court can enjoin the Attorney General from moving to initiate an unconstitutional execution. But Miller cannot bring a § 1983 lawsuit whose purpose is to bar his execution, *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and the only duty the Attorney General performs is the request for an execution date. The Attorney General does not move for a "lethal injection execution" or "nitrogen hypoxia execution"; the State merely moves for the execution of a lawful sentence of death. The Court cannot lawfully enjoin the Attorney General from moving for Miller's execution in the Alabama Supreme Court, *Preiser*, and an injunction prohibiting the Attorney General for moving for a "lethal injection" execution accomplishes nothing. The Attorney General asks for an execution date and if an inmate's execution is ordered by the Alabama Supreme Court, how it is carried out is determined by the ADOC. This is not a "loophole" as Miller contends (Doc. 101 at 16-17), it is why Miller lacks Article III standing to bring Count One against Defendant Marshall.

The Court has before it two ADOC Defendants that it could enjoin as to the method of execution that could be employed to carry out Miller's sentence. This Court must take into account that it is constrained by 18 U.S.C. § 3626 and cannot issue prospective relief against Defendant Marshall on a prisoner's behalf unless the relief extends no further than necessary to correct the constitutional violation alleged. 18 U.S.C. 3626(a)(1) (West 2022). But because any injunction prohibiting the Attorney General from seeking an execution date in Miller's criminal case is barred by *Preiser*, the only permissible injunctive relief would have to be aimed at ADOC, the state agency responsible for carrying out a judicial sentence of death ordered executed by the Alabama Supreme Court. But if the Court cannot lawfully prohibit Defendant Marshall from seeking Miller's execution date and if Defendant Marshall would be wholly unable to comply with an order to dictate the method of execution, no case or controversy exists between Miller and Defendant Marshall.

**Count Two**

**A.    To the extent that Miller's response in opposition suggests that Defendant Marshall's actions in the Taylor litigation are irrelevant, Miller admits that he lacks standing.**

In his response, Miller disavows the factual averments in Count Two comparing his situation to Jarrod Taylor and attacking the Attorney General's decision to withdraw the motion to set Taylor's execution date, but not his own. (Doc. 101 at 20-21.) Considering that the Attorney General's control over litigation

in the Alabama Supreme Court is the only statutory duty of that office that could have possibly conferred standing on Plaintiff to sue Defendant Marshall as to Count Two, Miller's response requires the dismissal of Count Two as to Defendant Marshall due to lack of standing.

As noted previously, Miller cannot redress the alleged continuing injury through prospective relief in the form of an injunction issued to the Attorney General. The Attorney General moves only for an execution date in a capital case, he does not tell ADOC how to carry out that execution if the Alabama Supreme Court grants the motion. If this Court told the Attorney General that he could not exercise his statutory power to seek an execution date at the appropriate time, that order would violate 18 U.S.C. § 3626. And if the Court wanted to issue a tailored, narrow order that would require the use of nitrogen hypoxia, such an injunction would have to be directed to the ADOC Defendants.

Miller also lacks standing because he has failed to allege facts that, if true, would show that the Attorney General played a direct role in the alleged equal protection violation. But Miller's response in opposition concedes "the Second Amended Complaint does not allege that Mr. Miller is being treated differently based on a decision by Defendant Marshall to settle or not settle another person's case." (Doc. 101 at 21.) Yet, the only time that Defendant Marshall had any statutory authority to "honor" another nitrogen hypoxia election occurred in the Taylor case,

because the Attorney General controlled the litigation pending in the Alabama Supreme Court. At no other time (aside from Miller's case) has the Attorney General possessed the authority to "honor" an election form, and Miller has not pointed this Court to any such law. There is no legal or factual rationale, then, upon which this Court could find that Miller has standing to sue the Attorney General for violation of his right to equal protection under Count Two. *Lewis*, 944 F.3d at 1297-98, 1305. To be clear, Miller alleges that the relevant comparator class are all death row inmates who elected nitrogen hypoxia in June 2018. Because Defendant Marshall had no involvement in the recognition of the forms of those inmates, and Miller denies that he seeks to hold Defendant Marshall accountable for recognizing Taylor's form by voluntary resolution of legal proceedings, Miller cannot establish standing as to the Attorney General.

Miller has received multiple opportunities to explain his specific reasons for suing the Attorney General – rather than relying on his generic "Defendants" references and an approach to government officials as being fungible. His response decided to continue this pattern of obfuscation and interference, rather than clarifying or narrowing the issues before the Court. But he must now live with the fact that his repeated refusals to explain how Count Two can possibly establish traceability and redressability as to Defendant Marshall requires dismissal on standing grounds.

**B.      Plaintiff's response provides additional clarity as to why all Defendants are entitled to dismissal of Count Two.**

Miller contends that Count Two is an equal protection claim comparing his situation to all other inmates "who complied with the [election] statute in exercising their election" and challenging Defendants' refusal to honor his election. (Doc. 101 at 18.) Miller claims to be similarly situated "in all legally relevant respects" to those inmates because he complied with the statute. (*Id.*) As noted previously, Miller denies that his claim has anything to do with the State's withdrawal of the motion to set Taylor's execution in the Alabama Supreme Court. (Doc. 101 at 19.)

This response presents an unavoidable basis for dismissal. Count Two does not allege that ADOC did not possess nitrogen hypoxia election forms for all other inmates who elected, except for Taylor.[2] But the second amended complaint does alleges that both Taylor and Miller were treated differently from the others because Defendants "lost, misplaced, or improperly collected election forms from both men." (Doc. 101, § 184.) Taylor's form was honored, like the rest of the comparator class, when he delivered to the State an executed election form dated during the June 2018 election period, along with documents corroborating the timing of its execution. (Doc. 85, ¶ 60 & n.8.) According to the documents attached and incorporated into

---

[2] Although inmate Stallworth is also specifically mentioned as a comparator in the second amended complaint, the documents incorporated by the second amended complaint establish that ADOC possessed Stallworth's election form prior to the close of the election period.

the second amended complaint, ADOC possesses an election form that was executed during the June 2018 election period for everyone except for himself.

As noted in the motion to dismiss, this is a rational basis on which any rational decisionmaker could refuse to honor Miller's election. (Doc. 99 at 28-29.) This strengthens the presumption of regularity that attaches to the decisions of public officials. *See Hartman v. Moore*, 547 U.S. 250, 263 (2006) (observing that the "presumption that a prosecutor has legitimate grounds for the action he takes is one we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal[.]"); *United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties."); *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002). To "survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications," *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992), or the presumption of regularity that attaches to the official acts of public officials. This presumption applies in the equal protection context. *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996). As Count Two fails to rebut the presumption of regularity and identifies the rational basis for the governmental action, dismissal is required.

**Count Three: Equal Protection (Doyle Hamm)**

In his response, Miller denies that Count Three is based on any differing treatment resulting from Defendant Marshall's failure to enter into a settlement with him, where the State did settle a claim with Doyle Hamm. (Doc. 101 at 28 ("…Miller is not alleging that he is entitled to enter into a settlement agreement with the State.").) This is another ground requiring dismissal of this Count as to Defendant Marshall. The only way in which the Attorney General could treat Miller the same as Hamm would be to enter into a legal settlement during the course of litigation on behalf of the State. As noted previously, the Attorney General has no other statutory role when it comes to determining an inmate's method of execution. By informing this Court that the disparate treatment he alleges is unrelated to the Attorney General's handling of the Hamm and Miller litigation (Doc. 101 at 27-28), Miller admits he lacks standing to bring this claim against the Attorney General.[3]

While Miller may be alleging "that his equal protection rights are violated when the State does not execute Mr. Hamm by lethal injection … but does so for Mr. Miller" (Doc. 101 at 28), his standing to bring this allegation against a public official depends on traceability and redressability. By conceding that he is not attacking the Attorney General's decisions in the Hamm and Miller litigation, Miller

---

[3] As noted previously, prospective injunctive relief issued to the Attorney General would not increase the likelihood Miller's injuries would be redressesd.

is surrendering on the issue of traceability. As noted previously, Miller cannot establish redressability as to the Attorney General's role in the execution process.

**Count Five: Eighth Amendment (Cruel and Unusual)**

The ADOC Defendants are not subjectively liable for Eighth Amendment purposes for the "pain," "trauma," and "torture" Miller alleges in his second amended complaint. As noted in Defendants' motion to dismiss, Miller refused to permit corrections officials to take actions that would have helped them prepare for his lethal injection. (Doc. 99 at 39.) Miller did not address this critical fact in his response, because he cannot square the hypocrisy in his accusation that Defendants are liable because "they were on notice" of problems they might encounter with Miller's veins with his refusal to cooperate with a reasonable inspection that would have helped better prepare the IV team to obtain venous access in the event that the Court's injunction was vacated. (Doc. 85, ¶¶ 98, 110.) It is telling that Miller did not attempt an explanation as to how ADOC officials could be held subjectively liable for purposes of the Eighth Amendment where he was the person who refused to permit them to carry out a feasible and readily available preventative safety measure.

Instead of addressing that critical issue, Miller accuses Defendants of misconstruing his claim. It is bizarre for Miller to say Defendants are deliberately misconstruing the nature of his claim when *he* elected to open his second amended complaint with tales of life-long woe regarding the alleged difficulty medical

professionals have had obtaining venous access, and using that averment as a means to convert Plaintiff's alleged fear of needles, needle sticks, and preparations for a lethal injection into "trauma," "pain," or "torture." (Doc. 85 at 1-2.) Obviously Miller thinks that the factual allegations about his fear of needles and the alleged difficulties encountered by professionals in obtaining venous access are relevant to the "torture" and "trauma" he alleges he suffered, because he says so in paragraph 218 of the second amended complaint ("…in spite of Defendants' knowledge of the difficulty accessing Miller's veins…") in addition to using it as his introduction. To make sure the Court clearly understood the nature of his claim, Miller pleaded that Defendants "seek to inflict the *same torture* on Mr. Miller" – "[t]he *repeated attempts to establish venous access*" – by means of the motion to set Miller's execution date currently pending in the Alabama Supreme Court. (Doc. 85, §§ 218-19 (emphasis added).) It is not a mischaracterization of Count Five to say that Miller relies on his fear of needles, an alleged lifelong condition of having difficult to access veins, and the pain associated with needle sticks used to establish venous access to allege Eighth Amendment pain and cruelty.

But if ADOC's use of needles was cruel, traumatic, painful, and/or torturous because of Plaintiff's unique circumstances and his lifelong history, Miller knew the risk that he would suffer such "trauma" and "pain" when being prepared for his execution from the first moment he became subject to lethal injection. But Miller

did not challenge these aspects of the procedure – the use of needles, generally or as to his specific lifelong situation – on Eighth Amendment grounds at any time within two years of becoming subject to lethal injection following his direct appeal. He cannot now rely on this aspect of the procedure to establish a component of the Eighth Amendment claim as he attempts to frame it.

Why? Because Miller cannot repeatedly allege that ADOC officials were aware of the risk that they would encounter difficulty in obtaining venous access such that it would cause him pain or harm, but at the same time deny that *he* knew that such risk existed. Miller bases Count Five on the accusation that the pain of being stuck by needles to obtained venous access at two different locations in a future lethal injection will constitute "gratuitous pain and suffering." (Doc. 85, ¶ 220.) He readily concedes that he is alleging that being exposed to the needle sticks in preparation for a lethal injection in September 2022 was "torture," by alleging that "Defendants have done nothing to ensure that Mr. Miller *isn't tortured again by lethal injection*." (Doc. 85, ¶ 6 (emphasis added).) But if Miller could not challenge the "torture" of needle sticks as part of the preparation process for a lethal injection last month (or in May 2018, even), he cannot do so now.

Why does Miller say his preparation for lethal injection was torture in September, and will be again? It all goes back to his allegation that "[d]rawing blood has always been an [sic] long and painful affair" due to his problematic veins and

that this has been true his entire adult life (Doc. 85 at 1). Count Five alleges that the "torture" associated with the preparation for a lethal injection – needle sticks – "causes him severe pain" and Miller openly admits that the use of needles is the Eighth Amendment harm he alleges would be removed by the use of nitrogen hypoxia. (Doc. 85, ¶ 224.) But Miller did not vindicate his Eighth Amendment claim within two years of becoming subject to lethal injection and its associated "torturous" needle sticks. Neither Count Five nor the second amended complaint allege that the State has done anything new or different to introduce the use of needles into a lethal injection or to prepare a condemned inmate for execution by lethal injection. Thus, his claim is time barred.

Miller points to this Court's order granting expedited discovery as a reason to deny the motion to dismiss and to ignore the time bar. Specifically, he points to this Court's order describing Miller's claim as alleging that he experienced "extreme pain and suffering during the first execution attempt[.]" (Doc. 101 at 31 (citing Doc. 98 at 8).) If that is how this Court views Count Five, dismissal is required.

Miller did not survive being administered a fatal dose of midazolam or some other lethal drug. Miller is alleging "extreme pain and suffering" as a result of surviving the steps taken by ADOC as a necessary component of preparing a prisoner for a lethal injection. Miller admits that this "extreme pain and suffering" referenced by the Court's order is due to those factors that he has known about his entire adult

life. Miller does not allege that he experienced any discomfort during the preparations on September 22, 2022, that was unnecessary to preparations for a lethal injection execution.

Finally, the fact that Miller will be prepared for lethal injection a *second* time does not constitute a plausible Eighth Amendment claim. If Miller's "suggestion is that because he once underwent the psychological strain of preparation for" lethal injection, and that "to require him to undergo this preparation again subjects him to a lingering or cruel and unusual punishment," such a claim is foreclosed by Supreme Court precedent. *See State of La. Ex rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947). The only way Miller could attempt to distinguish that case is on the basis that it concerned electrocution, whereas lethal injection uses needles to prepare the inmate for execution, and he is afraid of needles (due to his lifelong problems) rendering his claim recognizable under the Eighth Amendment. But as noted above, Miller's ability to introduce *that* component into his claim is time barred.

Respectfully submitted,

Steve Marshall
*Attorney General*
BY—


**s/ James R. Houts**
James R. Houts
*Assistant Attorney General*

*/s Audrey Jordan*
Audrey Jordan
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which shall cause an electronic copy of the same to be served upon counsel for Plaintiff Miller:

James Bradley Robertson
brobertson@bradley.com

Kelly Huggins
khuggins@sidley.com

Daniel J. Neppl
dneppl@sidley.com

Marisol Ramirez
Marisol.ramirez@sidley.com

Stephen Spector
sspector@sidley.com

*s/ James R. Houts*
James R. Houts
*Assistant Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Office (334) 353-1513
Fax (334) 353-8400
James.Houts@AlabamaAG.gov